NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANXCORP,<br><br>      Plaintiff,<br><br>   v.<br><br>BANKRATE, INC.,<br><br>      Defendant. | Civil Action No. 07-3398 (SDW)<br><br>OPINION<br><br>September 14, 2009 |

**WIGENTON**, District Judge

  Before the Court is Bankrate's Motion to Dismiss BanxCorp's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, as well as 15 U.S.C. §§ 1, 2, and 18. Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (b)(2) and §§ 4 and 12 of the Clayton Act, as well as 15 U.S.C. §§ 15 and 22. The Motion to Dismiss is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Defendant's Motion to Dismiss DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

  The factual background of this case is discussed extensively in this Court's July 7, 2008 Opinion denying Bankrate's first Motion to Dismiss and need not be restated here. *See BanxCorp v. Bankrate, Inc.*, 07-3398 (SDW) (D.N.J. July 7, 2008). In that opinion, this Court found that BanxCorp had failed to properly define a relevant market and also failed to adequately plead facts showing injury to itself and to competition in the relevant market as a result of its agreement with LendingTree. *Id.* at 12, 19. This Court also held that BanxCorp had not

adequately pled claims for bundling and tying. *Id*. at 17. However, this Court found that BanxCorp had adequately pled claims for an illegal agreement in restraint of trade as a result of the lending tree agreement, generalized antitrust injury, predatory pricing, and market power. *Id*. at 14-15, 18. This Court granted leave for BanxCorp to file a Second Amended Complaint correcting the deficiencies in the First Amended Complaint. *Id*. at 20. BanxCorp filed a 134-page Second Amended Complaint on October 31, 2008.

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holding Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The Third Circuit has also instructed that antitrust complaints are to be liberally construed. *Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir. 1988). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1937 at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.* at 1950, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## DISCUSSION

**I.     The Relevant Market**

In an antitrust case, the plaintiff bears the burden of defining the relevant market. *Queen City Pizza, Inc. v. Dominos Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). "The outer boundaries of a relevant market are determined by reasonable interchangeability of use." *Id*. Interchangeability is defined as a product being "roughly equivalent to another for the use to which it is put; while there might be some degree of preference for the one over the other, either would work effectively." *Allen-Myland, Inc. v. Int'l Bus. Machine Corp.*, 33 F.3d 194, 206 (3d Cir. 1994). In other words, "'products in a relevant market are characterized by a cross-elasticity

3

of demand . . . the rise in the price of goods within a relevant product market would tend to create a greater demand for other like goods in that market.'" *Queen City*, 124 F.3d at 436 (quoting *Tunis Brothers Co., Inc. v Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991)).

"The determination of a relevant product or submarket . . . is a highly factual one best allocated to the trier of fact." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 199 (3d Cir. 1992). "[I]n most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Queen City*, 124 F.3d at 436. However, there is no "per se prohibition against dismissal of antitrust claims for failure to plead a relevant market." *Id*. The Third Circuit has held that:

> [w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Id*.

BanxCorp defines the relevant market as a "Banking Marketplace," which it defines as:

> the market for business-to-consumer banking ("B2C") marketplaces, which provide aggregated bank rate listings ("Bank Rates") on the Internet, in newspapers, in broadcast and other media, for money market accounts, certificates of deposit, mortgage loans, home equity loans, and automobile loans, offered for sale by multiple banks, mortgage brokers, and lenders, and purchased by consumers throughout the United States ("Banking Marketplace").

(2d Am. Compl. ¶ 20.) The term "banking marketplace" is used inconsistently throughout the Second Amended Complaint. For example, it defines "banking marketplace" as "the market for business-to-consumer banking marketplaces," which is confusing in its own right. (*Id*. at 3.) It also states that "the 'marketplace' that facilitates transactions between buyers and sellers and the

4

'environment' . . . [where consumers are able to connect with individual banks] is the relevant product market, which is precisely what Plaintiff has defined as the Banking Marketplace." (*Id*. ¶ 30.) In another reference, a "Banking Marketplace" is portal where end-user consumers go to get bank rate information. (*See* id. ¶ 40 ("Participating financial service providers pay online Banking Marketplaces a CPC [cost per click] listing fee every time a consumer clicks on a listed Bank Rate hyperlink product of choice.").) The Second Amended Complaint also refers to the Banking Marketplace as a listing of rates for financial products. (*See id*. ¶ 13 ("Defendant . . . sells its Banking Marketplace listings and advertising services to numerous banking institutions and mortgage brokers located in New Jersey. . .").) Use of the term "Banking Marketplace" appears to obfuscate the relevant market BanxCorp seeks to define.

