

# Lowenstein Sandler
ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm
Tel 973 597 2532
Fax 973 597 2533
sthompson@lowenstein.com

December 1, 2010

**VIA CM/ECF & FEDERAL EXPRESS**

Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court
District of New Jersey
M.L. King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: **BanxCorp v. Bankrate, Inc.**
**Civil Action No. 07-3398 (SDW) (MCA)**

Dear Judge Arleo:

This firm represents Bankrate, Inc. ("Bankrate") in the referenced matter. Bankrate submits this letter in response to plaintiff BanxCorp's correspondence to Your Honor dated November 29, 2010.

The primary issue addressed in BanxCorp's letter is whether it can proceed with three depositions while document production is underway but far from complete. As we have discussed in previous letters to Your Honor, this is inappropriate for a number of reasons, including BanxCorp's own commitment to holding off on depositions until document discovery is complete in order to avoid unfairness, inefficiency, and confusion.

Moreover, BanxCorp simply ignores the Court's March 18, 2009 Pretrial Scheduling Order, which states that "[o]nly written and document discovery shall proceed until further order of the Court." Instead, BanxCorp argues that Paragraph 3 of the October 6, 2010 Pretrial Scheduling Order authorizes the taking of depositions now because it discusses the parameters for deposition conduct. The language cited by BanxCorp plainly does not authorize depositions; the March 18, 2009 Pretrial Scheduling Order contains the same exact language notwithstanding its explicit bar on depositions.

Not only is the timing of BanxCorp's deposition notices improper, but it has also failed to establish how these depositions can be justified in light of the apex doctrine. That doctrine bars depositions of high level corporate officials unless the official has special or unique knowledge of the facts at issue and less burdensome avenues to obtain information have been exhausted.

Hon. Madeline Cox Arleo, U.S.M.J.                                           December 1, 2010
Page 2

BanxCorp claims that "federal courts do not recognize the apex doctrine." That statement is patently false, and the case that BanxCorp relies upon for support, *Gauthier v. Union Pacific Railroad Co.*, No. 07-cv-12, 2008 WL 2467016 (E.D. Tex. June 18, 2008), holds the exact opposite. There, the plaintiff argued "that federal courts do not recognize the apex doctrine," but the court *rejected* that argument and ultimately quashed the subpoenas issued to high-level officers. *Id.* at *2, 4. BanxCorp also ignores the federal case law that Bankrate relied upon in its November 22, 2010 submission to the Court. *See* Def.'s November 22 Letter-Brief at 8; *Roman v. Cumberland Ins. Group*, No.07-1201, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007).

BanxCorp attempts to justify the depositions by stating, without any record support, that the depositions are highly relevant. However, BanxCorp merely makes numerous unfounded statements without any factual support whatsoever. It states that Peter Morse (Bankrate's former Chairman) has been the "guiding light behind Defendant's major transactions and monopolization scheme." Likewise, in a prior submission to the Court, BanxCorp claimed that Mr. Morse was the "alleged cartel's mastermind." BanxCorp does not cite to a single document, or any other authority, in support of these outlandish statements. Likewise, it states that "[d]efendant's most critical and inculpatory documents have finally been produced . . . consisting of (a) exclusionary co-branding contracts between Bankrate and over 130 competitors encompassing a price-fixing and market allocation cartel of approximately 500 websites; and (b) and the acquisition contracts of Bankrate's competitors MMIS/Interest.com and Bankaholic." This is pure rhetoric, as the contracts in question are, in essence, standard contracts used in one form or another across a wide variety of online commerce. Tellingly, BanxCorp does not cite to a single case where a similar co-branding arrangement has been held *per se* unlawful.

Lastly, BanxCorp attempts to justify the deposition of Mr. Truwit (an employee of Apax Partners, L.P who only began to serve on Bankrate's board of directors in late 2009 after Ben Holdings, Inc. became the parent corporation of Bankrate) on the grounds that he purportedly conducted due diligence that "puts him in a unique position to identify Bankrate's competitors, market power, and monopolization in the relevant market." BanxCorp fails to say why Mr. Truwit's knowledge on these subjects is in any way "unique."

In similarly obscure fashion, BanxCorp argues the depositions of Ms. DeMarse and Mr. Morse are necessary because they "each possess 'unique knowledge of the facts at issues,'" which it contends were "merger discussions between Bankrate and BanxCorp." However, BanxCorp does not explain why alleged merger discussions are remotely relevant to the causes of action pled in the Third Amended Complaint; the alleged merger discussions are not a part of the rambling 100+ page Third Amended Complaint, and we cannot imagine what relevance such discussions might have to the price-fixing allegations and other claims alleged by BanxCorp.

BanxCorp's letter is more of the same conclusory hyperbole with which it has chosen to infect every communication concerning garden-variety discovery disputes. BanxCorp has not given



Hon. Madeline Cox Arleo, U.S.M.J.                                December 1, 2010
Page 3

any sensible -- let alone compelling -- reason why this Court should not grant Bankrate's request for leave of Court to file its motion for protective order.

Respectfully submitted,

R. Scott Thompson

20928/2
12/01/10 16243337.2

cc:     Nelson E. Canter, Esq. (via CM/ECF & first class mail)
        Michael J. Hahn, Esq.
        Eric Jesse, Esq.

**Lowenstein Sandler**
ATTORNEYS AT LAW