**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BANXCORP, | Civil Action No. 07-3398 (SDW)(MCA) |
| Plaintiff, | *DOCUMENT ECF FILED* |
| v. | |
| BANKRATE, INC., | **NOTICE OF MOTION FOR LEAVE TO AMEND PLAINTIFF'S PLEADING** |
| Defendant. | Oral Argument: March 29, 2011 at 2:00 p.m. |

**PLEASE TAKE NOTICE** that on **Tuesday, March 29, 2011 at 2:00 p.m.**, or as soon thereafter as counsel may be heard, Plaintiff shall appear before the Honorable Madeline C. Arleo, U.S.M.J., at the Martin Luther King Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey, and shall move this Court for an Order granting Plaintiff leave to file a Fourth Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that in support of its Motion, Plaintiff shall rely upon its Brief submitted concurrently herewith, any Reply papers submitted, all the papers and proceedings heretofore had herein, and oral argument. A proposed form of Order is also submitted for the Court's consideration.

Dated: White Plains, New York
       February 8, 2011

CANTER LAW FIRM P.C.

*s/Nelson E. Canter*
Nelson E. Canter, Esq.
123 Main Street – 9th Floor
White Plains, New York 10601
(914) 948-3011
ncanter@canterlawfirm.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANXCORP,<br><br>                    Plaintiff,<br><br>        v.<br><br>BANKRATE, INC.,<br><br>                    Defendant. | Civil Action No. 07-3398<br>(SDW)(MCA)<br><br>*DOCUMENT ECF FILED*<br><br><br>Oral Argument:<br>March 29, 2011 at 2:00 p.m. |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR LEAVE TO AMEND THE COMPLAINT
## PURSUANT TO F.R.C.P. RULE 15

---

Nelson E. Canter, Esq.
CANTER LAW FIRM P.C.
123 Main Street – 9th Floor
White Plains, New York 10601
(914) 948-3011
ncanter@canterlawfirm.com
*Attorneys for Plaintiff*


Dated: February 8, 2011

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................1

**STANDARD OF REVIEW** .............................................................2

**ARGUMENT** ...........................................................................3

   I.   New Evidence and Underlying Facts ...............................................3

   II.  *Per Se* Horizontal Division of Markets, Allocation of Customers,
        Revenues and Internet Traffic, Combined with Predatory Price Fixing .........6

   III.  Defendant's Exclusive Right to Sell Internet Rate Table Listings
        on Behalf of Hundreds of Competing Websites...........................................10

   IV.  Exclusionary and Predatory Conduct by Defendant;
        Bankrate is a Monopolist with Unconstrained Market Power ......................12

**CONCLUSION**.................................................................................14

# TABLE OF AUTHORITIES

*Cases*

*Am. Needle, Inc. v. NFL,*
　No. 08-661, 2010 WL 20207 (U.S. May 24, 2010) ............................................13

*BanxCorp v. Apax Partners LP, et al.,*
　Civ. No. 10-4769-SDW-MCA ....................................................................7

*BanxCorp v. LendingTree LLC,*
　Civ. No. 10-2467-SDW-MCA ....................................................................5

*Behrend v. Comcast Corp.,*
　532 F.Supp.2d 735 (E.D. Pa. 2007)........................................................10

*Broad. Music, Inc. v. Columbia Broad. Sys.,*
　441 U.S. 1, 19-20 (1979) ..........................................................................8

*Foman v. Davis,*
　371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ................2

*Grinnell,*
　384 U.S. at 571, 86 S.Ct. 1698 ..............................................................15

*In re Cardizem Antitrust Litig.,*
　105 F.Supp.2d 682, 699-705 (E.D.Mich. 2000).................................10

*In re Cardizem CD Antitrust Litig.,*
　332 F.3d 896, 908 (6th Cir. 2003)..........................................................10

*LePage's Inc. v. 3M (Minnesota Mining and Manufacturing Co.),*
　324 F.3d 141 (3rd Cir. 2003)........................................................ 14, 15

