UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BANXCORP,

                Plaintiff,

      v.

BANKRATE, INC.,

                Defendant.

Civil Action No. 07-3398
(SDW)(MCA)

*DOCUMENT ECF FILED*

---

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO AMEND THE COMPLAINT
PURSUANT TO F.R.C.P. RULE 15**

---

Nelson E. Canter, Esq.
CANTER LAW FIRM P.C.
123 Main Street – 9th Floor
White Plains, New York 10601
(914) 948-3011
ncanter@canterlawfirm.com
*Attorneys for Plaintiff*

Dated: March 9, 2011

## TABLE OF CONTENTS

**ARGUMENT** ..........................................................................................................1

    I.    There was No Delay, Bad Faith or Prejudice Caused by Plaintiff. ..........1

    II.   Defendant's Futility Argument Lacks Merit ................................................5

**CONCLUSION**..................................................................................................8

# TABLE OF AUTHORITIES

*Cases*

*Adams v. Gould*,
 739 F.2d 858, 868 (3d Cir. 1984) .......................................................................2, 6

*Bechtel v. Robinson*,
 886 F.2d 644, 652 (3d Cir. 1989) ..............................................................................2

*Hensley v. Eckerhart,*
 461 U.S. 424, 435 (1983) ..........................................................................................6

*LE v. City of Wilmington*,
 Civ. No. 08-615-LPS (D. Delaware, July 12, 2010) ...............................................5

*Rowe v. EI Du Pont De Nemours and Co.,*
 Civ. Nos. 06-1810 (RMB/AMD), 06-3080 (RMB/AMD)
 (D.N.J. February 24, 2010).......................................................................................2

Plaintiff BanxCorp ("BanxCorp", "BanxQuote," or Plaintiff) submits this Reply Brief in support of its Motion for Leave to Amend its Third Amended Complaint ("3AC") pursuant to Rule 15 of the Federal Rules of Civil Procedure and Paragraph 2 of this Court's October 6, 2010 Pretrial Scheduling Order.

## ARGUMENT

**I.   There was No Delay, Bad Faith or Prejudice Caused by Plaintiff.**

Plaintiff respectfully requests that this Court grant Plaintiff's motion for leave to amend its pleadings for the reasons set forth below.  Under the circumstances in this case, Plaintiff could not have asserted the proposed amended pleadings earlier, nor was it permitted by the Court to file the proposed amendments any earlier.

Plaintiff's request for leave to amend the pleadings was originally filed with the Court on January 19, 2011 [Doc. No. 182], and Plaintiff complied with this Court's October 6, 2010 Pretrial Scheduling Order [Doc. No. 140] by filing the proposed amended pleadings on or before February 10, 1011.  Discovery in this action did not commence in earnest until several months after Defendant's fourth motion to dismiss was denied on July 13, 2010.

At a Rule 16 Status Conference held on January 20, 2011, the Court recognized that this case was "three years old and no documents have been produced and no depositions have been taken." (*See* January 20, 2011 Transcript of

1

Proceedings 12:19).

"The passage of time, without more, does not require that a motion to amend a complaint be denied ... The question of undue delay, as well as the question of bad faith, requires that [the court] focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier." *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984); see also *Rowe v. EI Du Pont De Nemours and Co.,* Civ. Nos. 06-1810 (RMB/AMD), 06-3080 (RMB/AMD) (D.N.J. February 24, 2010).

Defendant asserts that "Bankrate would be prejudiced if this Court were to permit BanxCorp to amend its complaint", but fails to assert any particular prejudice. Defendant's argument that *it would have to obtain additional discovery from Plaintiff* is without merit, since the discovery materials recently obtained from Defendant actually provided the genesis of Plaintiff's motion to amend.

