**MORDECHAI I. LIPKIS, ESQ.**
50 WALKER STREET, SUITE 2A
NEW YORK, NY 10013

TELEPHONE: 212-925-4023
FACSIMILE: 212-925-4702
E-MAIL: mlipkis@mlipkis.com

March 29, 2011

*Via ECF and FedEx*

Hon. Madeline C. Arleo, U.S.M.J.
United States Court for the District of New Jersey
M.L.K., Jr. Building & U.S. Courthouse
50 Walnut Street Room
Newark, NJ 07101

   Re: *BanxCorp v. Bankrate, Inc*., **Civ. No. 07-03398-SDW-MCA**

Dear Judge Arleo:

  We write on behalf of Plaintiff BanxCorp to respectfully request leave to file a motion pursuant to Fed. R. Civ. P. 26(c) and 45, for a Protective Order forbidding the disclosure or discovery of privileged attorney-client communications between Plaintiff and its former attorney John G. Balestriere ("Balestriere") and his firm Balestriere PLLC (the "Firm"), and to quash a subpoena issued on March 23, 2011 at Defendant's request (the "Subpoena") demanding disclosure of materials and communications between Plaintiff and its former attorney.

  On July 12, 2010 Balestriere and his Firm filed a notice of a fee dispute with this Court, misrepresenting their "intent to file a complaint and any appropriate lien, relying on the *New Jersey* lien statue." [*See* Doc. No. 123-1].

  "The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established." *Schlesinger v. Teitelbaum*, 475 F.2d 137 (3d Cir.), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973); see *also Elder v. Metropolitan Freight Carriers, Inc.*, 543 F.2d 513, 518 (3d Cir.1976).  These cases control here.[1]

  It is also well settled that "<u>to protect the client</u>" [BanxCorp] the former attorney's application and action should have been brought "***at the close of the litigation***", and as a "step in the main cause." *Martin v. Martin*, 762 A.2d 246, 253 (2000).

  Nevertheless, despite its representations to this Court and to circumvent its jurisdiction and New Jersey court rules, the Firm filed a Complaint in New York the next day, i.e., on July 13, 2010, followed by a First Amended Complaint dated August 2, 2010 (the "New York Action"), to recover its alleged legal fees while the underlying antitrust action is pending.  *See Balestriere PLLC vs. BanxCorp et al,* Index No. 650919/2010, Sup Ct, NY County, Doc. No. 4.

---

[1] A separate application by Plaintiff requesting that this Court exercise its jurisdictional, supervisory and disciplinary powers with respect to Balestriere and his Firm is pending.

Hon. Madeline C. Arleo, U.S.M.J.
March 29, 2011
Page 2

As a threshold matter, on or about January 22, 2008 in his application to be admitted *pro hac vice* in the underlying antitrust action, Balestriere swore under oath that he would abide by all rules of this jurisdiction. [*See* Doc. No. 16].

Accordingly, as a result of their representation of BanxCorp before this Court, Balestriere and his Firm subjected themselves to this Court's rules. Thus, their complaint for attorney's fees was maliciously and improperly filed in New York, while the underlying antitrust action is still in the midst of the discovery stage, and resting upon the fundamentally flawed legal premise that this Court has no jurisdiction over the attorney's contingent fee dispute herein.

The Third Circuit has reaffirmed the "unquestioned principle" that all federal courts have "the power both to prescribe requirements for admission to practice before [them] and to discipline attorneys who have been admitted to practice before [them]." *In re Abrams*, 521 F.2d 1094, 1099 (3d Cir.), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975).

The disposition of a fee dispute between attorney and client under N.J.S.A. 2A:13-5 may serve the interests of judicial economy and efficiency by placing the dispute before the same judge who presided over the underlying action, rather than requiring another judge to review a trial record with which that judge has no prior familiarity. *See Levine v. Levine*, 381 N.J. Super. 1, 9-10 (App. Div. 2005) (quoting *Salch v. Salch*, 240 N.J. Super. 441, 444-45, 573 A.2d 520 (App. Div. 1990)).

The device of charging a contingent fee above that allowable under New Jersey rules and then hiring "local counsel" to avoid direct application of New Jersey court rules, as was done by Balestriere and his Firm in this case, is frequently employed by out-of-state firms. New Jersey courts have recognized that "[t]he frequency of the use of this device does not lend it credibility. The abrogation of our court rules in this manner by out-of-state attorneys will no longer be tolerated." *Anderson v. Conley*, 206 N.J. Super. 132, 140, 501 A.2d 1057 (Law Div. 1985). Therefore, the device employed by Balestriere does not operate to remove this matter from under this Court's jurisdiction.

In their First Amended Answer and Counterclaim filed on February 24, 2011 ("Counterclaims"), BanxCorp and its CEO Norbert Mehl ("Mehl") counterclaimed that the the Firm and Balestriere were discharged for cause based on at least *eighteen factors* and therefore are not entitled to any fees (*see Balestriere, supra,* Doc. No. 44 and 44-1, Counterclaims ¶¶ 30-37).

