

**JOHN G. BALESTRIERE**
BALESTRIERE FARIELLO
225 Broadway, Suite 2900
New York, NY 10007
Phone:  +1.212.374.5401
Cell:      +1.917.318.3844
Fax:       +1.212.208.2613
john.balestriere@balestriere.net
www.balestriere.net

March 30, 2011

**VIA ECF**
Honorable Susan D. Wigenton, United States District Judge
Honorable Madeline C. Arleo, United States Magistrate Judge
United States Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

> Re:   **Balestriere PLLC v. BanxCorp and Norbert Mehl, New York Supreme Court , Index No. 650919/2010**

Dear Judge Wigenton and Judge Arleo:

I am former counsel to Plaintiff BanxCorp and its chief executive officer and owner, Norbert Mehl ("Mehl", together with BanxCorp, "the New York Defendants"), in *BanxCorp v. Bankrate, Inc,* Index No. 07-3398 and represent Plaintiff in the above-referenced matter.  I write in response to the letters ("the Letters") dated March 28, 2011, and March 29, 2011, sent to both of Your Honors by Mordechai Lipkis, one of Mehl's current counsel in his various legal actions.  I received an email copy of both Letters yesterday afternoon.  These Letters concern issues which arise not in the *BanxCorp v. Bankrate, Inc.* matter, but in a completely separate lawsuit in New York ("the New York Action") pending before the Honorable Justice Joan Madden in New York County Supreme Court—who, unlike Your Honors, was *not* copied on the Letters, though I copy Justice Madden here.  Justice Madden has largely, if not completely, decided the issues Defendants raise here.

**ASSERTIONS IN THE LETTERS ARE INCORRECT AND THERE IS NO BASIS FOR RELIEF SOUGHT**

I am mindful of my obligations to my former clients and obviously only wish them the best as they prosecute their meritorious claims before Your Honors.  Nonetheless, my former clients, by sending the Letters, force me to correct the many misrepresentations made by Mr. Lipkis, on behalf of my former clients. The New York Defendants are simply wrong in any assertions of any improper conduct on my part or on the part of my firm, and have no basis to seek any of the relief or action regarding my firm they request



in the Letters.  As even a cursory analysis of the papers filed in the New York Action would make clear, I have done only that which I needed to do in order to protect my firm's fee interests.  I have done nothing to harm the New York Defendants' other interests.  BanxCorp's and Mehl's nebulous request for some kind of disciplinary or other action regarding me or my firm should be denied.

**THERE SHOULD BE NO PROTECTIVE ORDER**

There also should be no protective order that concerns me or my staff, who, like me, are aware of our continuing obligations to our former clients.  First, Justice Madden already ruled that there is no basis for this relief sought (*See* Order, dated February 16, 2011 ("Order"), attached hereto, at 13-7).  Second, there simply is no basis for the proposed protective order, shown by the absence of any relevant authority in support of the proposed order in the Letters.  Third, as noted above, the facts Mr. Lipkis lays out are simply incorrect or taken completely out of context, as noted below.  Finally, I am concerned, given Mehl's history in the New York Action and the Letters themselves, that Mehl would use any opportunity to take further time of your Courts and file more papers—warranting a response, no matter how baseless the relief the New York Defendants would seek, and adding more letters for Your Honors to review.  I take no position on Plaintiff's letter motion to quash the March 23, 2011.

**AFTER THREE YEARS OF REPRESENTATION, OUR FIRM WAS DISCHARGED WITHOUT CAUSE AND WE WERE FORCED TO SUE**

It is essential to provide some background.  As Your Honors are aware, my firm represented Plaintiff and Mehl faithfully for three years until we were discharged, without cause, and without even being told of a cause, on June 25, 2011.  After many attempts to work out a proper winding up of our relationship, including many attempts to understand the putative reasons for our termination after our firm had successfully defeated the motions to dismiss and initiated discovery, we were forced to sue Plaintiff and Mehl for fees in the New York Action, filing an initial complaint on July 13, 2010.  We initiated the New York Action after following the required procedures in New Jersey to notice any relevant parties regarding our lien.  After briefing and argument on November 4, 2010, in her Order, Justice Madden upheld our claims against Plaintiff and Mehl for quantum meruit and fraudulent inducement, and denied the New York Defendants' eight motions, filed as Motion Sequences 001 and 002.

Since Justice Madden's Order, the New York Defendants have been busy: they first filed an initial and then amended Verified Answer and Counterclaims, which our firm moved to dismiss.  The New York Defendants followed this by filing or attempting to file thee more motions, over the course of just nine days, generally regarding issues which have already been decided by Justice Madden in the New York Action.  Two of the motions are on for argument before Justice Madden on May 12, 2011.  One has been denied without prejudice because it was improperly filed.

