**MORDECHAI I. LIPKIS, ESQ.**
350 BROADWAY, SUITE 1105
NEW YORK, NY 10013

TELEPHONE: 212-925-4023
FACSIMILE: 212-925-4702
E-MAIL: mlipkis@mlipkis.com

June 6, 2011

*Via ECF and FedEx*

Hon. Madeline C. Arleo, U.S.M.J.
United States District Court for the District of New Jersey
M.L. King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

   Re: *BanxCorp v. Bankrate, Inc.*, **Civ. No. 07-3398-SDW-MCA**

Dear Judge Arleo:

  We write on behalf of Plaintiff BanxCorp in response to Defendant Bankrate's counsel's June 3 letters [Doc. Nos. 241-242] and regarding certain issues that we are seeking to address at tomorrow's in-person conference as set forth below, including a request that the Court order depositions of the parties to be completed by July 15, 2011, order Defendant to comply with discovery obligations, extend discovery deadlines by no more than 45 days, and set a trial date for November 2011.

  **1. Document Production**

  First, we would like to address certain misrepresentations in Defendant's June 3 letters. Plaintiff has indeed produced more than 23,600 documents to date, including nearly 20,000 documents since the Court's April 4, 2011 Order. Plaintiff's document production included (a) thousands of contracts with customers from 1998 to the present (e.g., documents labeled BX003070-3771 and BX004262-BX006161); (b) financial statements and tax returns from 1998 to 2009 (e.g., documents labeled BX000268-BX000378 and BX004229-BX004243); (c) itemized sales reports and invoice details from 1996-2010 (e.g., documents labeled BX004193-4228); (c) numerous business plans, executive summaries and board materials or presentations; (d) all of Plaintiff's contracts with co-branding partners which were already produced in earlier productions; and (e) e-mails of BanxQuote's officers and former employees going back to 1998.

  Plaintiff's sworn declarations by its CEO Norbert Mehl thoroughly attest to BanxCorp's document retention policies and procedures, and its exhaustive search methodology and production in full compliance with the Court's April 4, 2011 Order. [*See* Doc. Nos. 213 and 220-1, attached hereto as Ex. 1] In conclusion, Plaintiff has produced all relevant and non-privileged responsive documents in its possession and control.

  With respect to Plaintiff's previous request for reciprocal treatment pertaining to Defendant's discovery deficiencies, at the March 31, 2011 conference Your Honor stated as

Hon. Madeline C. Arleo, U.S.M.J.
June 6, 2011
Page 2

follows: "You need to have a serious meet-and-confer with your adversaries. I'm not going to hear any of these new document requests until I am satisfied that there has been a meaningful meet-and-confer, it has failed, you brief it to me, electronically filed, category by category, tell me what you want, why it's relevant, and why they haven't produced it." [Doc. No. 228, March 31, 2011 Hr'g Tr. 59:13-19]

Nevertheless, despite repeated requests and attempts to resolve disputes through meaningful meet and confers as directed by the Court, including more specifically a meet and confer held on April 21, 2011 [*see* Doc. No. 220], Defendant refused to produce adequate responses to requests for admission, responses to interrogatories, and documents requested months, and in some cases, years ago, unless ordered by the Court. [*See* Doc. No. 201, 201-1, and 201-2]

Most troubling is Defendant's attempt to cover up any evidence in its possession related to Plaintiff's damages, Defendant's market power and market share, competition and predatory pricing including free rate listings.

Plaintiff requests that this Court order Defendant to comply with its discovery obligations and Court Orders as set forth in detail in Plaintiff's Letter Brief and Exhibits 1-13 dated March 28, 2011 [*see* Doc. No. 201, 201-1, and 201-2], and for sanctions.  Due to Defendant's failure to produce the e-mails of Peter Morse pursuant to Paragraph 11 the Court's October 18, 2010 Supplemental Scheduling Order, and failure to produce documents or adequate responses related to its merger discussions and meetings with Plaintiff including the parties' respective market valuations as provided by PaineWebber, Plaintiff further asks the Court to impose an adverse inference or spoliation inference against Defendant Bankrate.

