# LAW OFFICES OF KRISTEN RENZULLI, PC
_____

31 OVERLOOK DRIVE
CHAPPAQUA, NEW YORK 10514
914.263.7703
914.238.9506 FAX
kristen@renzullipc.com

December 12, 2011

*Via ECF and FedEx*

Hon. Cathy L. Waldor, U.S.M.J.
United States Court for the District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re:    **In re: Rule 45 Subpoena to Panache Privee Ltd.**
               *BanxCorp v. Bankrate Inc*., Civ. No. 07-3398 (ES)(CLW)

Dear Judge Waldor:

      I am co-counsel for Panache Privee Ltd. ("Panache Privee") and am writing in response to a letter from counsel for Bankrate/Morse Partners to Your Honor dated December 9, 2011.

      Bankrate's sole argument concerning the relevancy of its D.N.J. and S.D.N.Y. duplicative subpoenas reveals that its sweeping document requests with open ended and previously undefined dates were based on a November 28, 2005 e-mail[1] referring to an unrelated luxury lifestyle print magazine called Panache, which was subsequently discontinued. Panache Privee Ltd. is a different business entity that was incorporated a year later in New York on November 10, 2006, and the domain name *panacheprivee.com* was not even created until September 11, 2006. These subpoenas appear to be a case of mistaken identity.

---

[1] As mentioned in Plaintiff's October 7, 2011 Appendix I deficiency claims [Doc. No. 283-1, at 9] and Plaintiff's March 28, 2011 letter to Judge Arleo [Doc. No. 201, at 2], Plaintiff's November 28, 2005 e-mail was actually triggered by Bankrate's acquisition of its competitor MMIS/Interest.com on or about November 20, 2005, which further induced and accelerated Plaintiff's exit of the relevant market. *See* Fourth Am. Complaint ¶¶ 201-211. Exemplifying Bankrate's obstructionism and double-standards concerning Rules 26 and 45, in an effort to continue to shield Bankrate's chairman Peter Morse and his company Morse Partners Inc. – currently the subject of a subpoena by BanxCorp for *morsepartners.com* e-mails – Defendant now omitted the disclosure of a November 28, 2005 full e-mail string probative of previous merger discussions between Bankrate and BanxCorp, which stated as follows:

> "*We have approached him* [BanxCorp] 2x [twice] I think. Once was *bill anderson* [referring to Bill Anderson, Bankrate's CEO in 1998] and *peter* [referring to Peter Morse, Bankrate's chairman] the other was *elisabeth* [referring to Elisabeth DeMarse, Bankrate's CEO in 2000]. They [BanxCorp] are I believe, tiny. Would be interested in the book. Could be a decent [acquisition] fit if the $ wasn't too high… [Doc. No. 199, at 3-4, labeled BR00042867/8]

Considering that Panache Privee's date of incorporation is publicly available, it is inexcusable for defense counsel to have failed to take reasonable steps and conduct basic due diligence as a predicate for its subpoenas, and avoid imposing an undue burden and expense as required under Rule 45(c)(1).

On December 2, 2011 counsel for the parties did meet and confer concerning BanxCorp's intentions to seek a protective order pursuant to Rule 26, but were unable to resolve this issue. It is absurd for Bankrate to imply that the completely unrelated businesses of either Panache Magazine or Panache Privee would have caused Plaintiff any antitrust damages. Bankrate's cumulative and duplicative subpoenas are a classic example of a fishing expedition, particularly given that neither Panache Privee, nor Panache Magazine, are mentioned in any pleading in this case, nor were they even remotely involved in any of the facts at issue.

There are no *panacheprivee.com* e-mails for the 2005 period at issue, and according to Panache Privee no BanxCorp business has been conducted using *panacheprivee.com* e-mails, even after November 10, 2006. There are no common customers, inter-corporate invoices, revenues, loans, purchase orders or accounts between BanxCorp and Panache Privee, and there are no common administrative expenses except for incidental monthly office expenses under $1000. Panache Privee has no responsive documents pertaining to an allocation of revenues or resources with BanxCorp. Plaintiff already produced responsive documents which clearly defined its allocation of revenues and resources between Panache and BanxQuote.[2]

We hope that this puts an end to Bankrate's moot subpoenas.

Respectfully submitted,

Kristen Renzulli

cc: All Counsel of Record *(via ECF)*

---

[2] On June 7, 2011 at a conference held before Judge Arleo, Defense counsel waived its right to make further document demands, as follows: "MR. THOMPSON: … it would seem to me to make sense or at last possibly to make sense to set a date for [Mr. Mehl's] deposition and give us seven days thereafter to raise any issues with the Court, and if we don't, then -- *then documents and written discovery will be complete* and we'll move on from that [] point to the depositions." [emphasis added] June 7, 2011 Hr'g Tr. 26:23-25. Since Bankrate did not raise any issues with the Court within seven days after Mr. Mehl's June 15, 2011 two-day deposition, it was effectively barred from serving any further document demands.

Moreover, during the parties' August 10, 2011 Status Conference, Judge Salas stated that "[i]f you have a document that says this issue was agreed upon in writing, … they're living by the rule -- the rule of the land, the law of the land, … I certainly don't want to see it raised before Judge Waldor if, indeed, there's documented evidence that it was agreed upon, Counsel. Do I make myself clear?" [Aug. 10, 2011 Hr'g Tr. 9:11-14; 10:2-4.] As further ordered by the Court, on October 7, 2011 the parties already submitted a joint letter [Doc. No. 283] to present any unresolved discovery disputes. Bankrate failed to abide by these Orders.