

**Lowenstein
Sandler**

ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm

Tel  973 597 2532
Fax  973 597 2533

sthompson@lowenstein.com

January 6, 2012

**VIA ECF**

Honorable Esther Salas
United States District Judge
District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re:    BanxCorp v. Bankrate, Inc. ("Bankrate"), Civil Action No. 07-3398 (ES - CLW)
         BanxCorp v. LendingTree, LLC, Civil Action No. 10-2467 (ES - CLW)**

Dear Judge Salas:

I write in response to the letter to Your Honor from counsel for BanxCorp concerning BanxCorp's Fifth Amended Complaint (5AC). Counsel's letter illustrates well the reason why we have requested a conference for the purpose of clarifying the claims made in the 5AC.

First, counsel acknowledges that BanxCorp no longer alleges that Bankrate engaged in a predatory pricing conspiracy in violation of Section 1 of the Sherman Act. This is a fundamental change in theory. Beginning with the Third Amended Complaint (3AC), BanxCorp had alleged that:

> The centerpiece of this action is a massive predatory pricing and price-fixing conspiracy between Bankrate and 100 of America's leading websites.

3AC ¶ 15. In your opinion filed on December 30, 2011 ("12/30/11 Opinion"), Your Honor described BanxCorp's Section 1 claim as follows:

> In this complaint [the Fourth Amended Complaint (4AC), BanxCorp alleges that Bankrate conspired with its partner-competitors, under §1, to engage in predatory pricing.

12/30/11 Opinion at page 43.

With the (most recent) removal of the "centerpiece" of the action from the 5AC, we are left with a Section 1 claim that we do not understand. We respectfully request that the Court hold a conference for the purpose of clarifying what is intended in BanxCorp's Section 1 claim, so that we can adequately address it, by motion to dismiss or otherwise.

Hon. Esther Salas, U.S.D.J.                                          January 6, 2012
Page 2

Second, contrary to counsel's representations, BanxCorp has in fact significantly -- and intentionally -- altered its second claim for relief (in violation of Your Honor's direct instruction not to do so (12/30/11 Opinion at 45)).  In every version of the complaint through the 4AC, BanxCorp had premised its Section 2 claim on allegations of predatory pricing.  An essential element of a predatory pricing claim is that the alleged violator priced its product below some measure of cost, and BanxCorp consistently (though without factual basis) alleged that Bankrate had engaged in predation by pricing below average variable cost through the 4AC.  See, e.g., 4AC ¶¶ 22, 23, 182, 240.

In the 5AC, BanxCorp has deleted every allegation that Bankrate priced below average variable cost, and now alleges that Bankrate set prices at "artificially low" levels.  See 5AC at ¶¶ 22, 182, 200.  This should not be an adequate factual allegation for a claim of predatory pricing, but Counsel's letter to Your Honor characteristically attempts to create ambiguity.

In Counsel's letter to Your Honor, he states that BanxCorp's Section 2 claim is still based upon Bankrate's alleged predatory conduct, and claims that facts supporting a predation claim are set forth at page 22 of the 5AC.  This is not so; I attach copies of pages 22 and 23 of the 5AC, which do not allege predation beyond use of the term "predatory pricing" in the heading on page 23.  We do not understand BanxCorp's claim that it still alleges predation in light of BanxCorp's substitution of "artificially low prices" for the essential element "below average variable cost".  Does BanxCorp still intend to plead and prove that Bankrate priced below average variable cost?  If so, what is the significance of the removal of all allegations that Bankrate actually priced below average variable cost?

Moreover, assuming that BanxCorp does not adequately allege predatory pricing as a basis for the Section 2 claim in the 5AC, we do not know what anticompetitive conduct recognized under the antitrust laws is now alleged as the basis for the Section 2 claim.  Throughout the history of this case, predatory pricing was the basis of the Section 2 claim.  We cannot identify in the 5AC any other factual allegations concerning specific anticompetitive conduct alleged to support the Section 2 claim.

We are simply unable at this point to address BanxCorp's claims because we do not understand what violations of the antitrust laws Bankrate is alleged to have committed.  We respectfully request that the Court hold a conference for the purpose of requiring BanxCorp to define with specificity its claims.

Respectfully submitted,

R. Scott Thompson

Cc:     Mordechai Lipkis, Esq. (Email)
        Lawrence Hersh, Esq. (ECF)
        Kristen Renzulli, Esq. (Email)
        Daniel Brown, Esq. (ECF)



purchasers are not finding alternatives and have nowhere else to go because of defendant's monopoly position.

68.     Indeed, Defendant's Bank Rate Websites' revenues grew at a rapid pace, particularly from 2005 to 2008—despite six or more consecutive, significant, and non-transitory increases in CPC price—each time by 10 to 25 percent, clearly proving that cross-elasticity of demand is now either non-existent or extremely low.  For example, at Bankrate's Q3-2007 Earnings Conference Call, Evans acknowledged the following:

> As I said, I was looking at this e-mail from one of our lenders who said if—his last line is, if lenders aren't making money off Bankrate, then they are doing something wrong.
>
> And some people have better business models and obviously better at converting than others, but because of that, *we are pretty confident about our ability to push rates.* And again, nobody calls us and goes, hey, thanks for the rate increase, can I have another?
>
> *But the fact is that they don't vote with their feet. They don't leave. They are not canceling. They are not finding alternatives.* We think we are a fair value. We think we are in some cases under priced relative to the value. And we think that that — we will try to reconcile that and rectify that over time. (Emphasis added.)

69.     Thus, Defendant's *own* repeated public admissions, as outlined below, best describe the current inelasticity of demand and insensitivity to price increases of Bank Rate Websites.

**F.  Defendant's Own Admissions of Predatory Pricing, Recoupment and Inelasticity of Demand (Before and after Original Complaint Was Filed)**

70.     Within a year of introducing its CPC pricing structure on October 1, 2005, after destroying or seriously damaging the competition and recognizing that it clearly had achieved an undisputable monopoly and dominant position in the market for Bank Rate Websites, Bankrate started recouping monopoly profits by pushing through three rate increases across the board to all of its CPC advertisers on all channels, including a 20% rate increase on October 1, 2006. Despite these rate increases, Bankrate experienced no decline in the number of advertisers wanting to participate. [26]

71.     In fact, because Bankrate's CPC was priced artificially low to begin with, the number of financial service providers listing rates on a CPC basis on Defendant's Bank Rate Website has increased by more than 80% since it launched CPC in the fourth quarter of 2005, as stated in Bankrate's Shareholders Letter accompanying its 2006 Annual Report.

72.     Evans summarized the first year's results of Bankrate's CPC strategy and price increases during its Q3 2006 Earnings Conference Call, as follows:

> I probably don't need to tell you that the hyperlink business has been a home run for us and continues to go very well; up 58% in this quarter versus a year ago. Last October 1, a year ago, we launched cost per click pricing from the old flat model. I could spend a lot of time on this but I think its success could be summed up in three statistics:

---

[26] Subsequent CPC price increases, each time by 15% or more, were implemented by Bankrate between 2006 and the present. *See* attached Exhibit H; *see also* Dkt. No. 169, Exhibit 4: Bankrate's S.E.C 8-K filings and Excerpts of Quarterly Earnings Call Transcripts, Pricing data is based on Bankrate's public announcements and internal extrapolations; Dkt. No. 169, Exhibit 5: Bankrate's 2005-2010 CPC fixed prices charged to Ally Bank, Citibank's ad agency JWT, and Banco Popular/E-Loan.