

**LOWENSTEIN SANDLER**
ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm

Tel  973 597 2532
Fax  973 597 2533

sthompson@lowenstein.com

February 16, 2012

**BY ECF**
Hon. Cathy L. Waldor, U.S.M.J.
United States District Court for the District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re:   *BanxCorp v. Bankrate, Inc.*, Civ. No. 07-3398 (ES-CLW)
            *BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES-CLW)

Dear Judge Waldor:

I am writing in response to the February 13, 2012 letter from counsel for BanxCorp, in which BanxCorp asks Your Honor to compel the deposition of Peter Morse, the Chairman of Bankrate's Board of Directors. BanxCorp states that it believes that Mr. Morse "is an essential witness," but does not identify a single issue as to which his testimony is essential. BanxCorp thus has given no reason for this Court to revisit its decision that Mr. Morse possesses no unique relevant information and thus is not subject to deposition in this case.

**Background**

Peter Morse serves as the Chairman of Bankrate's Board of Directors, a position he occupied from 1997 until 1999 and since 2002. He also served as CEO from 1993 until 1997. He lives and works in Pennsylvania, and does not maintain an office at Bankrate.

There are no allegations of culpable conduct directed at, mentioning, or involving Mr. Morse in the Fifth Amended Complaint ("5AC"). The only time his name appears in the 5AC is in a sentence in ¶ 117 alleging that representatives of Bankrate held merger discussions with BanxCorp between 1996 and 1999.

In October 2010, BanxCorp served Bankrate with a deposition notice for Mr. Morse. Magistrate Judge Arleo refused to allow the deposition to proceed. Judge Arleo informed BanxCorp that it must proceed with other discovery. Judge Arleo held that BanxCorp could renew its request if, in the course of other discovery, BanxCorp identified information demonstrating that Mr. Morse had unique relevant knowledge of facts. Tr. 1-20-2011 at pages 6 through 8.

Judge Arleo reaffirmed this position in June 2011. When BanxCorp again suggested that it wanted to take Mr. Morse's deposition, Judge Arleo again refused to allow the deposition of Mr.

Hon. Cathy L. Waldor  February 16, 2012
Page 2

Morse, informing BanxCorp that it would have to identify specific topics, why Mr. Morse's testimony was needed on those topics, and why the information sought could not be obtained from other witnesses. Tr. 6-7-11 at pages 29 and 30.

In the course of a telephonic status conference held by Your Honor on December 14, 2011, BanxCorp again raised the issue. Your Honor informed BanxCorp that unless BanxCorp presented you with a compelling reason for Mr. Morse's testimony, you would not allow BanxCorp to take Mr. Morse's deposition. Your Honor instructed BanxCorp to produce evidence demonstrating the need for Mr. Morse's deposition.

**BanxCorp's February 13, 2012 Letter**

Despite being instructed at least three times by this Court that it would have to show good cause for the deposition of Mr. Morse, BanxCorp's most recent request fails to identify a single topic on which Mr. Morse's testimony is needed. Instead, BanxCorp asserts generally that Mr. Morse's testimony is "essential." The only explanation of any kind given for the request is that Mr. Morse "routinely used a *morsepartners.com* email address to conduct Bankrate-related business". Attached to BanxCorp's letter are approximately 223 pages of emails, characterized by BanxCorp as "concerning acquisitions, growth strategies, Bankrate's rate table listings and revenue allocation with partners/competitors, CPC pricing strategies, negotiations with banks, LendingTree, etc."

Characteristically, and significantly, BanxCorp does not call any specific email to the Court's attention. Nor does BanxCorp identify any particular piece of correspondence as needing further inquiry. In short, BanxCorp does not even attempt to explain why the emails demonstrate a need for Mr. Morse's deposition. Neither BanxCorp's letter, nor the emails themselves, provide any justification for the deposition of Mr. Morse.

**The Legal Standard -- The "Apex Doctrine"**

As this Court has recognized, a party seeking to take the deposition of a high-ranking corporate official must make a showing of need for the deposition. This well-established rule -- known as the "apex doctrine" -- prohibits deposition of high-ranking corporate officials with no unique first-hand knowledge of the facts at issue.

"Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify." *Roman v. Cumberland Ins.* Group, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007) (copy attached). This means that "[w]here a high-level decision maker 'removed from the daily subjects of the litigation' has no unique knowledge of the facts at issue, a deposition of the official is improper." *Celerity, Inc. v. Ultra-Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (copy attached). This rule is well-established and has been affirmed

LOWENSTEIN
SANDLER
ATTORNEYS AT LAW

Hon. Cathy L. Waldor  
Page 3

February 16, 2012

time and again on appeal. *E.g., Thomas v. Int'l Bus. Mach.*, 48 F. 3d 478, 483-84 (10th Cir. 1995); *Bush v. Dictaphone Corp.*, 161 F. 3d 363, 367 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

This Court has repeatedly informed BanxCorp that BanxCorp would have to satisfy the requirements of the "apex doctrine" if it wished to take the deposition of Mr. Morse. BanxCorp has not even attempted to meet this standard. Its letter to the Court provides none of the information required. BanxCorp does not identify the facts of which Mr. Morse has personal knowledge, how those facts relate to the issues in the case or why others are not available to testify to those facts.

The documents submitted by BanxCorp are entirely lacking in information that *could* support a request for Mr. Morse's deposition. In fact, the documents demonstrate conclusively that BanxCorp cannot meet the standard. Of the approximately 91 documents (totaling approximately 223 pages), most are routine emails sent by Thomas Evans, Bankrate's CEO, to all of the members of the company's board of directors enclosing agendas, periodic reports, and the like.[1] None disclose any dialogue between Mr. Evans and Mr. Morse about the details of any aspect of Bankrate's business. Even the number of emails demonstrates the irrelevancy of Mr. Morse to this case: there are approximately 75 emails between Mr. Evans and Mr. Morse over a three-year period, or *two per month*. It is apparent that Mr. Morse had no involvement in the day-to-day business of Bankrate.

The substance of the emails confirms this conclusion. For example, in the 5AC, BanxCorp alleges that Bankrate's acquisition of MMIS/Interest.com is a significant component of the alleged anticompetitive conduct upon which its Sherman Act Section 2 (monopolization) claim rests. The emails make it clear that Mr. Morse was completely in the dark about that acquisition. On October 21, 2005, he wrote an email to Mr. Evans at the end of which he asked, casually, "How's the West coast deal coming?" (a reference to the MMIS/Interest.com transaction). Mr. Evans replied, addressing a different topic first, then saying "We also got an agreement with MMIS Interest.com to buy the company for 30 million . . ." Bates No. BR00028906. It is obvious from this exchange that Mr. Morse was out of the loop on the transaction.

All of the emails include Mr. Evans. Few of the emails are private emails between Mr. Morse and Mr. Evans. None of the emails provides any support for any of BanxCorp's allegations.

BanxCorp cannot make a showing sufficient to justify its request for Mr. Morse's deposition, and

---

[1]   Actually, several of the documents were neither sent to nor received by Mr. Morse, and several others are duplicates. The number of non-duplicate, relevant emails is approximately 80.

**Lowenstein Sandler**  
ATTORNEYS AT LAW

Hon. Cathy L. Waldor  February 16, 2012
Page 4

it has not even tried to make such a showing yet. Bankrate respectfully suggests that BanxCorp's request to depose Mr. Morse must be denied.

Respectfully submitted,

R. Scott Thompson

Encs.
Cc: All Counsel (Email) (w/encs.)



Westlaw.

Page 1

Not Reported in F.Supp.2d, 2007 WL 4893479 (E.D.Pa.)
(Cite as: 2007 WL 4893479 (E.D.Pa.))

▷
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Jason ROMAN, Plaintiff
v.
CUMBERLAND INSURANCE GROUP, et al.,
Defendants.

Civil Action No. 07-CV-1201.
Oct. 26, 2007.

Jason Roman, Allentown, PA, pro se.

Charles Scott Rybny, Robert M. Runyon, III, Nelson Levine De Luca & Horst, Blue Bell, PA, for Defendants.

### ORDER

THOMAS M. GOLDEN, District Judge.

