# Lowenstein
# Sandler

ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm
Tel 973 597 2532
Fax 973 597 2533
sthompson@lowenstein.com

April 20, 2012

**BY FAX AND ECF**
Hon. Cathy L. Waldor, U.S.M.J.
United States District Court for the District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:     *BanxCorp v. Bankrate, Inc.*, Civ. No. 07-3398 (ES-CLW)
        *BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES-CLW)

Dear Judge Waldor:

I write in response to the letter sent to Your Honor by counsel for plaintiff BanxCorp this morning. I will only address live issues as to which the Court is asked to make a ruling.

**Deposition of Bankrate's CEO Thomas Evans**

Last July, BanxCorp served a notice of deposition for the deposition of Bankrate's CEO, Thomas Evans. In the notice, BanxCorp identified the topics on which it intended to examine Mr. Evans. Those topics included:

1.      Bankrate's co-branding partnership agreements . . .

2.      The marketing, sales, pricing, billing, and revenue collection practices of Bankrate and its co-branding partners.

                *            *            *

6.      Bankrate's agreements to allocate revenues with co-branding partners . . .

                *            *            *

13.     Bankrate's growth strategy since June 2004.

14.     The business model introduced by Bankrate that turned what was a cost for partnership websites into a revenue source.

                *            *            *

Hon. Cathy L. Waldor                                                    April 20, 2012
Page 2

35.     Pricing for Bankrate's products and costs.

These topics, together with others identified in the notice, include virtually every aspect of Bankrate's business. See Exhibit A, attached. It is obvious that they include the most highly sensitive competitive information that Bankrate has; for example, if a competitor knew the details of Bankrate's marketing, sales, and billing practices, or Bankrate's growth strategy, or the details of Bankrate's pricing and cost structure, it could design competitive strategy's aimed at specifically undermining Bankrate's positions in each of these areas.

As a result, on July 8, 2011, I wrote to counsel for BanxCorp and informed them that we would not permit any employee of BanxCorp to attend the deposition of Mr. Evans. A copy of that letter is attached as Exhibit B. Counsel did not object to that proposal.

Mr. Evans' deposition did not go forward in July. It was ultimately rescheduled, with some difficulty, for today. Yesterday, at 2:30, I reminded counsel of Bankrate's position. Counsel responded at approximately 5:00, expressing the view that my reminder was untimely and "unreasonable." I responded immediately, explaining our position. Thereafter, at approximately 7:00 p.m., counsel informed me that BanxCorp was canceling the deposition. Counsel refused to go forward, even after I proposed that issues of AEO confidentiality be addressed on a case by case basis.

Counsel has now taken the position that Bankrate is not entitled to protect any of its competitively sensitive information from Mr. Mehl, because "any AEO issues are moot anyway."

BanxCorp has demonstrated beyond any doubt that it does not consider itself to be bound in this case by the rules of court or the duty of honesty with the parties and the tribunal. As has been the case so often in this matter, its position on this issue is directly at odds with an earlier position, simply because its needs have changed.

Mr. Mehl's sworn testimony is unambiguous on the subject of his intent to compete with Bankrate. During his deposition on June 15, 2011, when asked how a particular document designated "Attorneys' Eyes Only" might harm the competitive position of BanxCorp, he responded as follows:

> A:      Well, first of all, today, it can be tomorrow -- today I am doing one thing; tomorrow I can be doing another thing. BanxCorp is still operating. This litigation is still in the midst of before trial. *I hope to prevail at trial, eventually turn my company around, collect a substantial amount of money, become a major competitor in the market*, and after that, I see no reason why I should disclose any of my current or previous business plans to current or potential competitors . . .



Hon. Cathy L. Waldor                                                  April 20, 2012
Page 3

A copy of the relevant portion of the transcript of Mr. Mehl's sworn testimony on June 15, 2011 is attached as Exhibit C. (See also pages 323-24 of the same transcript, where Mr. Mehl characterizes Bankrate as a company "that could be a competitor").