In addition, the Second Amended Complaint also describes the "Banking Marketplace" as a submarket of the "Internet Information Providers" market. (*Id*. ¶ 22–23. As stated above, it defines the relevant market as "the market for business to-consumer . . . banking marketplaces, which provide aggregated bank rate listings . . . on the Internet, in newspapers, in broadcast and other media." (2d Am. Compl. ¶ 20.) If the "Banking Marketplace" includes newspapers and broadcast media in addition to the internet, it cannot possibly be a submarket of a market that is actually more narrow and only includes the internet.

This Court is mindful that "[t]he determination of a relevant product or submarket . . . is a highly factual one best allocated to the trier of fact." *Fineman v.* 980 F.2d at 199 (3d Cir. 1992). However, inconsistencies and confusion still cloud BanxCorp's definition of the relevant market. These must be corrected. Because discovery has been progressing while this motion has been pending, BanxCorp should be able to clearly and concisely define a relevant market and the product being sold, identify the purchasers of that product, and include an outer boundary of

5

other products that are reasonably interchangeable with the product at issue. Although these elements are arguably present in the Complaint, they are hidden among layers of confusing and often contradictory definitions and explanations. Therefore, the Court will grant BanxCorp leave to amend the Complaint *one final time* to address these issues.

## II.    Section 1 Claims

As a threshold matter, Bankrate argues that BanxCorp's Section 1 price-fixing claim should be dismissed because this Court's earlier Opinion granting leave to amend the Complaint did not contemplate it would be amended to add additional claims. In a conference held on October 28, 2008, Magistrate Judge Arleo addressed this issue and acknowledged that BanxCorp's antitrust theories had shifted and that the Amended Complaint should address them. Hence, this Court will permit the amendment.

Bankrate argues that BanxCorp has failed to adequately plead various theories under 15 U.S.C. § 1. Those theories are addressed individually below.

### A.    Horizontal Price-Fixing

To allege a horizontal price-fixing agreement, a plaintiff must, at minimum, show an agreement among competitors. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 6 (2006). BanxCorp cites to sufficient evidence to show that its allegations of horizontal competition are at least plausible. Specifically, Bankrate's statement during its August 2, 2007, Second Quarter 2007 earnings call that "some of the guys that are our partners, they're also our competitors," is indicative of horizontal competition. (2d Am. Compl. App. ¶ 68.) Bankrate also allegedly lists its bank rate table co-branding partners as its competitors on annual SEC reports. (*Id*. ¶ 67.) Finally, Appendix I to the Second Amended Complaint provides numerous factual details regarding an alleged price-fixing agreement with competitor bankaholic.com. These examples

provide sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

### B. Exclusive Dealing

Exclusive dealing exists when a buyer and seller enter into an agreement in which the buyer will only purchase goods or services from that one seller and the agreement forecloses competition. *See Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 110 (3d Cir. 1992). BanxCorp provides statements from multiple publications referencing "an exclusive deal with Bankrate" and also alleges that competition was foreclosed. (2d Am. Compl. Appx. ¶¶ 126, 128.) This is sufficient to state a claim for exclusive dealing.

### C. Tying

A tying claim consists of "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). To properly allege a tying claim, a plaintiff must show at least two separate product markets that are linked together. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984). BanxCorp has failed to define the two markets in which the tied products have allegedly been linked. Nor has it sufficiently alleged that the sale of the tied product is conditioned on the tying product. *See Paladin Assocs. V. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). Hence, the Complaint fails to adequately state a claim for tying.

### D. Bundling

For bundling to be unlawful, a plaintiff must plead market power in the relevant market of at least one of the bundled products. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 488-89 (1992). Because BanxCorp has failed to adequately plead a relevant

market and has failed to adequately define which separate products are being bundled, this claim fails.

### E.  Vendor Lock-In

Finally, BanxCorp has failed to plead that the alleged lock-in system was not a necessary byproduct of Bankrate's system and that any restraint resulting from Bankrate's proprietary system was "broader than necessary to effectuate [Bankrate's] business." *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 970 (10th Cir. 1994).  As such, BanxCorp's vendor lock-in claim fails.

### CONCLUSION

Rule 15(a) instructs that "the court should freely give leave [to amend] when justice so requires."  Although it is questionable whether justice truly "requires" that BanxCorp be granted leave to amend the complaint a fourth time, this Court is inclined to grant one—and only one—more opportunity to correct the pleading deficiencies *addressed in this Opinion*.[1]  Leave is not granted to amend portions of the complaint not addressed in this Opinion.  Nor may BanxCorp add additional causes of action or new theories of liability.

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.

---

[1] These include the definition of the relevant market and related sub-markets, tying, bundling, and vendor lock-in.  To the extent that BanxCorp's state-law claims are based on allegations raised in its claims under the Clayton and Sherman Acts, those state-law claims may also be amended.