*Major League Baseball Properties, Inc. v. Salvino, Inc.,*
　542 F. 3d 290, 336 (CA2 2008) (Sotomayor, J., concurring in judgment)).........13

*Nat'l Bancard,*
　779 F.2d at 597-98 ....................................................................................8

*NCAA v. Bd. of Regents,*
　468 U.S. 85, 100 (1984) ......................................................................9, 13

*Pace Elecs., Inc. v. Canon Computer Sys., Inc.,*
　213 F.3d 118, 123 (3d Cir. 2000) ............................................................9

*Palmer v. BRG of Georgia, Inc.,*
　498 U.S. 46, 49, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (per curiam) ............4, 5

*State Oil Co. v. Khan,*
　522 U.S. 3, 10 (1997) ................................................................................9

*United States v. Dentsply International, Inc.*,
   399 F.3d 181 (3d Cir. 2005) ..................................................................14

*United States v. E.I. du Pont de Nemours and Co.*,
   351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956) ..............................15

*United States v. Paramount Pictures, Inc.*,
   334 U.S. 131, 142, 68 S.Ct. 915, 92 L.Ed. 1260 (1948) ........................12

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150, 223-24, 60 S.Ct. 811, 84 L.Ed. 1129 (1940)....................9

*United States v. Topco Associates, Inc.*,
   405 U.S. 596, 608 (1972) .........................................................................8

### *Statutes*

Section 1 of the Sherman Act ................................................. 1, 4, 5, 6, 12

Section 2 of the Sherman Act ....................................................... 1, 7, 12

Section 7 of the Clayton Act ..............................................................1

Plaintiff BanxCorp ("BanxCorp", "BanxQuote," or Plaintiff) submits this brief in support of its Motion for Leave to Amend its Third Amended Complaint ("3AC") pursuant to rule 15 of the Federal Rules of Civil Procedure and paragraph 2 of this Court's October 6, 2010 Pretrial Scheduling Order.

## PRELIMINARY STATEMENT

After nearly four years of litigation, Plaintiff has finally obtained documents constituting incontrovertible proof of Defendant Bankrate's violations of Section 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and the New Jersey Antitrust Act.

While all of Plaintiff's claims in the 3AC have been previously allowed to proceed by this Court, Plaintiff is merely seeking leave to amend its pleadings as set forth in Plaintiff's proposed Fourth Amended Complaint ("4AC") attached hereto as Appendix I, in order to conform its complaint with the evidence obtained so far through the discovery process, and in anticipation of Plaintiff's forthcoming motion for partial summary judgment based on *per se* antitrust violations.

As noted by Hon. Susan D. Wigenton on July 13, 2010 during oral argument, "obviously, the complaint has changed in some aspects. It will continue to change, quite honestly, in some aspects as discovery proceeds. There are certain claims that are not going to survive. And, quite honestly, I don't know if there's

going to be additional claims that potentially maybe sought to be amended and rolled into the complaint." [1]

Plaintiff therefore respectfully requests that this Court grant Plaintiff's motion for leave to amend its pleadings for the reasons set forth below.

## <u>STANDARD OF REVIEW</u>

As recognized by the Supreme Court, "Rule 15 (a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10)." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

"Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

---

[1] July 13, 2010 Transcript of Proceedings 15:1-6.

## ARGUMENT

### I.    New Evidence and Underlying Facts

Plaintiff recently obtained incontrovertible evidence which justifies its request for leave to amend its pleadings.  Such evidence includes, but is not limited to, the following:

1. Defendant Bankrate's secretive anticompetitive contracts with approximately 130 competing counterparties, which constitute *prima facie* evidence of *per se* antitrust violations of Section 1 of the Sherman Act, involving approximately 300 competing websites – more than triple the number originally alleged – that acted in concert with Bankrate, willfully and intentionally, through a contract, combination and conspiracy in restraint of trade, including allocation of markets, traffic, customers and revenues. [2]    The Supreme Court has ruled that an allocation of markets or submarkets by competitors is unlawful even if they divide a market between them, in which the two previously did not compete. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (per curiam). [3]

---

[2] *See, e.g.,* Dkt. No 169, Exhibit 1: contracts with Move, Inc.; Dkt. No 169, Exhibit 2: contract with Tribune Media.