To establish unfair prejudice sufficient to justify denial of the Motion, Defendant "must show that [he] was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [he] would have offered had the ... amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). Indeed, the documents proving that Defendant entered "into approximately 130 exclusionary agreements with partners and competitors that granted Defendant the sole authority and/or exclusive right to sell rate table listings on the Internet at a fixed price on behalf of Defendant's cartel, also referred to as a "network"; by

forming a predatory Price-Fixing Cartel with more than 100 partners and competitors that together control more than 300 websites;" [1] were in the exclusive possession of Defendant and its partners.

These specific facts only came to light when Defendant was ultimately compelled to produce 130 co-branding contracts and other pricing and sales-related documents. Plaintiff's counsel subsequently had to undergo a comprehensive burdensome review process involving sweeping Attorney's Eyes Only designations that covered nearly fifteen thousand pages of contracts and documents that are central to this litigation. Plaintiff completed the review and analysis of these documents as soon as practicable in January 2011. No alteration in the discovery process is expected as a result of the amended pleading, since any related discovery demands have already been made.

While the Court "specifically directed the parties to proceed with document discovery" [January 20, 2011 Transcript of Proceedings 4:3], and while Defendant recognizes that there are "only a few months to go until the conclusion of fact discovery" [Doc. 193, Def's March 3, 2011 Brief at 1], Defendant failed to produce a single document in response to Plaintiff's Third Request for Production of Documents dated February 14, 2011, without any justifiable excuse.

---

[1] _See_ Doc. No. 191-1, Plaintiff's proposed Fourth Am. Compl. ¶ 280(b)-(c).

In addition, 20 of the co-branding contracts that Defendant was ordered to produce on or before November 4, 2010 pursuant to Paragraph 6 of the Court's October 18, 2010 Scheduling Order, and Defendant's e-mails resulting from the agreed upon searches pursuant to Paragraph 11 of said Order, are still pending.

Defendant's responses to Plaintiff's First and Second Sets of Request for Admission ("RFA"), on February 25, 2011 and March 7, 2011 respectively, were evasive and inadequate. For example:

(a) In response to RFA No. 1, Defendant stated that it *lacks sufficient information to admit or deny* that any and all of Defendant's statements by its officers and directors at Bankrate's quarterly earnings conference calls and investor presentations from 2002 until 2009 are true;

(b) In response to RFA No. 3, Defendant stated that it *lacks sufficient information to admit or deny* that any and all of Defendant's S.E.C. filings are true and correct;

(c) In response to RFA Nos. 53-57, which requested that Defendant admit that its co-branding agreements gave Bankrate the sole authority or exclusive right to sell Internet rate table listings or Hyperlink Advertisements on the co-branded website pages, Defendant responded that the *request for admission is unduly burdensome because it would require Bankrate to review and analyze over 100 contracts in order to respond;*

(d) In response to RFA Nos. 85-89, which requested that Defendant admit that it had the sole authority to decide what CPC prices to charge for Internet rate table listings or Hyperlink Advertisements sold on behalf of the co-branded websites, Defendant responded that the *request for admission is unduly burdensome because it would require Bankrate to review and analyze over 100 contracts in order to respond;*

(e) In response to RFA No. 106, Defendant stated that *after reasonable inquiry, Bankrate lacks sufficient information to admit or deny* that

>Defendant publicly declared during its earnings conference calls for the second and fourth quarter of 2006 that Defendant and its co-branding partners split or share revenues 50-50 or basically 50-50.

Therefore, Defendant cannot claim undue delay or bad faith, since Defendant was in control of the very documents and information that proves Plaintiff's claims, and Defendant deliberately continues to delay production of such information to bolster its argument opposing the amendment of the pleadings.

Therefore, Plaintiff respectfully submits that the Court grant Plaintiff's motion for leave to amend its pleadings, since doing so will aid in presenting the merits, no prejudice will be incurred by Defendant and justice so requires.

## II.     Defendant's Futility Argument Lacks Merit

From the outset, this action concerns Defendant Bankrate's violations of Section 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and the New Jersey Antitrust Act.