It is axiomatic, of course, that Balestriere must show that he is or will become entitled to a fee before he is entitled to a lien. However, as set forth in the Counterclaims, because Balestriere has been discharged for cause and further because the condition precedent to his right to a fee as provided under his Engagement Agreement – a cash recovery – has not occurred, he simply would not be entitled to either a fee or a lien. *See Industry Network Sys., Inc. v. Armstrong World Indus., Inc.*, 54 F.3d 150, 154 (3d Cir. 1995).

Hon. Madeline C. Arleo, U.S.M.J.
March 29, 2011
Page 3

The Counterclaims further allege that BanxCorp was fradulently induced by the Firm and Balestriere to enter into a contingency-based risk sharing attorney-client relationship which they never intended to honor. Balestriere himself admitted in an affirmation that a contingency fee is typical of his engagement arrangements, and the Firm's website clearly states that it is "rarely paid by the hour." *See* www.balestriere.net and www.risksharingattorney.com.

In addition, the Counterclaims accuse the Firm and Balestriere of negligence and culpable conduct, as well as libel, slander and defamation.

The Firm and Balestriere concocted and drafted certain portions of the New York Action, such as for example Paragraphs 29 through 33, specifically to avail themselves of the privileges associated with court proceedings, with the express purpose of using the pleadings as a device to protect their false, defamatory and prejudicial statements in a veiled attempt to harm BanxCorp's and Mehl's reputation.

"Once filed, the complaint is a public document with access to it available to the public and the news media. But for [a party], purposely and maliciously, to stimulate press coverage and wide publicity of a complaint with its allegedly false and malicious statements is beyond the pale of protection." *See Bridge C.A.T. Scan*, 608 F. Supp. at 1195; *see also Wise v. Consolidated Edison Co. of NY*, 282 AD2d 335 (1st Dept 2001); *HéLIE v. McDermott, Will & Emery*, 2007 NY Slip Op 27523.

The New York Appellate Division's First Department further supports the proposition that a current or former client may invoke DR 4-101 (B) as a ground to prevent an attorney from taking legal action against the client, if such action would lead to a violation of DR 4-101 (B), which imposes a *continuing obligation on attorneys to protect their clients' confidences and secrets, even after representation has concluded*. *HéLIE v. McDermott, Will & Emery*, 2007 NY Slip Op 27523. [Emphasis added]

It is also settled law that even after representation has concluded, a lawyer may not reveal information confided by a former client, or use such information to the disadvantage of the former client or the advantage of a third party. In essence, by needlessly making false and defamatory statements against BanxCorp and Mehl and publicly disclosing privileged attorney-client secrets in total disregard for the most basic Rules of Professional Conduct, Balestriere's actions are tantamount to blackmail and extortion, which have no bearing in a *quantum meruit* dispute.

More specifically, on September 28, 2010 Balestriere sent a copy of the New York Action containing the alleged false, libelous, slanderous and defamatory statements to this Court, with copies to numerous attorneys representing third parties including some of the largest news media in the United States, i.e., Dow Jones & Co., The Wall Street Journal, The New York Times, CNN, Fox News, MSNBC, NBC, and AOL, in separate antitrust actions in which neither Balestriere nor his Firm ever acted as BanxCorp's attorney of record, namely *BanxCorp v. Lending Tree LLC et al*, and *BanxCorp v. Apax Partners L.P. et al* (the "Separate Antitrust Actions"). A subsequent notice was served on the above by Balestriere on February 18, 2011.

Hon. Madeline C. Arleo, U.S.M.J.
March 29, 2011
Page 4

    Moreover, although they knew or should have known that they are not entitled to a lien in the Separate Antitrust Actions since they never acted as BanxCorp's attorney of record, the Firm and Balestriere maliciously threatened these third parties by stating as follows: " I write to follow up on my previous letter dated July 14, 2010, to reiterate that if you participate in any payment of funds to BanxCorp or Mehl related in any way to the Actions without our involvement and consent that you or your client may expose yourself to tort liability."

    The Firm and Balestriere engaged in a deliberate plan to destroy the credibility, business and reputations of BanxCorp and Mehl through false statements and other illegal means which may result in great and irreparable harm. The prejudicial matter unnecessarily inserted in the New York Action, and the prejudicial false statements and communications to this Court and third parties were made by the Firm and Balestriere in a deliberate attempt to interfere with the underlying antritrust action herein and with unrelated judicial proceedings.

    Accordingly, Plaintiff respectfully requests that the Court grant a Protective Order forbidding the disclosure or discovery of any privileged attorney-client communications or information subject to protection as trial-preparation material between Plaintiff and Balestriere and his Firm, and quash Defendant's Subpoena.

                                      Respectfully submitted,

                                      Mordechai I. Lipkis
                                      *Admitted Pro Hac Vice*

                                      s/*Lawrence C. Hersh*
                                      Lawrence C. Hersh

cc:    All Counsel of Record