**BALESTRIERE FARIELLO**

The arguments presented to Your Honors in the Letters are without merit and have already been addressed by the Court in the New York Action.  Defendants' application to this Court is simply an improper, last ditch attempt to circumvent Justice Madden's Order.  In their Letters, Defendants rehash arguments they have already made, and which were already decided by Justice Madden, including:

- BanxCorp and Mehl assert that the "action should have been brought at the close of litigation and as a step in the main cause," (March 28, 2011 and March 29, 2011 Letters at 2, citing *Martin v. Martin*, 762 A.2d 246 (2000)). However, Justice Madden already ruled that "it is clear that the Firm has properly filed this action in New York" (Order at 4).

- The New York Defendants claim that "[the New York Supreme Court] has no jurisdiction over the . . . fee dispute" (March 28, 2011 and March 29, 2011 Letters at 2).  Yet, Justice Madden already ruled that "[i]ndeed, no federal court could even have jurisdiction over this dispute" (Order at 4). Moreover, as Defendants admit in their Letter (March 28, 2011 and March 29, 2011 Letters at 2), they have already interposed a counterclaim "unrelated to the plaintiff's claim[s]" in the New York State Action, thus submitting to the jurisdiction of that court, despite their continued arguments that that court does not have jurisdiction. *See, Textile Technology Exchange, Inc. v Davis*, 81 N.Y.2d 56 (1993); *Prezioso v. Demchuck*, 127 A.D.2d 576 (2d Dep't 1987); *Liebling v. Yankwitt*, 109 A.D.2d 780 (2d Dep't 1985).

- BanxCorp and Mehl allege that the Firm improperly revealed confidential information and that this Court should enter a protective order (March 28, 2011, Letter at 3), even though Justice Madden already ruled that "it is clear that defendants have failed to meet their substantial burden of establishing good cause to seal the requested documents.   Significantly defendants do not even attempt o argue that good cause exists for the sealing or redaction they seek" (Order at 10).

I again state the obvious, which is that I am well aware of my obligations to my former clients and obviously wish them the best in this action.  After working on their matter for three years in their claims against Bankrate, Inc., and Lending Tree, LLC (my firm was not involved in any decisions or work to sue the Media Defendants or Apax Partners, LLC), there is no question to me that their existing claims have significant merit, and that they should prevail in this litigation.  I am prepared to provide to Your Honors any further documentation, including any papers filed in the New York Action that Your Honors may wish, and am available to discuss further at Your Honors' leisure.



But the New York Defendants must stop. BanxCorp and Mehl—apparently unopposed by any prudential counsel from their lawyers to the contrary—have now wasted the time of three judges in two jurisdictions seeking relief regarding issues already decided, and without basis in any event. I respectfully oppose any relief sought by BanxCorp and Mehl with regards to me or my firm.

Respectfully Submitted,

John Balestriere

cc:    Honorable Madeline C. Arleo (via ECF)
        Matthew J. Bizzaro, Esq. (via email: MBizzaro@lbcclaw.com)
        Nelson Canter, Esq. (via ECF)
        Roberto Cuan, Esq. (via ECF)
        Michael Hahn, Esq. (via ECF)
        Mordechai Lipkis (via email: mlipkis@aol.com)
        Norbert Mehl (via email: norbert.mehl@banx.com)
        Marian C. Rice, Esq. (via email: mrice@lbcclaw.com)
        Laura Sayler (via ECF)
        R. Scott Thompson, Esq. (via ECF)

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Hon Joan A. Madden_                              PART _11_

Index Number : 650919/2010

**BALESTRIERE PLLC**

vs.

**BANXCORP**

SEQUENCE NUMBER : 001

DISMISS ACTION

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...   _____

Answering Affidavits — Exhibits   _____

Replying Affidavits   _____

Cross-Motion:   ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion _is decided in accordance with the annexed Memorandum Decision and Order._

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

RECEIVED
FEB 1 5 2011
MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

Dated: _February 10, 2011_   _____   _____ J.S.C.

Check one:   ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST   ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.   ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   PART 11
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BALESTRIERE PLLC,

                    Plaintiff,

        -against-                                        Index No. 650919/10

BANXCORP and NORBERT MEHL,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
**MADDEN, J.:**

        This case arises out of the alleged refusal of defendants BanxCorp and Norbert

Mehl (Mehl) to pay for legal services rendered on their behalf by plaintiff Balestriere PLLC (the

Firm) in an antitrust action pending in New Jersey federal court.