2. **Depositions**

Second, nobody is more eager to move forward with depositions than Plaintiff here.  We repeatedly attempted to discuss with Defendant's counsel the scope and scheduling of reciprocal depositions, more specifically the deposition of its witnesses Tom Evans (Bankrate's CEO), Elisabeth DeMarse (Bankrate's former CEO) and Peter Morse (Bankrate's chairman). [*See, e.g.,* Plaintiff's good faith efforts memorialized in its correspondence from April 21 to June 1, 2011, attached hereto as Ex. 2]

For example, on May 1, 2011 we wrote to counsel advising that "Mr. Mehl would be available sooner for his deposition pertaining both to BanxCorp DRP matters *and any other matters related to the litigation*" on any mutually agreeable date after May 11th. This would have certainly expanded the scope of Mr. Mehl's deposition beyond the DRP and search methodology issues, thus avoiding unnecessary requests for ruling concerning matters related to scope or interpretation of the April 4, 2011 Order. Moreover, at a meet and confer held on May 19th Defendant's counsel continued to refuse to discuss the scope or scheduling of any depositions, expect for insisting that Mr. Mehl be deposed in connection with the April 4 Order.

Hon. Madeline C. Arleo, U.S.M.J.
June 6, 2011
Page 3

When the parties agreed to re-schedule Mr. Mehl's deposition to June 1, we proposed that it be held at Lowenstein Sandler's Manhattan location, in the event that our local counsel Lawrence Hersh had any unforeseen last minute scheduling conflicts. Upon consultation with Mr. Mehl and Mr. Hersh, and since I had a previous engagement on that date, we arranged for Brian Peroff, a New Jersey-licensed attorney, to represent Mr. Mehl during his DRP-related deposition on June 1. Mr. Peroff was referred to us by another counsel who routinely places per diem attorneys to cover appearances and discovery procedures in federal courts. We believed in good faith that this was the most prudent and practical course of action, and would thus avoid any further delay or last minute cancellation.

Mr. Mehl's deposition on June 1 started shortly after 10 a.m. and lasted until nearly 3 p.m. (which substantially exceeded the minimum 3 hours occasionally charged by certain court reporters or videographers). At most, there would have been only two more hours left to complete the DRP deposition. As such, there is no justification to sanction Plaintiff for any inadvertent administrative error. Furthermore, it is our understanding that Mr. Peroff intends to file a notice of appearance in this action.

In any event, we respectfully request that the Court authorize and order depositions of both parties to go forward, so that they can be completed no later than July 15, 2011.

Plaintiff's deposition of Bankrate's witness Tom Evans will focus on his public declarations at Bankrate's quarterly Earnings Conference Calls, contract negotiations with partners and competitors, acquisitions of partners and competitors, revenue sharing with partners and competitors, and customer allocation and pricing practices, in addition to other matters.

Plaintiff's deposition of Bankrate's witness Elisabeth DeMarse will focus on her personal meetings and communications with Mr. Mehl, the status of any documents previously maintained by Ms. DeMarse in her business and/or home office or elsewhere related to BanxQuote, identifying if, how and when any such documents were lost or destroyed and the circumstances of such loss or destruction, and Mr. Morse's document retention policies, procedures, and search methodology, in addition to other matters.

Plaintiff's deposition of Bankrate's witness Peter Morse will focus on Bankrate's and his personal meetings or communications with Mr. Mehl, the status of any documents previously maintained by Mr. Morse at his Conshohocken, Pennsylvania main office and/or elsewhere related to BanxQuote, identifying if, how and when any such documents were lost or destroyed and the circumstances of such loss or destruction, and Mr. Morse's document retention policies, procedures, and search methodology, in addition to other matters.

3. **Defendant's Groundless Applications for Sanctions Concerning Cross-Motions**

Third, during the March 31, 2011 hearing, your Honor stated the following regarding Defendant's leave to file a motion to dismiss: "my order will allow the motion with the understanding that you're going to move to dismiss it, and you'll also be allowed to raise any other issues as to the timeliness of the -- and the prejudice of the amendment … I want the

papers filed as soon as humanly possible because you have all the arguments ... because it's just going to be *a repackaging of the same exact arguments in a different form…*" [Doc. No. 228, March 31, 2011 Hr'g Tr. 10:1-5, 11-16]

Instead, Defendant filed a motion fully rearguing the pre-existing law of the case, requesting the dismissal of *all* claims previously allowed to proceed, and introducing new issues of fact and extraneous exhibits which triggered a conversion into a motion for summary judgment. Moreover, on April 22, 2011 Defendant expressly stated that it will not respond to the cross-motions. After the notice of cross-motion for summary judgment was withdrawn, Plaintiff merely submitted a letter requesting *leave* to apply for a summary declaratory judgment and injunctive relief [*see* Doc. No. 222-1]. Defendant's June 3 letters completely mischaracterized the facts. Accordingly, Defendant's request for sanctions should be denied.