*1 AND NOW, this 26th day of October, 2007, it is hereby ORDERED that defendants' motion for protective order (Document No. 21) is GRANTED in part and DENIED in part.[FN1]

> FN1. This case arises from an insurance dispute. Plaintiff seeks the depositions of defendants' president, vice president, and board of directors, and defendants ask the Court to issue a protective order prohibiting those depositions.
>
> Defendants have produced an affidavit of the claims adjuster who handled plaintiff's claim. See Aff. of Rebecca Kosherzenko (Document No. 21-4). The adjuster swears that she has personal knowledge of plaintiff's claim and is available to testify at a deposition. Id. at ¶¶ 2 and 7. She also swears that defendants' president, vice president, and board of directors have never had any active involvement in the investigation or evaluation of plaintiff's claim. Id. at ¶ 6.
>
> Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify. See, e.g., Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979) (the leading case on "apex depositions," finding no error in district court's issuance of protective order postponing deposition of defendant's president where he had no direct knowledge of plaintiff's claim and other employees had greater knowledge); Thomas v. Int'l Bus. Machines, 48 F.3d 478, 483 (10th Cir.1995) (affirming district court's grant of protective order prohibiting deposition of chairman of defendant's board of directors where chairman had no personal knowledge of plaintiff's claim and other employees had direct knowledge); Lewelling v. Farmers Ins. of Columbus, 879 F.2d 1212, 1218 (6th Cir.1989) (protective order affirmed where chairman and C.E.O. lacked personal knowledge); Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I.1985) (prohibiting the deposition of Lee Iacocca where he had no personal knowledge); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2037 (citing cases). This Court has also granted a protective order prohibiting the deposition of high level executives on at least one prior occasion. See Cantor v. The Equitable Life Assurance Soc'y of the United States, 1998 WL 544962, at *2 (E.D.Pa. Aug.27, 1998).
>
> In the case before the Court, the defendants have produced sworn testimony that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4893479 (E.D.Pa.)
(Cite as: 2007 WL 4893479 (E.D.Pa.))

their executives have no direct knowledge of plaintiff's claim, and that the claims adjuster assigned to plaintiff's claim is available to testify. This case bearing close factual similarity to the decisions reviewed above, the Court believes the proper course is to issue the protective order. At the same time, the Court finds that the defendants could produce additional individuals with knowledge of plaintiff's claim, such as a corporate designee under Federal Rule of Civil Procedure 30(b)(6). It thus denies the motion in part.

IT IS FURTHER ORDERED that:

1. Plaintiff shall not depose defendants' president, vice president, or board of directors; and

2. Upon appropriate notice, defendants shall produce for deposition either (i) a corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6); (ii) a vice president of claims administration; or (iii) another officer of similar stature.

E.D.Pa.,2007.
Roman v. Cumberland Ins. Group
Not Reported in F.Supp.2d, 2007 WL 4893479 (E.D.Pa.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)
**(Cite as: 2007 WL 205067 (N.D.Cal.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
CELERITY, INC., Plaintiff,
v.
ULTRA CLEAN HOLDING, INC, et al., Defendants.

No. C 05-4374 MMC (JL).
Jan. 25, 2007.

Keith L. Slenkovich, Chris Kao, Richard Steven Swope, Robert E. Camors, Jr., Thelen Reid & Priest LLP, San Jose, CA, for Plaintiff.

Philip A. Rovner, Potter Anderson & Corroon LLP, Wilmington, DE, Paul J. Andre, Amy Sun, Lisa Kobialka, Radhika Tandon, Shreya N. Ramchandani, Perkins Coie LLP, James Hannah, Menlo Park, CA, for Defendants.

### ORDER DENYING PROTECTIVE ORDER
(Docket # 83)
JAMES LARSON, Chief Magistrate Judge.

**Introduction**

*1 Plaintiff's motion for protective order re depositions of David Shimmon and John Murphy (Docket # 83) came on for hearing. Appearing for Plaintiff was Richard Swope, THELEN, REID & PRIEST, LLP. Appearing for Defendant was Lisa Kobialka, PERKINS COIE LLP.

After hearing oral argument the Court ordered production for *in camera* review of the transcript of the deposition of Joseph Foster (filed under seal). After reviewing the deposition, the Court determines that there is no indication that either Mr. Shimmon or Mr. Murphy possess the requisite firsthand and non-repetitive knowledge to justify their depositions. Therefore, the motion for protective order precluding their depositions at this time is granted.