Mr. Mehl's sworn testimony makes his intentions plain, and Bankrate is absolutely entitled -- under the Discovery Confidentiality Order entered in this case with the consent of BanxCorp -- to preclude him from access to "information . . . that contains highly sensitive business . . . information, the disclosure of which is highly likely to cause significant harm" to Bankrate.

Allowing Bankrate to protect its competitively sensitive information from Mr. Mehl is in no way abusive, and there is no possible claim that Bankrate has abused the AEO designation. During the deposition of Elisabeth DeMarse, Bankrate's CEO from 2000 until 2004, Bankrate did not designate any testimony as AEO. Moreover, although BanxCorp has throughout this case repeated an assertion that Bankrate improperly designated 75,000 documents AEO, the claim has never been true (no matter how many times made).[1] Belying BanxCorp's claim is the fact that it cannot today identify a single document that bears an improper AEO designation.

In light of Mr. Mehl's clearly expressed intent to compete with Bankrate, Bankrate is absolutely entitled to protect its competitively sensitive information from him. He should not be permitted to attend the deposition of Mr. Evans, because it is impossible to tell in advance when a question may call for the disclosure of competitively sensitive information, and Bankrate should not be put in the position of having to edit each response given by Mr. Evans on the fly.

The date for today's deposition was agreed upon well in advance largely because of Mr. Evans' demanding travel schedule. BanxCorp has requested that Mr. Evans' deposition be rescheduled for next week. That is not possible; Mr. Evans is not available next week. The following week, there is not a single day when both Mr. Evans and I are available. I have asked Mr. Evans to check his calendar, and he and I will coordinate to find dates in May when we are both available, if the Court is inclined to extend the fact discovery cut off date.

**Deposition of Diana Mehl**

Despite this Court's clear rulings on at least three occasions, BanxCorp is refusing to produce Diana Mehl for deposition. As the Court may recall, BanxCorp describes Mrs. Mehl in its public filings and promotional materials as one of two "key employees" of the company and as BanxCorp's "Chief Financial Officer, a Senior Vice President of Research & Development . . . responsible for the Company's new products and technologies. In addition, she is responsible for monitoring and conducting internal reviews of the Company's mission-critical market data and

---

[1]     All documents bearing an AEO designation were also produced in redacted form without an AEO designation. The total number of pages of documents with redacted information is a minuscule fraction of 75,000 pages. BanxCorp has never successfully challenged any of the redactions.

**Lowenstein
Sandler**
ATTORNEYS AT LAW

Hon. Cathy L. Waldor                                                      April 20, 2012
Page 4

transactional systems.  She is also in charge of managing the Company's proprietary database
input system and monitoring the traffic at the Company's websites." Exhibit D (copies of a
screenshot from BanxCorp's website and a page from one of BanxCorp's public filings).
BanxCorp's representations to the Securities and Exchange Commission, and to the world, place
Mrs. Mehl at the heart of this case.  BanxCorp's refusal to abide by this Court's direction to
produce Mrs. Mehl for deposition is contemptuous, and is utterly without any basis in law or
fact.

**Deposition of Peter Morse**

This Court has ruled, at least twice, that BanxCorp is not entitled to take the deposition of Peter
Morse, Bankrate's Chairman of the Board.  Because of BanxCorp's continuing efforts to obtain
Mr. Morse's deposition, we previously pointed out that the Apex doctrine, and the cases applying
it, allow the deposition of a person like Mr. Morse only if he has material information that cannot
be obtained from another source.  We also pointed out that BanxCorp has made no factual
showing of any kind remotely suggesting that it can satisfy this standard.  In fact, in her recent
deposition, Elisabeth DeMarse testified that Mr. Morse was not involved in any day to day
activities of the company, that he only received information through her and that that information
was limited, that he was less involved in the Company's business than other members of
Bankrate's Board, and that he knew nothing about the Internet and thus did not actively
participate in any aspect of the company's business.  Mr. Evans' testimony will be the same as
that of Ms. DeMarse.  There is no basis for BanxCorp to subject Mr. Morse to a deposition.