[3] "The defendants in *Topco* had never competed in the same market, but had simply agreed to allocate markets . . . Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other." *BRG of Georgia, supra* (citing *United States v. Topco*

2. The agreements at issue, including those between Bankrate and LendingTree, the defendant in the related action *BanxCorp v. LendingTree LLC,* Civ. No. 10-2467-SDW-MCA, and for example, Defendant's agreements with Dow Jones & Co., The New York Times, CNBC, CNN, MSNBC, Fox News, AOL, and Move Inc., list each other as competitors.

3. Pursuant to such contracts, Bankrate had the sole authority or exclusive right to sell cost-per-click ("CPC") rate table listings on behalf of hundreds of competing co-branded Bank Rate Websites at the same price, in *per se* violation of Section 1 of the Sherman Act. [4]

4. The CPC rate table listing prices charged to banks by Bankrate on behalf of its own websites *Bankrate.com*, *Interest.com* and *Bankaholic.com*, as well as a cartel of hundreds of Bank Rate Website partners, were consistently fixed across Bankrate's "network" with the cartel members' acquiescence.  Such CPC prices ranged from less than $3 per click at the end of 2005, to more than $9 per click in 2010 (an unchallenged series of price increases in excess of 300%), in *per se* violation of Section 1 of the Sherman Act. [5]

---

*Associates, Inc.*, 405 U. S. 596 (1972)).

[4] *See, e.g.,* Dkt. No 169, <u>Exhibit 3</u>: *quid-pro-quo* contracts with LendingTree.

[5] *See, e.g.,* Dkt. No 169, <u>Exhibit 4</u>: Bankrate's S.E.C 8-K filings and Excerpts of

5. Defendant and its "partners" secretly fixed CPC prices, even though their websites competed with and among each other for traffic and revenue through the sale of Internet-based advertisements products, including CPC rate table listings, in *per se* violation of Section 1 of the Sherman Act. [6]

6. Co-branding agreements disclosed by Defendant Bankrate within the last month, reveal that Defendant and its co-branding partners had been dividing markets, traffic, customers and revenues, and had engaged in predatory price fixing for many years; even before Bankrate launched its CPC price-fixing program in 2005.

7. Defendant deliberately never listed BanxQuote as a competitor in any S.E.C. filing, investor conferences or presentations, press releases, or contracts with co-branding partners.

8. Defendant monopolized and/or attempted to monopolize the relevant market, as a result of which there are virtually and effectively no independent competitors left in the relevant market, in violation of

---

Quarterly Earnings Call Transcripts, Pricing data is based on Bankrate's public announcements and internal extrapolations; Dkt. No 169, Exhibit 5: Bankrate's 2005-2010 CPC fixed prices charged to Ally Bank, Citibank's ad agency JWT, and Banco Popular/E-Loan.

[6] *See, e.g.,* Dkt. No 170, Exhibit 6: excerpts from Bankrate's Q2-07 Earnings Call Transcript and 10-K for 2001-2006; Dkt. No 170, Exhibit 7: a CNN contract schedule and contracts with Dow Jones and CNBC list other cartel members as their respective competitors, and contracts with BCRS/*BankCD.com* and *Ratecatcher.com* acknowledge competition upfront in the respective "Whereas" sections.