Moreover, the amendment merely adds particularity to an already-pled cause of action; it does not add a new cause of action to the case. *See LE v. City of Wilmington*, Civ. No. 08-615-LPS (D. Delaware, July 12, 2010).

Nor is Plaintiff seeking to amend the relevant market definition or the product being sold in the relevant market. This Court has already ruled that all of Plaintiff's causes of action have been adequately pled and are allowed to proceed to trial.

It was actually Defendant who insisted that Plaintiff address its exclusive dealing claim prior to filing a motion for summary judgment as requested by Plaintiff on December 12, 2010 [Doc. No. 174].

It is well settled that "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). Likewise, "where an alternative theory has been raised which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow the plaintiff leave to amend because of 'undue delay.'" *Adams v. Gould, supra.*

Defendant recognizes that the agreements between Bankrate and its 130 competing partners involve a horizontal relationship, which is precisely why Plaintiff withdrew its "exclusive dealing" claim as originally pled in July 20, 2007, and re-pleaded the claim as set forth below.

Plaintiff proposed to amend its First Claim for Relief as follows:[2]

> Defendant has illegally restrained trade in the market for Bank Rate Websites in violation of Section 1 of the Sherman Act as follows:
>
> a. by engaging in predatory pricing;
> b. by entering into approximately 130 exclusionary agreements with partners and competitors that granted Defendant the sole authority and/or exclusive right to sell rate table listings on the Internet at a fixed price on behalf of Defendant's cartel, also referred to as a "network";

---

[2] *See* Doc. No. 191-1, Plaintiff's Proposed Fourth Amended Complaint ¶ 280.

  c. by forming a predatory Price-Fixing Cartel with more than 100 partners and competitors that together control more than 300 websites;
  d. by colluding and entering into agreements to divide markets, and allocate revenues, customers, products and Internet traffic with approximately 130 partners and competitors that together control more than 300 websites, including promotional, placement and/or minimum payment guarantees;
  e. by entering into two simultaneous exclusionary contracts dated January 2, 2007 with its competitor LendingTree, forming a Price-Fixing Cartel; and
  f. by dividing markets, accounts, customers, products and Internet traffic, and allocating Bank Rate Website clicks and other products and revenues to Defendant in exchange for its allocating Mortgage Lead Aggregation revenues obtained through its BankrateSelect subsidiary formerly known as FastFind, to LendingTree, including promotional, placement and/or minimum payment guarantees.

The foregoing proposed amendment replaces the First Claim in Plaintiff's Third Amended Complaint filed on October 19, 2009, which previously stated as follows:[3]

> Bankrate has illegally restrained trade in the market for Bank Rate Websites in violation of Section 1 of the Sherman Act by
>
> (a) engaging in predatory pricing and exclusive dealings, and forming a profit-sharing and Price-Fixing Cartel with approximately 100 co-branded Mirror Sites in the market for Bank Rate Websites, in which Bankrate enjoys monopoly power, and
>
> (b) by colluding and entering into exclusive contracts with LendingTree to form a profit-sharing and Price-Fixing Cartel and divide markets, accounts, customers and products, and by allocating Bank Rate Website clicks and

---

[3] *See* Doc. No. 84, Plaintiff's Third Amended Complaint ¶ 117.

other products and revenues to Bankrate in exchange for its allocating Mortgage Lead Aggregation revenues obtained through its BankrateSelect subsidiary formerly known as FastFind, to LendingTree.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant Plaintiff's motion for leave to amend the Third Amended Complaint and for such other and further relief the Court deems just and proper.

Dated:   White Plains, New York
         March 9, 2011

                                        Respectfully submitted,

                                        CANTER LAW FIRM P.C.

                                By:     s/Nelson E. Canter
                                        Nelson E. Canter, Esq.
                                        123 Main Street – 9th Floor
                                        White Plains, New York 10601
                                        (914) 948-3011
                                        ncanter@canterlawfirm.com
                                        *Attorneys for Plaintiff*