        Motion Sequence Nos. 001 and 002 are consolidated for disposition. In Motion

Sequence No. 001, defendants move, pursuant to CPLR 3211 (a) (1), (4) and (7), for an order

dismissing the complaint. Defendants also move, pursuant to DR 3-101 (B) and DR 5-108 (A)

(2), for an order disqualifying John G. Balestriere (Balestriere), and the Firm's attorneys and co-

counsel from acting as plaintiff's counsel. Defendants further move, pursuant to 22 NYCRR

216.1, for an order sealing or authorizing the redaction of certain court records allegedly

containing BanxCorp's privileged attorney-client matters.

        In Motion Sequence No. 002, defendants move, pursuant to CPLR 3103, for a

protectl've order limiting disclosure.

        For the reasons set forth below, defendants' motions are denied.

## ***BACKGROUND***

        On July 13, 2007, Mehl engaged the Firm to represent him and BanxCorp in an

antitrust matter, pursuant to a contingency fee arrangement specifically requested by Mehl, as set forth in an Engagement Letter (First Amended Complaint, ¶¶ 16, 17, 19; *see* Exh A).  During three years of representation, from July 2007 until July 2010, the Firm provided legal services amounting to over 1600 hours of legal work in *BanxCorp v Bankrate, Inc.* (D NJ, Index No. 07-3398)*,* an action involving a series of complex antitrust claims (the 2007 Action)  (*id.,* ¶ 18).  The Firm's work resulted in the denial of three motions to dismiss in the 2007 Action, the initiation of discovery in the 2007 Action, and the writing of the initial complaint in a piggy-back action entitled *BanxCorp. v LendingTree, LLC* (D NJ, Index No. 10-2467) (the 2010 Action) (*id.,* ¶¶ 1, 3-4).

While the Firm's estimated "lodestar" of fees over this period amounts to at least $616,710.63 (*id.,* ¶ 21), under the contingency fee arrangement, neither BanxCorp nor Mehl has paid any fees to the Firm (*id.,* ¶ 19).  Instead, defendants assert that the Firm is not due any fees whatsoever (*id.,* ¶ 9).

On June 25, 2010, Mehl terminated the Firm in a simple one-line email entitled "Notice of Discharge for Cause" (*id.,* ¶ 24; *see* Exh B).  The full text of the email read: "On behalf of BanxCorp, this is to notify you that you have been discharged for cause" (*id.*).  Although Mehl claimed the termination was for cause, he never identified what specifically constituted the cause (*id.*).  After terminating the Firm, Mehl continued to send e-mails threatening to report the Firm to the "appropriate authorities," and the "grievance committee," and withholding all payments (*id.,* ¶ 26).

The Firm then instituted this action to recover its outstanding legal fees.  The Firm alleges two causes of action – quantum meruit and fraudulent inducement.

*ANALYSIS*

**MOTION SEQUENCE NO. 001**

   1.   ***Motion to Dismiss***

         "The scope of a court's inquiry on a motion to dismiss under CPLR 3211 is

narrowly circumscribed" (*P.T. Bank Cent. Asia v ABN AMRO Bank N.V.*, 301 AD2d 373, 375 [1st

Dept 2003]).  Thus, it is well established that, on "a motion to dismiss pursuant to CPLR 3211,

the pleading is to be afforded a liberal construction" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).

The court "must accept as true the facts as alleged in the complaint and submissions in

opposition to the motion, accord plaintiffs the benefit of every possible favorable inference and

determine only whether the facts as alleged fit within any cognizable legal theory" (*Sokoloff v*

*Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]).  Under CPLR 3211 (a) (7), the

"'criterion is whether the proponent of the pleading has a cause of action, not whether he has

stated one [citation omitted]'" (*Leon v Martinez*, 84 NY2d at 88).  Moreover, the court's role is

to determine if the allegations give rise to a cause of action, not to determine "whether there is

evidentiary support for the complaint" (*Bernstein v Kelso & Co., Inc.*, 231 AD2d 314, 318 [1st

Dept 1997]).

         The threshold issue in this action is whether a federal district court in New Jersey

or the New York State Supreme Court has jurisdiction over this case.  Defendants argue, without

legal basis, that the New Jersey District Court is the only court that has jurisdiction over this

matter.  According to defendants, "the underlying antitrust action under Sections 1 and 2 of the

Sherman Act, Section 7 of the Clayton Act, and the respective sections of the New Jersey

3

Antitrust Act ... and derivative issues giving rise to the action herein have a predominant nexus with New Jersey" (Def Mem., at 3).