4.  **Burden of Proof**

Finally, we wish to bring to the Court's attention that according to the antitrust *per se* rule of analysis applicable in this action, only issues of causation, injury and damages may require discovery for private recovery under Section 4 of the Clayton Act, 15 U.S.C. § 15.

The issues of antitrust injury and causation have already been publicly admitted and put to rest by Defendant Bankrate's CEO Tom Evans on May 2, 2007 within three months of its co-branding agreement with LendingTree, as follows: *"One of the things that is a tremendous gating item for us, we believe is in terms of competition, and barriers for competition, is how does anybody else break into this, if we have tied up all the best newspaper relations, the best co-brand relationships and we've got a dynamic organic traffic website. How does anybody else get into this business and compete with Bankrate?"* [Bankrate's Q1-07 Earnings Conference Call, document labeled BX000601] Plaintiff has shown antitrust injury as a matter of law, and anticompetitive injury to itself, any other remaining independent competitors, and consumers.[1]

Since the antitrust injury and anticompetitive effects of the restraint of trade between Bankrate and its 130 co-branding partners are conclusively presumed with no consideration given to the intent behind the restraint since the counterparties were horizontal competitors[2], the only inquiry is whether there were such agreements, which have indeed been produced and submitted on the record. Neither a relevant market nor an estimate of Defendant's market power must be established to prove that the restraints were unlawful *per se*.[3]

---

[1] *See* this Court's July 7, 2007 Opinion at 18 [Doc. No. 20]; *see also* this Court's Feb. 7, 2011 Opinion in the related LendingTree Action at 6-7.

[2] *See BanxCorp v. Bankrate Inc.*, Civ. No. 07-3398 at 6-7 (D.N.J. Sept. 14, 2009); *see also BanxCorp v. LendingTree LLC*, Civ. No. 10-246 at 7-10 (D.N.J. Feb. 7, 2011).

[3] *See United States v. Topco Associates, Inc.,* 405 U.S. 596, 60(1972); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *Maricopa County Medical Soc'y*, 457 U.S. at 344, 102 S.Ct. 2466); *NCAA v. Bd. of Regents*, 468 U.S. 85, 100 (1984); *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); *Copperweld Corp. v. Independence Tube*

Plaintiff's burden of proving the fact of damage under § 4 of the Clayton Act would be satisfied by its proof of some damage flowing from Defendants' *per se* unlawful conduct; inquiry beyond this minimum point goes only to the amount and not the fact of damage.[4]

Requiring a plaintiff to demonstrate that an injury stemming from a *per se* violation of the antitrust laws caused an actual, adverse effect on a relevant market in order to satisfy the antitrust injury requirement comes dangerously close to transforming a *per se* violation into a case to be judged under the rule of reason.[5] Plaintiff is not required to prove a causal connection between each of the injuries jointly caused by Bankrate and a particular co-conspirator such as LendingTree or any of Bankrate's 130 co-branding partners/competitors.[6]

While the liability pursuant to each cause of action or of each co-conspirator may present separate and distinct issues entirely independent of each other, there is a single unified damage to Plaintiff. Plaintiff is therefore entitled to shift the burden of proof on the issue of causation to Defendant.[7]

Thank you for Your Honor's consideration of these issues.

Respectfully submitted,

Mordechai I. Lipkis

cc: All counsel of Record

---

*Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Broad. Music, Inc. v. Columbia Broad. Sys.*, 441 U.S. 1, 19-20 (1979).

[4] *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U. S. 100 (1969).

[5] *See Pace Elecs., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 123 (3d Cir. 2000).

[6] *See In re Uranium Antitrust Litigation*, 617 F.2d 1248 (7th Cir.1980).

[7] *See generally Hall v. DuPont*, 345 F.Supp. 353, 370-380 (E.D.N.Y.1972); *see also Bogosian v. Gulf Oil Corp.,* 562 F.2d 434, 454 (3d Cir. 1977).