UCT may renew its notice of deposition for Murphy and Shimmon only if other methods of discovery, including interrogatories and depositions of lower-level employees of Celerity, prove to be unsatisfactory.

**Background**

Subject matter jurisdiction is conferred on this Court under the national patent laws. 28 U.S.C. § 1331 & 1338(a). All discovery was referred by the district court (Hon. Maxine M. Chesney) as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72.

Celerity's infringement allegations are based on its belief that Ultra Clean Holdings and Ultra Clean Technology are making, selling, or offering for sale products which infringe one or more of the patents in suit, specifically through their Predator product line. Ultra Clean Technology filed its Complaint for Declaratory Judgment in response to Celerity's allegations of infringement and aggressive efforts to eliminate all commercial activity by Ultra Clean Technology as a competitor in the field of gas delivery systems, which included making threats to Ultra Clean Technology's customers. Ultra Clean Technology's and Ultra Clean Holding's non-infringement and invalidity allegations are based on their belief that they do not infringe any valid claim of the asserted patents. Additionally, Ultra Clean Holdings asserts that it is a holding company that does not make, use, sell or offer for sale any products.

The discovery cut-off was December 22, 2006. Expert disclosures were due January 12, 2007 and expert discovery cut-off is February 16, 2007. An 8-10 day jury trial will commence June 4, 2007. A further status conference will be held March 9, 2007.

**This Motion**

On November 8, 2006, UCT noticed the depositions of John Murphy and David Shimmon. Swope

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)
**(Cite as: 2007 WL 205067 (N.D.Cal.))**

Decl., ¶¶ 2-3. John Murphy is President, CEO, and COO of Celerity, Inc. Murphy Decl., ¶ 1. Celerity contends that Mr. Murphy has only been an officer of Celerity, Inc., since September, 2005. *Id.*, at ¶ 2. Celerity also contends that he has no personal knowledge of the events giving rise to this litigation and his involvement in the litigation is limited to receiving status reports from counsel. *Id.*, at ¶¶ 4-10. Mr. Murphy was not CEO of Celerity, Inc. at the time of the events giving rise to this dispute. *Id.*, at ¶ 4.

*2 David Shimmon is Executive Chairman of the Board of Celerity, Inc. Shimmon Decl., ¶ 1. Celerity contends that he has no personal knowledge of the events giving rise to this litigation and his involvement in the litigation is limited to receiving status reports from counsel. *Id.*, at ¶¶ 5-11.

The parties met and conferred at various times, most recently on November 8, 2006 to attempt to resolve their dispute regarding UCT's notice of deposition. Celerity argues that Murphy and Shimmon are high level corporate officers, subject to the requirements for taking an "apex" deposition, and that UCT should not be permitted to depose them unless and until it demonstrates that less intrusive means of discovery, such as interrogatories and depositions of lower-level employees of Celerity, have failed.

The parties were unable to resolve their dispute and Celerity filed this motion for a protective order quashing the depositions of Murphy and Shimmon pursuant to Federal Rule of Civil Procedure 26(c)(1) on the grounds that neither Murphy nor Shimmon has superior or unique personal knowledge of discoverable information, that testimony of lower level employees with more intimate knowledge of the case have not yet been taken, and that Murphy's and Shimmon's testimony would be, at best, repetitive.

Celerity cites the most recent reported case in the Northern District of California to discuss the depositions of executives. Judge Seeborg in *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 U.S. Dist. LEXIS 67284, 2006 WL 2578277 (N.D.Cal.2006) observed that high-level corporate officers can be protected from depositions when the officer has no first-hand knowledge of the facts of the case or where the officer's testimony would be repetitive.

Celerity argues that because both Murphy and Shimmon are high-level officers at Celerity, and neither have personal knowledge of the events giving rise to this litigation, and because the second-hand knowledge that Murphy and Shimmon do possess is almost by definition repetitive, they should be protected from having to give deposition testimony in this case unless UCT can show that either Murphy or Shimmon possess first-hand knowledge that cannot be obtained through other means.