Respectfully submitted,

R. Scott Thompson

Encs.
Cc: All Counsel (Email)



# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANXCORP, | Civil Action No. 07-3398 (ES) |
| Plaintiff, | |
| v. | **NOTICE OF DEPOSITION OF**<br>**THOMAS R. EVANS** |
| BANKRATE, INC., | |
| Defendant. | |

**TO:**   R. Scott Thompson, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

**PLEASE TAKE NOTICE THAT,** pursuant to Fed. R. Civ. P. 30, testimony will be taken from Thomas R. Evans upon oral examination before a person duly authorized to administer oaths, on Monday, August 1, 2011, beginning at 9:30 a.m. at the law offices of Lowenstein Sandler, 1251 Avenue of the Americas, New York, New York 10020, with respect to the topics set forth in Schedule A attached hereto. The deposition will continue from day to day thereafter until completed. This deposition will be stenographically recorded.

Dated: July 5, 2011

                                 *s/Mordechai I. Lipkis*
                                 Mordechai I. Lipkis, Esq.
                                 350 Broadway, Suite 1105
                                 New York, NY 10013
                                 Telephone: 212-925-4023
                                 mlipkis@mlipkis.com
                                 *Attorneys for Plaintiff BanxCorp*

## Schedule A

### DEFINITIONS

A. "Bankrate" refers to Defendant Bankrate, Inc.

B. "Co-branding partner (or partnership)" refers to that term as it is used throughout the Third Amended Complaint.

C. The terms "CPC," "customers," and "end users," refer to those terms as they are used throughout the Third Amended Complaint.

D. "Rate table," or "rate table listings" refers to that term as it is used throughout the Third Amended Complaint.

### TOPICS

1. Bankrate's co-branding partnership agreements and effects on competition.

2. The marketing, sales, pricing, billing and revenue collection practices of Bankrate and its co-branding partners.

3. Bankrate's competitors in the market for Internet rate table listings.

4. Bankrate's display of free Internet rate table listings and effects on competition.

5. Bankrate's commingling of free Internet rate listings with paid rate listings, conflicts of interest and effects on competition.

6. Bankrate's agreements to allocate revenues with co-branding partners and effects on competition.

7. Bankrate's agreements to divide markets with co-branding partners and effects on competition.

8. Bankrate's agreements to allocate customers or products with co-branding partners and effects on competition.

2

9.      Bankrate's Internet traffic allocation and/or reporting practices, if any, with its co-branding partners and effects on competition.

10.     Bankrate's quarterly earnings conference calls since June 2004.

11.     Bankrate's investor presentations, public offerings and S.E.C. filings since June 2004.

12.     Bankrate's corporate restructurings since June 2004.

13.     Bankrate's growth strategy since June 2004.

14.     The business model introduced by Bankrate that turned what was a cost for partnership websites into a revenue source.

15.     The relevant market that Bankrate participates in which is subject to this action.

16.     Peculiar characteristics and functional attributes of bank rate websites, their customers and end users.

17.     Secular industry shift toward online advertising of banking products and consumers' increasing reliance on the Internet for shopping of financial products.

18.     Bankrate's and its competitors' market share in the relevant market subject to this action.

19.     Growth of Bankrate's Internet traffic and unique website visitors.

20.     Competition among Bankrate's co-branding partners.

21.     Competition between Bankrate and its partners.

22.     Competition between Bankrate's co-branded partner websites and Bankrate's own websites.

23.     Bankrate's dominance and market power in the relevant market subject to this action.

3

24.     Bankrate's erection of barriers to entry in the relevant market subject to this action.

25.     Bankrate's monopolization or attempted monopolization of the relevant market subject to this action.

26.     Bankrate's newspaper distribution network and its effects on Bankrate's Internet traffic.

27.     Bankrate's exclusionary newspaper distribution agreements and effects on competition.

28.     Bankrate's exclusionary agreements with partners and competitors, if any, and effects on competition.

29.     Bankrate's sole authority and/or exclusive right to sell rate table listings on the Internet on behalf of its co-branding partners.