Section 2 of the Sherman Act.  Plaintiff's documentary proof includes a statement by Bankrate's CEO Tom Evans made on June 17, 2009 in the presence of other board members, that *"Bankrate does not have direct competitors",* explicitly confirming Bankrate's monopoly, while simultaneously willfully and knowingly negotiating an illegal contract in combination and conspiracy with Apax Partners, the defendant in the related action *BanxCorp v. Apax Partners LP, et al.,* Civ. No. 10-4769-SDW-MCA, executed a month later with the intent of further restraint of trade.[7]

9. These anticompetitive partnership agreements and merger and acquisition agreements between competitors are ongoing, and certain transactions occurred even after the date of the previous pleadings.

Accordingly, Plaintiff's motion for leave to amend its pleadings to comport with the newly discovered facts would be clearly justified.

## II.   *Per Se* Horizontal Division of Markets, Allocation of Customers, Revenues and Internet Traffic, Combined with Predatory Price Fixing

In assessing whether an agreement unreasonably restrains trade such that it violates Section One, courts generally apply one of three modes of antitrust analysis: (1) the *per se* rule, for obviously anticompetitive restraints; (2) the quick look approach, for those restraints with some procompetitive justification; or (3)

---

[7] *See, e.g.,* Dkt. No 170, <u>Exhibit 8</u>: Minutes of Bankrate's June 17, 2009 Board Meeting.

the full "rule of reason," for restraints whose net impact on competition is particularly difficult to determine. *See* Hovenkamp, et al., 87 Minn. L. Rev. at 1728.

The *per se* analysis, permits courts to make "categorical judgments" that certain practices, including price fixing, horizontal output restraints, and market-allocation agreements, are illegal without the need for any elaborate inquiry as to the precise harm they have caused or the business excuse for their use. *Broad. Music, Inc. v. Columbia Broad. Sys.*, 441 U.S. 1, 19-20 (1979); *see also Nat'l Bancard*, 779 F.2d at 597-98.

The Supreme Court held that, "[o]ne of the classic examples of a *per se* violation of 1 is an agreement between competitors at the same level of the market structure. . ." *United States v. Topco Associates, Inc.*, 405 U.S. 596, 608 (1972). *See also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *Pace Elecs., Inc. v. Canon Computer Sys., Inc.,* 213 F.3d 118, 123 (3d Cir. 2000) ("[the *per se*] standard, which is based on considerations of 'business certainty and litigation efficiency,' allows a court to presume that certain limited classes of conduct have an anticompetitive effect without engaging in the type of involved, market-specific analysis ordinarily necessary to reach such a conclusion.").

In such cases, the *per se* approach applies a "conclusive presumption" of

anticompetitive effects and illegality to certain types of agreements, with no consideration given to the intent behind the restraint, to any claimed procompetitive justifications, or to the restraint's actual effect on competition. *NCAA v. Bd. of Regents,* 468 U.S. 85, 100 (1984); *see also State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (holding that restrictions subject to *per se* analysis are those that "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit," that no detailed market study or evaluation of actual anticompetitive effects is necessary).

As Professor Hovenkamp explains, "[c]ourts often say that a 'naked' horizontal restraint is illegal 'per se.' What this label means in practice is that

(a) neither a relevant market nor an estimate of the defendants' market power must be established to prove that the restraint is unlawful;

(b) harmful effects are presumed; and

(c) the range of permissible defenses is severely limited." (Emphasis added) 11 H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 1910a at 252 (1998 ed.)." *See In re Cardizem Antitrust Litig.*, 105 F.Supp.2d 682, 699-705 (E.D.Mich. 2000).

*See also, Behrend v. Comcast Corp.*, 532 F.Supp.2d 735 (E.D. Pa. 2007) ("These allegations are, sufficient to show a plausible contract, combination or conspiracy in restraint of trade because the alleged result of those agreements — a

horizontal division of markets — is a plausible inference from Comcast's conduct in entering into them."); *see also In re Cardizem CD Antitrust Litig.,* 332 F.3d 896, 908 (6th Cir. 2003) ("There is simply no escaping the conclusion that the Agreement, all of its other conditions and provisions notwithstanding, was, at its core, a horizontal agreement to eliminate competition in the market for Cardizem CD throughout the entire United States, a classic example of a per se illegal restraint of trade.").