To the contrary, it is clear that the Firm has properly filed this action in New York which, as defendants do not dispute, is home to the Firm, Mehl and BanxCorp, where all meetings took place, and where virtually all services were provided in the last year. "In general, New York courts may obtain personal jurisdiction over a party based on ... domicile in New York (CPLR 301)" (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v Barnum*, 162 Misc 2d 245, 250 [Sup Ct, NY County 1994]). Thus, this action was appropriately filed in New York.

Indeed, no federal court could have jurisdiction over this dispute. To qualify for jurisdiction in federal court, a party must either establish diversity or subject matter jurisdiction (28 USC §1332). Neither is present here.

Pursuant to 28 USC § 1332 (a):

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1063 (a) of this title, as plaintiff and citizens of a State or of different States.

No diversity exists here, because Mehl, BanxCorp and the Firm are all undisputedly citizens of New York.

Moreover, no subject matter jurisdiction exists, because there is no relief sought

under any federal laws. "This so-called 'arising under' or 'federal question' jurisdiction has long

been governed by the well-pleaded complaint-rule, which provides that 'federal jurisdiction

exists only when a federal question is presented on the face of the plaintiff's properly pleaded

complaint. A federal question 'is presented' when the complaint invokes federal law as the basis

for relief (internal citation omitted)" (*Beneficial Natl. Bank v Anderson*, 539 US 1, 12 [2003]).

Here, the complaint does not seek relief under any federal laws, but rather, alleges only causes of

action for quantum meruit and fraudulent inducement under New York law.

Defendants also contend that the "prior action pending" rule, as codified in CPLR

3211 (a) (4), bars this action because the Firm "initiated an action for fees on notice to U.S.

District Judge for the District of New Jersey Hon. Susan D. Wigenton, BanxCorp and Mehl ... as

a 'step in the main cause' of the [2007 Action]," by letters dated July 12 and July 14, 2010 (Def

Mem., at 3). In the July 12, 2010 letter, Balestriere stated:

> In our complaint, Balestriere Fariello intends to rely upon New
> Jersey's charging lien statute, NJSL 2A:13-5. This letter shall
> serve as notice to BanxCorp and Mehl of our firm's intent to file a
> complaint and any appropriate lien, relying on the New Jersey lien
> statue and any applicable law.
>
> Moreover, pursuant to applicable law, former Plaintiff's counsel
> intends to seek fees from BanxCorp and Mehl under the theory of,
> but not limited to, quantum meruit

(7/12/10 Letter From John G. Balestriere to Judge Wigenton [Aff. of Mordechai I. Lipkis, Exh

B]). Accordingly, defendants argue, since the Firm's action between the same parties for the

same cause of action is pending in New Jersey, the Firm is barred from maintaining this parallel

action in New York.

The court rejects this argument. CPLR 3211 (a) (4) provides that an action may

be dismissed if "there is another action pending between the same parties for the same cause of action in a court of any state of the United States." There is no other action pending between the Firm and defendants in New Jersey federal court. Defendants, who cite neither a pleading nor index number for supposed initial action, argue that the federal antitrust action in which the Firm used to represent defendants is the purportedly duplicative matter (Def Mem., at 1, 3). Clearly, the parties in that matter, the 2007 Action, are not the same parties as here. Moreover, neither of the causes of action alleged in the complaint herein are alleged in the 2007 Action.

In addition, the Firm never initiated a lawsuit in New Jersey. An action is commenced by the filing of a complaint. An action cannot, however, be initiated by the filing of a letter, particularly in a court which does not have subject matter jurisdiction over the dispute here. Indeed, as specified under applicable New Jersey case law, and as suggested by the District Court chambers in the 2007 Action (*see* Balestriere Aff., ¶ 6), the letter filed by the Firm was a proper way to notice the Court and the parties of its intent to pursue its appropriate legal options to secure fees in the 2007 Action:

> The [New Jersey lien] statute itself puts parties on notice that a lien may be claimed but ... we can understand why additional, specific notice of the intent to rely on [the New Jersey lien statute] is sensible and warranted . ... A letter to the client, court, and substituting counsel would suffice as would properly worded language on or attached to the written substitution of attorney

(*Martin v Martin*, 335 NJ Super 212, 223-224 [2000] [internal citation omitted]). It does not, however, serve the same function as a complaint.