UCT contends that Celerity has prejudiced its defense of this lawsuit by delaying depositions of Celerity's employees, permitting UCT to take only one 30(b)(6) deposition on June 5, 2006 and the deposition of Eric Redemann, one of the inventors of the patent-in-suit, on December 12, 2006. The remaining depositions are scheduled thus: Joseph Foster on December 15, 2006; David Somo on December 20, 2006. Celerity's counsel has confirmed that Shimmon and Murphy are available for deposition between December 19-21, 2006. (Kobialka Decl., Ex. (9).

UCT's purported reason for taking these depositions is:

"Messrs. Shimmon and Murphy are involved in making important corporate decisions, including the decision to pursue this lawsuit, allege willful infringement and seek monetary damages and injunctive relief against Ultra Clean Holdings and Ultra Clean Systems and Services. For example, Messrs. Shimmon and Murphy played key roles with respect to the acquisition of Celerity, which included Celerity's intellectual property."

*3 (Kobialka Declaration at Exhibit 7).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)
(Cite as: 2007 WL 205067 (N.D.Cal.))

Celerity contends that a Mr. Foster, not Murphy, made the decision to pursue this litigation (Reply Memorandum at page 3).

Some of these subjects, such as the decision to pursue this lawsuit and what relief to seek, border on work product, representing as much legal strategy as corporate decision-making and as such could be improper questions at deposition. Others are legitimate areas of inquiry, for example the acquisition of Celerity and its intellectual property.

UCT also argues that Murphy and Shimmon possess unique personal knowledge of the chain of title to the patents-in-suit, through the various mergers Celerity has gone through. In addition, says UCT, Murphy, as a principal of TPG, evaluated Celerity's intellectual property, as part of the decision by TPG to acquire Celerity, which would be relevant to the amount of damages in this case. Shimmon, as a former principal of UNIT, has unique personal knowledge of the chain of title to the patents-in-suit.

## Analysis

Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment. *See, e.g., Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.C.R.I.1985). Where a high-level decision maker "removed from the daily subjects of the litigation" has no unique personal knowledge of the facts at issue, a deposition of the official is improper. *Baine v. General Motors Corp.,* 141 F.R.D. 332, 334 (M.D.Ala.1991); *see also, First United Methodist Church of San Jose, v. Atlantic Mutual Insurance Co.,* 1995 WL 566026 (N.D.Cal.1995); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979). This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue. (*See, e.g., Salter,* 593 F.2d at 651.)

If this Court grants Celerity's motion for protective order, it need not absolutely preclude UCT from taking the depositions of Celerity's top two executives, but may merely postpone them until and if UCT can demonstrate that other less intrusive discovery methods, such as interrogatories and depositions of Celerity's lower level employees, are inadequate. As the court commented in the *Salter* case:

It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error. See 4 J.Moore & J.Lucas, Moore's Federal Practice P 26.69 (3d ed.1976); 8 C.Wright & A.Miller, Federal Practice & Procedure section 2037 (1970). We do not believe that this first order of the trial judge was such a complete prohibition, however. Although the court's order vacated plaintiff's notice to take the deposition of Dr. Hubbard, it is clear that the order merely required plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts before deposing Dr. Hubbard. The trial judge had indicated that if the testimony of the other employees was unsatisfactory, he would allow plaintiff to take Dr. Hubbard's deposition. *Salter,* 593 F.2d at 651.

*4 UCT attempts to distinguish all the cases cited by Celerity as having to do with government officials, rather than corporate executives. The Court finds this distinction to be meaningless. UCT contends that Shimmon has personal knowledge regarding the chain of title to the patents in suit, that he participated in the acquisition of Celerity by Texas Pacific Group ("TPG") and thus has personal knowledge regarding the valuation of Celerity's intellectual property and that he has personal knowledge regarding the decision to sue Ultra Clean. Shimmon was also at Celerity before Murphy and thus would have knowledge regarding sales of Celerity's products that are covered by the patents-in-suit prior to Mr. Murphy's tenure.

UCT fails to show that this personal know-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)
(Cite as: 2007 WL 205067 (N.D.Cal.))

ledge, if Shimmon has it, is "unique." This is an essential component of the standard for an apex deposition-unique personal knowledge by the high corporate official, unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees.