30.     Bankrate's injury to competition.

31.     Bankrate's mergers and acquisitions and effects on competition.

32.     Bankrate's acquisitions of co-branding partners and effects on competition.

33.     Bankrate's paid search engine bids and listings and effects on competition.

34.     Bankrate's agreements with LendingTree LLC and effects on competition.

35.     Pricing for Bankrate's products and costs.

36.     Bankrate's switch from a flat fee pricing to a cost per click or CPC pricing structure since October 2005.

37.     Bankrate's cost per click or CPC price increases since October 2005 and recoupment of earlier losses.

38.     Bankrate's predatory pricing practices, if any, and effects on competition.

4

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, the foregoing Notice of Deposition was served on counsel of

record for Defendant in this action by e-mail to:

> R. Scott Thompson, Esq.
> Lowenstein Sandler PC
> 65 Livingston Avenue
> Roseland, NJ 07068
> *sthompson@lowenstein.com*

Dated: New York, New York
       July 5, 2011

> *s/Mordechai I. Lipkis*
> Mordechai I. Lipkis, Esq.
> 350 Broadway, Suite 1105
> New York, NY 10013
> Telephone: 212-925-4023
> mlipkis@mlipkis.com
> *Attorneys for Plaintiff BanxCorp*

5

# Exhibit B



**LOWENSTEIN**
**Sandler**
ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm
Tel  973 597 2532
Fax  973 597 2533
sthompson@lowenstein.com

July 8, 2011

**VIA EMAIL**

Mordechai Lipkis, Esq.
350 Broadway, Suite 1105
New York, New York  10013

**Re:**    **BanxCorp v. Bankrate, Inc., 07-3398 (ES)**

Dear Mr. Lipkis:

Thank you for your letter of July 6, 2011, and your agreement to remove the "Attorneys' Eyes Only" ("AEO") designation from a small group of documents. Unfortunately, it is not sufficient that the AEO designation is lifted only from documents sent to or by Thomas Evans and Elisabeth DeMarse. Until BanxCorp removes the wholesale AEO designation and limits the AEO designation to any documents that may arguably fall within the universe of documents described in Paragraph 2 of the Discovery Confidentiality Order, we will not be in a position to provide dates for the depositions of Bankrate's witnesses. The improper designation limits our ability to perform necessary investigative and preparatory tasks. Once the designation is removed, we will provide dates for the depositions. We intend to raise the issue with Judge Arleo on July 21 if it is not resolved by then.

In addition, in light of the lists of subject matters identified in the notices of deposition supplied for Mr. Evans and Ms. DeMarse, and the large amount of confidential and competitively sensitive information that you intend to discuss with the witnesses, you should be aware that Neither Mr. Mehl nor any other employee of BanxCorp will be permitted to attend the depositions once they are scheduled. It is apparent that there will be continuous discussion of information that will qualify for protection under Paragraph 2 of the Discovery Scheduling Order as AEO, and will not be possible to anticipate when such information will be discussed. Thus, no employee of BanxCorp should attend the depositions.

Mordechai Lipkis, Esq.                                                July 8, 2011
Page 2


Finally, it is apparent to us that we will need several days to take Mr. Mehl's deposition. Please provide us with dates beginning on August 1, 2011 that Mr. Mehl will be made available for deposition.


Very truly yours,

R. Scott Thompson


cc:     Lawrence Hersh, Esq. (Email)
        Michael Hahn, Esq.
        Eric Jesse, Esq.



# Exhibit D



02010721

## UNITED STATES

### SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549



RECD S.E.C.