Such is the case here, with respect to Defendant Bankrate's partnership agreements with approximately 130 horizontal competitors operating at the same level of market structure. Moreover, Defendant recognizes that the agreements between Bankrate and its 130 competing partners involve a horizontal relationship, which is precisely why based upon the recently obtained evidence Plaintiff has agreed to withdraw its "exclusive dealing" claim originally pled in July 20, 2007, and replead or replace this claim as set forth below.

Therefore, Plaintiff respectfully submits that the Court should grant Plaintiff's motion for leave to amend its pleadings, since doing so will aid in presenting the merits, no prejudice will be incurred by Defendant and justice so requires.

### III.   Defendant's Exclusive Right to Sell Internet Rate Table Listings on Behalf of Hundreds of Competing Websites

Defendant's 130 co-branding partnership agreements revealed that Bankrate had been granted the exclusive right to sell Internet rate table listings to financial service providers nationally on behalf of hundreds of competing websites – at a fixed price – collect fees from customers, and allocate revenues among each competing member of the cartel *on a network basis*. For example, these secretive contracts state as follows:

> <u>Bankrate's Sale of Advertisements on the Co-Branded Pages</u>. Bankrate shall have *the sole authority to sell* advertisements, sponsorships and other promotional materials *and to charge and collect fees* for advertisements, sponsorships and other promotional materials placed on the Co-Branded Pages, including, without limitation, the Rate Center Pages. Bankrate shall sell such advertisements, sponsorships and other promotional materials *on a network basis*… (Emphasis added)

Such agreements axiomatically enabled Defendant to control prices, fix prices, decrease prices through fixed predatory pricing and offer free giveaways of Internet rate table listings (at no cost to Defendant's partners). Subsequently, after independent competitors were driven out of the market, these co-branding agreements enabled Defendant to increase prices *in lockstep with the acquiescence of its partners/competitors* who shared the revenues collected on their behalf by Bankrate, thus eliminating any possible *price competition* between the members of

10

the cartel; Bankrate's self-proclaimed "network."

As recognized by the Supreme Court, acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one. *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 142, 68 S.Ct. 915, 92 L.Ed. 1260 (1948).

If this type of conduct were immune from § 1, then any cartel "could evade the antitrust law simply by creating a 'joint venture' to serve as the exclusive seller of their competing products." *Am. Needle, Inc. v. NFL*, No. 08-661, 2010 WL 20207 (U.S. May 24, 2010), at *8. When the agreement joins together independent centers of decisionmaking, "the entities are capable of conspiring under § 1 . . ." *Id.* at *9. Furthermore, "joint selling would eliminate important price competition between them" (*NCAA, supra*), "competitors 'cannot simply get around' antitrust liability by acting "through a third-party intermediary or 'joint venture'." *Id.* (quoting *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F. 3d 290, 336 (CA2 2008) (Sotomayor, J., concurring in judgment)).

"[A] court would not hesitate in enjoining a domestic selling arrangement by which, say, Ford and General Motors distributed their automobiles nationally through a single selling agent." *See NCAA*, *supra*, fn 39. (internal citation omitted)

"Even without a trial, the judge will know that these two large firms are major factors in the automobile market, that such joint selling would eliminate

important price competition between them, that they are quite substantial enough to distribute their products independently, and that one can hardly imagine a pro-competitive justification actually probable in fact or strong enough in principle to make this particular joint selling arrangement 'reasonable' under Sherman Act § 1." *Id.*

      Accordingly, Plaintiff's motion to amend its complaint should be granted.