Defendants further argue that the Firm has failed to properly plead a cause of action for quantum meruit because they have terminated the Firm's employment. However, an

attorney who is discharged before the completion of services may recover the reasonable value of his services in quantum meruit (*see Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38 [1990]; *Teichner v W&J Holsteins*, 64 NY2d 977 [1985]; *Seth Rubinstein, P.C. v Ganea*, 41 AD3d 54 [2d Dept 2007]; *see e.g. Levy v Laing*, 43 AD3d 713 [1st Dept 2007] [since defendants' discharge of plaintiff cancelled the contingency fee arrangement, plaintiff was entitled to recover in quantum meruit the fair and reasonable value of his services]).  Thus, the Firm's quantum meruit claim clearly states a cause of action.

Defendants also seek to dismiss the fraudulent inducement cause of action for failure to state a cause of action on the ground that "[t]he public policy of New York which permits a client to terminate the attorney-client relationship freely at any time ... would be easily undermined if an attorney could hold a client liable for fraud" (Def Mem., at 6).  To properly plead a common-law claim for fraudulent inducement, a plaintiff must allege a misrepresentation of a material fact, falsity of the misrepresentation, scienter, plaintiff's reasonable reliance on the alleged misrepresentation, and injury resulting from the reliance (*Small v Lorillard Tobacco Co.*, 94 NY2d 43 [1999]; *see also P.T. Bank v Central Asia v ABN AMRO Bank N.V.*, 301 AD2d 373, *supra*).

Here, as the Firm pleads, Mehl, through BanxCorp, falsely represented his intent to enter into a risk sharing arrangement with the Firm, and pay the Firm for its legal services (First Amended Complaint, ¶¶ 45-46).  The Firm alleges that Mehl knowingly made these false representations with the intent to defraud the Firm out of its fees (*id.*, ¶ 47), and that it relied on this deception for three years, and continued to provide legal services during that time (*id.*, ¶¶ 47-49).  The Firm further alleges that it has suffered damages, at a minimum, in the amount of

$616,710.63 (*id.*, ¶ 21). Thus, the Firm has adequately pleaded all of the necessary elements to sustain a cause of action for fraudulent inducement.

Defendants also assert that the fraud cause of action must be dismissed because "a separate cause of action for fraud is not stated where, as here, the alleged fraud related to a breach of contract" (Def Mem., at 7). The Firm is not, however, bringing a claim simultaneously sounding in fraud and contract. The first amended complaint contains no claim for breach of contract. Indeed, the Firm has not alleged any breach of contract, but rather has asserted a claim for quantum meruit, that is, as previously stated, for the reasonable value of the services provided. When an attorney is discharged without cause and where there is a contingency fee arrangement, an attorney may chose whether to seek to recover in quantum meruit for the reasonable value of services or a percentage of the recovery (*see generally, Cohen v. Grainger, Tesoriero & Bell*, 81 NY2d 655, 658 [1993]) .

Finally, defendants argue that the first amended complaint must be dismissed as against Mehl as he cannot be personally liable under contract because he signed the Engagement Letter as a corporate officer of BanxCorp, and not in his individual capacity. However, the first amended complaint contains no breach of contract cause of action. Moreover, Mehl "can be held liable ... to the extent that the [first amended] complaint pleads tort claims against him, since a corporate officer who participates in the commission of a tort can be held personally liable even if the participation is for the corporation's benefit" (*Retropolis, Inc. v 14th St. Dev. LLC*, 17 AD3d 209, 211 [1st Dept 2005]; *see also Apollo H.V.A.C. Corp. v Halpern Constr., Inc.*, 55 AD3d 855 [2d Dept 2008]).

Accordingly, defendants' motion to dismiss the first amended complaint is denied.

8

2.    *Request To Seal or Redact Certain Documents*

Defendants make an application, pursuant to 22 NYCRR 216.1, for an order

authorizing the sealing or redaction of certain court records, including certain sections of the

complaint, containing "all confidential matters revealed by Defendants to Plaintiff prior to the

commencement of this action, which are protected under the attorney client privilege" (Def

Mem., at 12).

Under New York law, there is a broad presumption that the public is entitled to

access to judicial proceedings and court records (*Mancheski v Gabelli Group Capital Partners*,

39 AD3d 499 [2d Dept 2007]; *Gryphon Domestic VI, LLC v APP Intl. Fin. Co., B.V.*, 28 AD3d

322 [1st Dept 2006], *lv denied* 10 NY3d 705 [2008]).  The public right to access, however, is not

absolute (*Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1 [1st Dept 2000]).  A

court is empowered to seal court records pursuant to section 216.1 (a) of the Uniform Rules for

Trial Courts (22 NYCRR 216.1 [a]).  That rule states that:

> Except where otherwise provided by statute or rule, a court shall
> not enter an order in any action or proceeding sealing the court
> records, whether in whole or in part, except upon a written finding
> of good cause, which shall specify the grounds thereof.  In
> determining whether good cause has been shown, the court shall
> consider the interest of the public as well as of the parties

(22 NYCRR 216.1 [a]).