UCT disparages Celerity's reliance on *Google v. American Blind*, 2006 WL 2578277, because Judge Seeborg of this Court actually ruled that American Blind was entitled to depose Google founder and CEO Larry Page after learning from Google's designated 30(b)(6) witness that Page may have relevant firsthand information.

The Court in *Google* held:

> Accordingly, the motion will be granted with respect to the deposition of Larry Page. The deposition, however, shall be limited in scope to Page's knowledge of and involvement in the policy change and shall be limited to three hours.FN3

> FN1. FN3. Google resists this deposition on procedural grounds, but also suggests that the deposition of Page, a busy, high-level executive, would be inappropriate even if it had been timely noticed. A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied, however "courts are sometimes willing to protect high-level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive." *First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co.*, 1995 WL 566026, at *2 (N.D.Cal.1995). Courts generally refuse to allow the immediate deposition of a high level executive, often given the sobriquet "apex deponent," before the testimony of lower level employees with more intimate knowledge of the case has been secured. See *Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir.1979) (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives; *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D.Ala.1991) (granting protective order for Vice President of General Motors where plaintiff had failed first to depose lower level employees). Here, American Blind is seeking to depose Page only after learning from Google's designated 30(b)(6) witnesses that he may have relevant first hand information.

*5 *Google*, 2006 WL 2578277, *3.

In the case at bar, UCT wants Shimmon to clarify the "murky" picture of the chain of title. Apparently Eric Redemann, one of the inventors of the patent-in-suit, testified at his own deposition that there had been numerous changes over the years with respect to the chain of title to Celerity and presumably to its intellectual property. His testimony UCT finds confusing with respect to UNIT and its relationship with Celerity (Kobialka Decl., Ex. 11 at 12:8-14:18). UCT hopes that Shimmon may have firsthand information to clear up the confusion.

The ruling by the court in the *Google* case does not really help UCT, since the "confusion" created by Eric Redemann may well be cleared up by another employee, and UCT presents no specific evidence that Redemann testified that only Shimmon could clarify the chain of title to the patent.

UCT may only depose Shimmon and Murphy after either interrogatories or the depositions of lower-level employees have failed to provide the discovery it seeks. UCT seems to believe that as long as it schedules the depositions of Shimmon and Murphy after the depositions of the lower level employees, that it has met its burden to justify these apex depositions according to the case law. This is not the law. Nor would it be proper for UCT to take half-hearted depositions of lower-level employees in order to set up an opportunity to depose Shim-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)
(Cite as: 2007 WL 205067 (N.D.Cal.))

mon and Murphy. It must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level Celerity employees.

During oral arguments before the Court on December 20, 2006, attorneys for Ultra Clean Technology Systems and Service, Inc. and Ultra Clean Holdings, Inc. (collectively, "UTC") suggested that the deposition testimony of Joseph Foster (whose deposition had just been taken) provided some evidence that either or both Shimmon and Murphy had first-hand and non-repetitive information that would require the Court to deny a protective order preventing the depositions of Shimmon and Murphy. See, e.g., *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.,* 2006 U.S. Dist. LEXIS 67284 (N.D.Cal.2006) (allowing the deposition of one of Google's founders only after an evidentiary showing that implicated first-hand knowledge to the founder.). The Court ordered that the parties submit supplemental briefing as to whether Mr. Foster's deposition transcript provides a basis for deposing Shimmon or Murphy.

**Conclusion**

The Court reviewed the parties' briefing and the deposition transcript of Joseph Foster and found no indication that either David Shimmon or John Murphy possess firsthand and non-repetitive knowledge regarding issues relevant to this lawsuit. Accordingly, Celerity's motion for protective order is granted, pending the taking of less intrusive methods of discovery, including interrogatories and depositions of lower-level Celerity employees. UCT may renew its notice of depositions of Shimmon and Murphy should those means of discovery prove inadequate.

*6 IT IS SO ORDERED.

N.D.Cal.,2007.
Celerity, Inc. v. Ultra Clean Holding, Inc.
Not Reported in F.Supp.2d, 2007 WL 205067 (N.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.