FEB 1 1 2002

1086

## FORM 1-A

### REGULATION A OFFERING STATEMENT

### UNDER THE SECURITIES ACT OF 1933

## BANXCORP

(Exact name of Registrant as specified in its charter)

Delaware

(State or other jurisdiction of incorporation or organization)

### BANXCORP

6 Palmer Avenue, Suite 2
Scarsdale, NY 10583
914-722-1600

(Address, including zip code, and telephone
number, including area code, of issuer's
principal executive offices)

### NORBERT MEHL

Chairman, President and Chief Executive Officer

BanxCorp
6 Palmer Avenue, Suite 2
Scarsdale, NY 10583
914-722-1600

(Name, address, including zip code, and
telephone number, including area code, of agent
of service)

Copies to:

### FRANK B. BALDWIN, ESQUIRE

2200 Locust Street
Philadelphia, Pennsylvania 19103
215-735-1234



PROCESSED

FEB 1 3 2002

THOMSON
FINANCIAL



EXHIBIT
Mehl 23
3-5-12

6141

(Primary Standard Industrial
Classification Code Number)

51-0343258

(I.R.S. Employer
Identification Number)

This offering statement shall only be qualified upon order of the Commission, unless a subsequent amendment is
filed indicating the intention to become qualified by operation of the terms of Regulation A.

Norbert Mehl is the Company's founder, Chairman, President, CEO and Director, and has served in these capacities since the Company's inception in 1984. Mr. Mehl is the Company's chief strategist and spokesperson, and has been regularly interviewed as a banking and money markets expert by leading financial media. Prior to starting the Company, Mr. Mehl was the representative of the World Trade Centers Association in Argentina and a member of its International Research & Development Committee, in which capacity he participated in numerous international trade conferences. Earlier in his professional business career, he was the Managing Partner of an engineering and construction company specializing in government contracts. He holds an M.B.A. degree from the University of Buenos Aires.

Diana Mehl is the Company's Chief Financial Officer, a Senior Vice President of Research & Development, Secretary/Treasurer and Director of the Company and has served in these capacities since 1989. Mrs. Mehl is responsible for the development of the Company's new products and technologies. In addition, she is responsible for monitoring and conducting internal reviews of the Company's mission-critical market data and transactional systems. She is also in charge of managing the Company's proprietary database input system and monitoring the traffic at the Company's websites. Prior to joining the Company, Mrs. Mehl was an Assistant Treasurer in the Corporate Trust Department of the Bankers Trust Company of New York. She holds an A.B. in Political Science from Barnard College and an M.B.A. degree from the Columbia University Graduate School of Business. Mrs. Mehl is the wife of Norbert Mehl.

Raul G. de Asis is a Director of the Company and has served in this capacity since July 2001. Most recently, Mr. de Asis was the Senior Vice President, General Manager, and Area Head of the North American Region for the Philippine National Bank, since 1997. He previously served as the Chief Financial Officer and Treasurer of Safra National Bank of New York, chairing the $2 billion bank's Asset-Liability Committee. Before this appointment, Mr. de Asis served in various executive roles at Republic National Bank of New York, an international banking institution with assets over $40 billion, functioning as a Bankers' Acceptances trader, a Eurobond trader, and as the assistant vice president of the Treasury Department Money Desk, where he managed the bank's Federal Funds positions. Mr. de Asis holds an M.B.A. degree from the Columbia University Graduate School of Business.

Roy P. Adams is the Vice President of Information Services of the Company and has served in this capacity since June 2000. He is responsible for managing the Company's various information technology projects. Mr. Adams also coordinates the integration of new technologies developed by the Company with its existing systems for use by the Company's customers, sales force, and research unit. Mr. Adams also assists senior management in matters related to corporate development and strategic planning. In 1999, he served as the National Account Executive of the Company's BanxQuote marketplace. Mr. Adams holds a B.A. in Economics from Yale University and is a Yale Club of New York City Scholar.

Abu A. Thomas is the Chief Technology Officer at the Company and has served in these capacities since March 2000. He is responsible for designing, developing, analyzing, and implementing the Company's various websites and technologies and is in charge of data protection, disaster recovery programs, relational database hosting, database security, and database administration. Prior to joining the Company, Mr. Thomas was a Web Developer and a Programmer Analyst at PanAmSat, where his responsibilities included developing software applications and supporting the financial systems database. Mr. Thomas holds a B.S. in

13

BX009785

**BANXCORP**

## ABOUT US

BanxCorp is a private company established in 1984.