## IV.   Exclusionary and Predatory Conduct by Defendant;<br>Bankrate is a Monopolist with Unconstrained Market Power

      The amended pleadings will also aid in presenting the merits of Plaintiff's claims regarding Defendant's exclusionary and predatory conduct, not only with respect to its violations of Section 1, but also Section 2 of the Sherman Act.  The evidence recently obtained further corroborates that Defendant Bankrate is a monopolist who excluded Plaintiff BanxQuote from key internet traffic pipelines necessary to permit Plaintiff and other independent firms to compete in the relevant market.

      "[A] monopolist is not free to take certain actions that a company in a competitive (or even oligopolistic) market may take, because there is no market constraint on a monopolist's behavior." *LePage's Inc. v. 3M (Minnesota Mining and Manufacturing Co.)*, 324 F.3d 141 (3rd Cir. 2003).

      As recognized by the Third Circuit, "behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a

monopolist." *United States v. Dentsply International, Inc.*, 399 F.3d 181 (3d Cir. 2005).

    In *LePage's*, the Third Circuit held:

> Assuming arguendo that *Brooke Group* should be read for the proposition that a company's pricing action is legal if its prices are not below its costs, nothing in the decision suggests that its discussion of the issue is applicable to a monopolist with its unconstrained market power. . .

> Nothing in any of the Supreme Court's opinions in the decade since the Brooke Group decision suggested that the opinion overturned decades of Supreme Court precedent that evaluated a monopolist's liability under § 2 by examining its exclusionary, i.e., predatory, conduct. . .

> [*Brooke Group*] does not discuss, much less adopt, the proposition that a monopolist does not violate § 2 unless it sells below cost. Thus, nothing that the Supreme Court has written since *Brooke Group* dilutes the Court's consistent holdings that a monopolist will be found to violate § 2 of the Sherman Act <u>if it engages in exclusionary or predatory conduct without a valid business justification</u>. [Emphasis added].

    Furthermore, while Plaintiff is not amending the 3AC's Second or Third Claims for Relief under Section 2 of the Sherman Act, its proposed amended pleadings as set forth above will aid in presenting the merits of Plaintiff's claims regarding Defendant's monopoly power.  It has been well settled that the concept of monopoly is distinct from monopoly power, which has been defined as the ability "to control prices or exclude competition." *Grinnell*, 384 U.S. at 571, 86

S.Ct. 1698; *see also United States v. E.I. du Pont de Nemours and Co.*, 351 U.S.

377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court grant

Plaintiff's motion for leave to amend its complaint.

Dated:        White Plains, New York
              February 8, 2011

                                        Respectfully submitted,

                                        CANTER LAW FIRM P.C.

                                        *s/Nelson E. Canter*
                                        Nelson E. Canter, Esq.
                                        123 Main Street – 9th Floor
                                        White Plains, New York 10601
                                        (914) 948-3011
                                        ncanter@canterlawfirm.com
                                        *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BANXCORP, | Civil Action No. 07-3398 (SDW)(MCA) |
| Plaintiff, | |
| v. | |
| BANKRATE, INC., | **ORDER GRANTING PLAINTIFF'S** |
| | **MOTION FOR LEAVE TO AMEND** |
| Defendant. | **THE THIRD AMENDED COMPLAINT** |
| | . |

        The above matter having been opened to the Court by Canter Law Firm P.C., attorneys

for Plaintiff BanxCorp, upon motion for an Order granting Plaintiff leave to file a Fourth

Amended Complaint against Defendant Bankrate Inc. pursuant to Fed. R. Civ. P. 15, and the

Court having considered the papers submitted and the arguments of counsel, if any, and for good

cause shown,

        It is on this _____ day of _____, 2011,

        **ORDERED** that Plaintiff's Motion for Leave to File a Fourth Amended Complaint

against Defendant Bankrate Inc. pursuant to Fed. R. Civ. P. 15 is hereby **GRANTED**; and it is

further

        **ORDERED** that Plaintiff serve and file such Fourth Amended Complaint within ten (10)

days hereof.

                                                      _____
                                                      Hon. Madeline C. Arleo, U.S.M.J.