Although the term "good cause" is not defined, "a sealing order should clearly be

predicated upon a sound basis or legitimate need to take judicial action" (*Gryphon Domestic VI,

LLC v APP Intl. Fin. Co., B.V.*, 28 AD3d at 325).  "A finding of 'good cause' presupposes that

public access to the documents at issue will likely result in harm to a compelling interest of the

9

movant" (*Mancheski v Gabelli Group Capital Partners*, 39 AD3d at 502). "Confidentiality is clearly the exception, not the rule" (*Matter of Hoffman*, 284 AD2d 92, 93-94 [1ˢᵗ Dept 2001]), and the party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access (*Mancheski v Gabelli Group Capital Partners*, 39 AD3d 499, *supra*; *Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1, *supra*). In making this determination, the court must balance the interests of the public as well as of the parties (*Doe v New York Univ.*, 6 Misc 3d 866 [Sup Ct, NY County 2004]). The First Department has sanctioned sealing in only very limited circumstances, such as to protect trade secrets, or preserve the privacy of an infant (*see Gryphon Domestic VI, LLC v APP Intl. Fin. Co., B.V.*, 28 AD3d 322, *supra*).

Applying these principles, it is clear that defendants have failed to meet their substantial burden of establishing good cause to seal the requested documents. Significantly, defendants do not even attempt to argue that good cause exists for the sealing or redaction that they seek. Moreover, they have not addressed any specific documents sought to be sealed, which is required in order to meet their burden (*see Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1, *supra* [conclusory sealing of entire record is improper]; *Art Capital Group, LLC v Getty, Images, Inc.*, 24 Misc 3d 1247[A], 2009 NY Slip Op 51909[U] [Sup Ct, NY County 2009] [defendants' failure to address specific documents was fatal to request to seal]). Rather, defendants merely conclusory seek the sealing of documents containing "all confidential matters revealed by Defendants to Plaintiff prior to the commencement of this action" (Def Mem., at 15). Nor have they shown a proper ground for sealing the records, such as the protection of trade secrets. Therefore, their request is denied (*see e.g. Mosallem v Berenson*, 76 AD3d 345 [1ˢᵗ Dept

10

2010] [defendants' motion to seal record denied as plaintiff failed to show good cause to seal exhibits to plaintiff's opposition to the motion to dismiss]).

### 3.    *Motion For Disqualification*

In support of their motion for disqualification, defendants conclusorily assert that "Balestriere should be disqualified from representing [the Firm] in this or any related action against Defendants due to conflicts of interest with its former client BanxCorp." (Def Mem., at 9). Specifically, defendants assert that the first amended complaint and the letters to the court in the 2007 Action "are riddled with impermissible public disclosures of BanxCorp's confidential information, privileged work product and matters prepared for litigations, misrepresentations about its corporate structure, derogatory misinformation about its operations, financial matters, books and records, and false attributions to BanxCorp's officers and directors" (Def Mem., at 10-11).

A party seeking disqualification of its adversary's lawyer pursuant to Code of Professional Responsibility DR 5-108 (a) (1) has the burden of proving: (1) the existence of a prior attorney-client relationship between the moving party and opposing counsel; (2) that the matters involved in both representations are substantially related; and (3) that the interests of the present client and former client are materially adverse (*Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631 [1998]). Only "where the movant satisfies all three inquiries does the irrebutable presumption of disqualification arise" (*Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 132 [1996]).

With respect to the second prong, counsel will only be disqualified where the party seeking that relief meets his burden by establishing a substantial relationship between the

11

issues in the present litigation and the subject matter of the prior representation, or where counsel had access to confidential material substantially related to the litigation (*Lighting Park, Inc. v Wise Lerman & Katz*, 197 AD2d 52 [1st Dept 1994]; *Prudential Securities, Inc. v Wyser-Pratte*, 187 AD2d 306 [1st Dept 1992]). Here, defendants have not met that burden, and the motion for disqualification is denied.