### Key People

The company's founder and CEO is **Norbert Mehl**, a multi-lingual entrepreneur, with over 25 years of experience in the financial services, real estate and hospitality industries. He was born in Zurich, Switzerland and raised in Argentina, where he obtained an MBA degree from the University of Buenos Aires.

At a young age he started working closely with his father, a former foreign exchange dealer, industrialist, and philanthropist.



At the age of 25, he was the co-managing partner of the VITUB-CONSTRUMETAL consortium that built a suspended steel and fiberglass skyroof for the 1978 World Cup stadium at the seaside casino resort of Mar Del Plata on the South Atlantic coastline, supervising a crew of over 500 people on- and off-site within a challenging nine-month deadline.

The project was officially declared of "National Interest" by the country's president.

In the early 80s he emigrated to New York and founded BanxQuote, which became the foremost provider of indexes and analytics that are used as a barometer of the U.S. banking, credit, mortgage and housing markets. Mehl and his firm have been frequently sought after and quoted by the media, public policymakers and major financial institutions and corporations.

In 1985, a few months after the company was formed, *The Wall Street Journal* started featuring a BanxQuote Money Markets table on a weekly basis for approximately 17 consecutive years.

In 1995 he organized a BanxQuote National Banking & Media Conference held at headquarters of Salomon Brothers in New York, with the participation of leading media, government officials and top financial industry executives.

In 2008 BanxQuote was featured by the White House in the "2008 Economic Report of the President," and by the U.S. Department of the Treasury at a May 2008 private presentation for leading Wall Street executives, entitled "The Administration's Housing Strategy and Economic Update."

Since 1989, **Diana Mehl** has been a senior management officer of the company, responsible for maintaining its high standards of quality and for the development and launch of new products and services. More specifically she is the editorial director of the company's websites. Previously she was an officer at Bankers Trust Co. of New York. She's a graduate of Barnard College and has an MBA from the Columbia University Graduate School of Business.

In 2004, capitalizing on their combined knowledge and contacts in the real estate, travel & leisure, hospitality, and luxury markets, the Mehls launched **Panache Privée**, which evolved over the years into a luxury hospitality and real estate development and brokerage firm. Its website also became a magnet and global interactive network for affluent clients and investors around the world. Diana's passion for the arts, culture, philanthropy, home and garden, and her keen knowledge of the fashion, beauty, entertainment, and culinary industries have also been instrumental in the venture's success.

## PORTFOLIO COMPANIES

**BANXQUOTE®**

**BanxQuote.com** is an online banking marketplace that provides personal finance and enterprise benchmarking solutions featuring dynamically updated daily market rates on banking and loan products from financial institutions nationwide. BanxQuote also provides proprietary benchmarks and indices for various banking and lending products. Clients of the firm have included hundreds of financial institutions nationwide.

*Panache privée*

Established since 2004, **Panache Privée** is engaged in real estate brokerage and development services with a focus on the luxury hospitality market. The media division of Panache Privée has created a leading interactive network of affluent and influential people, helping them connect and learn more about their peers.

Copyright © 2011 BanxCorp.
Permission is granted to copy, distribute and/or modify this document under the terms of the GNU Free Documentation License, Version 1.2 or any later version published by the Free Software Foundation; with no Invariant Sections, no Front-Cover Texts, and no Back-Cover Texts. A copy of the license is included in the section entitled "GNU Free Documentation License".

© 2011 BanxCorp. All Rights Reserved. | Disclaimer & Terms of Use | Privacy

BANXCORP AT-A-GLANCE

| | |
|---|---|
| Type of Company | Privately-Held |
| Founded | 1984 |
| Key People | Norbert Mehl<br>Founder & CEO |
| | Diana Mehl<br>Editorial Director |
| Industries | Financial Services<br>Real Estate & Hospitality |
| Operating Portfolio | BanxQuote<br>Panache Privée |



About Us | Contact Us