In order to meet the substantial relationship test, the issues in the present litigation must be "identical to" or "essentially the same as" those in the prior case before disqualification will be granted (*Lighting Park, Inc. v Wise Lerman & Katz*, 197 AD2d 52, *supra*). However, the issues in the current action are completely different than the issues raised in the 2007 Action. This action is merely an action in which the Firm is seeking payment of outstanding legal fees, while the 2007 Action was a complex antitrust action. Defendants' failure to demonstrate any substantial relationship between the Firm's current representation of itself, and its prior representation of defendants, without more, warrants denial of its disqualification motion (*see Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d at 637 ["There being no evidence of a substantial relationship between [the attorney's] past and current representation, on that ground alone no violation of DR 5-108 (a) (1) was demonstrated"]).

Defendants also fail to present any evidence that Balestriere has any "confidence" or "secret" of BanxCorp that is material to this matter. Rather, they offer only the sort of "generalized assertions of 'access to confidences and secrets'" that is insufficient to meet their burden on this motion (*Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d at 638).

Accordingly, the motion for disqualification is denied.

12

*MOTION SEQUENCE NO. 002 – MOTION FOR A PROTECTIVE ORDER*

Defendants seek a protective order on the ground that the Firm's discovery

demands – specifically, the First Set of Interrogatories and First Request for Discovery and

Inspection – "have been specifically designed to provoke unreasonable annoyance, expense,

embarrassment, disadvantage and other prejudice to BanxCorp and Mehl, and are not reasonably

related to the specific subject matter directly connected to this litigation" (Def Mem., at 6).

Defendants further assert that "the requested interrogatories and documents are protected from

disclosure by the attorney-client privilege, by the attorney work product doctrine, and as material

prepared in anticipation of litigation, and are therefore immune from discovery" (Def Mem., at

5).

First, defendants' motion must be denied because it seeks relief under an

inapplicable CPLR provision. If a party objects to a discovery demand, the party should object

pursuant to CPLR 3122 (a), and not pursuant to CPLR 3103:

> Plaintiff moved for a protective order from this discovery demand
> pursuant to CPLR 3103 ("Protective orders"). Plaintiff's proper
> course of action, however, was to respond to defendant pursuant to
> CPLR 3122 ("Objection to discovery, inspection or examination").
> These two sections of the CPLR are in direct conflict. The former
> provides for protection by motion. The latter requires a party
> objecting to a notice for discovery to serve a response within
> twenty (20) days, on the requesting party stating objections with
> reasonable particularity, whereupon the requesting party may move
> for an order to compel disclosure pursuant to CPLR 3124. Thus,
> CPLR 3122, as amended, seems intended to diminish judicial
> involvement until the point where the parties have exhausted all
> attempts at resolution. ... In light of the foregoing, the Court finds
> the more specific discovery rule, CPLR 3122, applicable in place
> of the more general CPLR 3103

(*Forest Hills Gardens Corp. v Kamp*, 165 Misc 2d 915, 916-917 [Civil Court, Queens County

13

1995], *affd* 171 Misc 2d 334 [App Term, 2d Dept 1997]). Defendants were thus obligated, under

CPLR 3122, to "serve a response which shall state with reasonable particularity the reasons for

each objection." Defendants fail to present any evidence that they complied with CPLR 3122.

Instead, they improperly moved for a protective order.

   Moreover, a protective order here is inappropriate, unnecessary, and without good

cause. While CPLR 3101 (a) requires "full disclosure of all matter material and necessary in the

prosecution or defense of an action," CPLR 3103 (a) authorizes the court to "issue a protective

order denying, limiting, conditioning or regulating the use of any disclosure device, in order to

prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to

the other party" (*see Spohn-Konen v Town of Brookhaven*, 74 AD3d 1049, 1049 [2d Dept 2010]).

Protective orders are designed for the "prevention of abuse" (CPLR 3103 [a]), and are entered

only in extreme situations where there is clear abuse of the discovery process (*see e.g. Tornheim

v Blue & White Food Prods. Corp.*, 73 AD3d 745, 745 [2d Dept 2010] [protective order entered

on ground that "plaintiff requested the production of any and all documents relating to a

transaction which occurred seven years after the events at issue in this case transpired," and

"[t]hose documents were irrelevant to the plaintiff's case"; thus, "the request was both overly

broad and unduly burdensome"]).

   "In making this determination as to whether disclosure is warranted, the courts

employs a test of 'usefulness and reason,' balancing the importance to the plaintiff's claim of the

information sought versus the consequences of disclosure (internal citation omitted)" (*Feger v

Warwick Animal Shelter*, 59 AD3d 68, 70 [2d Dept 2008]). The trial court possesses broad

discretion to deny demands that are unduly burdensome or that seek irrelevant or improper

14

information (*see Scalone v Phelps Mem. Hosp. Ctr.*, 184 AD2d 65 [2d Dept 1992]; *see also Gilman & Ciocia, Inc. v Walsh*, 45 AD3d 531, 531 [2d Dept 2007] [the "'supervision of disclosure and the setting of reasonable terms and conditions therefor rests within the sound discretion of the trial court and, absent an improvident exercise of that discretion, its determination will not be disturbed (citation omitted)'"]).  The proponent of a motion for a protective order must make an appropriate factual showing to be entitled to such relief (*Willis v Cassia*, 255 AD2d 800 [3d Dept 1998]).  In the case at bar, defendants have failed to meet that burden.

Defendants never make any argument, or present any examples of how the Firm's claims are unreasonable but simply state, in isolation, that the Firm's discovery demands "are *not* reasonably related to the specific subject matter directly connected with this litigation" (Def Br., at 6 [emphasis in original]).  To the contrary, it is clear that the Firm has issued document demands and interrogatories seeking responses which are both reasonable and directly related to this litigation.  These demands include, for example, demands regarding communications about the litigation and defendants' legal matters (*see* Document Demands 2, 3, 14, 16, 19); the financial and legal matters of defendants (*see* Document Demands 3, 7, 11, 12, 13, 15, 17, 18; Interrogatories 6, 7, 12), and information regarding employees and the corporate structure of BanxCorp (Document Demands 5, 6, 8, 9, 10; Interrogatories 6, 7, 12).

Furthermore, contrary to defendants' claims, no responses to any of the Firm's interrogatories or document demands are protected by the attorney-client privilege.  Indeed, defendants never argue why they believe that any responses to the Firm's demands are privileged. The Firm's interrogatories and document demands ask defendants to produce documents

15

regarding or identifying persons with knowledge of the instant dispute (Document Demands 2, 3, 4, 14, 15; Interrogatories 3, 4); BanxCorp's staff, financials, legal matters, addresses, vendors and structure of BanxCorp (Document Demands 5, 6, 7, 8, 9, 10, 11, 12,13, 16, 17; Interrogatories 5, 6, 8, 9, 10, 11); attorneys used in litigation (Document Demand 18; Interrogatory 12); a summary of current and past legal matters (Interrogatory 7); and time spent on the matters in question by Mehl, a non-attorney who is acting pro se in this litigation (Document Demand 19; Interrogatory 13). None of these demands could even be loosely construed as covered by the attorney-client privilege.

Defendants also claim that the document requests are covered by the attorney work product doctrine. Under CPLR 3101 (c), "[t]he work product of an attorney shall not be obtainable." However, "the case law makes clear that such exception is 'very narrowly construed ... including only materials prepared by an attorney, acting as an attorney, which contains his analysis and strategy" (*Salzer ex rel Salzer v Farm Family Life Ins. Co.*, 280 AD2d 844, 846 [3d Dept 2001]). Given that "[t]he burden of demonstrating that particular items are immune from discovery is upon the party asserting immunity ... the mere assertion that items constitute attorneys' work product or material prepared for litigation will not suffice" (*Graf v Aldrich*, 94 AD2d 823, 824 [3d Dep 1983]).

Here, defendants do no more than conclusorily assert that the requested documents are attorney work product. This assertion is insufficient to compel the issuance of a protective order. Moreover, defendants make no argument as to why the attorney work product doctrine would apply to any of the demands. Indeed, the Firm does not seek any attorney work product in the demands. Rather, defendants seek the production of documents regarding the

16

dispute, or the identity of persons with knowledge of the instant dispute (Document Demands 2, 3, 4, 14, 15; Interrogatories 3, 4).  Plaintiff further requests documents and responses regarding BanxCorp's staff, financials, legal matters, addresses, vendors and structure of BanxCorp (Document Demands 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17; Interrogatories 5, 6, 8, 9, 10, 11). Responses to these demands would not be covered by the attorney work product doctrine, because none of the documents sought were made by an attorney in the course of litigation.

Thus, defendant's motion for a protective order is denied.

The court has considered the remaining arguments, and finds them to be without merit.

Accordingly, it is

ORDERED that defendant's motion to dismiss (Motion Sequence No. 001) is denied; and it is further

ORDERED that defendants' motion for disqualification (Motion Sequence No. 001) is denied; and it is further

ORDERED that defendants' motion for an order authorizing the sealing or redaction of documents (Motion Sequence No. 001) is denied; and it is further

ORDERED that defendants' motion for a protective order (Motion Sequence No. 002) is denied.

Dated: February //, 2011

_____
J.S.C.

17