# LAW OFFICES OF KRISTEN RENZULLI, PC

31 OVERLOOK DRIVE
CHAPPAQUA, NEW YORK 10514
914.263.7703
914.238.9506 FAX
kristen@renzullipc.com

April 23, 2012

*Via ECF and Fax 973-776-7865*

Hon. Cathy L. Waldor, U.S.M.J.
United States Court for the District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re:    *BanxCorp v. Bankrate Inc.*, Civ. No. 07-3398 (ES)(CLW)
             *BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES)(CLW)

Dear Judge Waldor:

      I write in response to the letter sent to Your Honor by counsel for Defendant Bankrate on April 20, 2012.

**Deposition of Bankrate's CEO Tom Evans**

      Plaintiff agrees that issues of AEO confidentiality may be addressed on a case by case basis during the deposition of Tom Evans while Mr. Mehl is in attendance, should the need arise. However, the deposition would need be held at the Courthouse rather than at Lowenstein Sandler's New York office, which is why the April 20 deposition had to be adjourned.

      We note that neither the exclusion of BanxCorp employees during the deposition of Bankrate's witnesses, nor the designation of portions of depositions as AEO were ever discussed with the Court or contemplated under the existing Protective Order.

      During a conference before Judge Arleo on October 5, 2010 (*see* excerpt of transcript attached as Ex. A), the Court made clear that Local Rule 5.3 does not contemplate wholesale AEO designations of key documents, particularly in an antitrust case such as this, and set forth certain guidelines and a very heightened standard to have attorneys' eyes-only protection on any document, as follows:

> THE COURT: I know you guys wrote me a letter yesterday. You know *we have a Local Rule 5.3, and that is a serious rule, and it -- it errs on the side of disclosure and not confidentiality. It's a very heightened standard to have attorneys' eyes-only protection on any document.* Are you prepared to show that for every -- for all of these branding agreements?

Hon. Cathy L. Waldor, U.S.M.J.
April 23, 2012
Page 2

> Every -- and the law -- and *the law in this district and the comments to Rule 5.3 make clear that maybe there's a word or two that needs to be redacted. But it's a heightened burden to prove attorneys' eyes only should be a designation in the case.*

Bankrate's former CEO, Elisabeth DeMarse, already testified that its destination site, Bankrate.com, does compete with its co-branding partner websites. Therefore, Bankrate should not be permitted to cloak its anticompetitive conduct and antitrust conspiracy under the veneer of *competitively sensitive information* through improper AEO designations.

It is ludicrous for Bankrate to suggest that Mr. Mehl would be able to learn any trade secrets during the deposition of Tom Evans, or that any disclosure to Mr. Mehl will cause significant harm to Bankrate's competitive position. Instead, it will merely enable Mr. Mehl to assist BanxCorp's counsel in the effective prosecution of this lawsuit. Plaintiff's detailed pleadings, its responses to interrogatories, and Mr. Mehl's extenuating testimony have already disclosed every possible scheme by Bankrate and any competitively sensitive information at issue in this action. The purpose of Mr. Evans' deposition is simply to corroborate Plaintiff's claims. Bankrate's argument that Mr. Mehl could potentially use any competitively sensitive information learned during Mr. Evans' deposition to harm Bankrate's competitive position at some date in the distant future, were it to prevail in this antitrust litigation, is purely speculative and *highly unlikely*.[1]

**Depositions of Peter Morse and Diana Mehl**

It is my understanding that Judge Arleo has never ruled out the deposition of Bankrate's chairman and former CEO, Peter Morse, but merely instructed the parties to "[s]tart with Evans and DeMarse." *See* excerpt of June 7, 2011 conference transcript, attached as Ex. B.

Ms. DeMarse testified that Mr. Morse conducted all of his Bankrate-related business using a *morsepartners.com* email address, and further corroborated that Bankrate was the Internet's leading consumer banking marketplace and already had 130 co-branding partnership agreements prior to her appointment as Bankrate's CEO in 2000. Bankrate's periodic 10-K and other S.E.C. filings from 2000 to the present describe his leadership role at Bankrate as follows:

> Mr. Morse has been a director since 1993, and served as our Chief Executive Officer from 1993 until 1997. Mr. Morse served as our Chairman from 1997 until 1999, and since 2002. Since 1982, Mr. Morse has also served as President of Morse Partners, Inc., a private equity firm that acquires operating companies and provides expansion capital, ...

Mr. Morse has material information that cannot be obtained from another source. For example, Ms. DeMarse also testified that she did not remember what her discussions were with

---

[1] Bankrate's reference to a portion of Mr. Mehl's June 15, 2011 deposition transcript, wherein he characterized Bankrate as a company "that *could be* a competitor" in the distant future, is disingenuous since, at Bankrate's insistence, BanxCorp had to remove AEO designations from its own document production.

Hon. Cathy L. Waldor, U.S.M.J.
April 23, 2012
Page 3

Mr. Morse during her merger negotiations and meetings with BanxCorp and its investment bank, PaineWebber, in June 2000.

BanxCorp has made a showing sufficient to justify its request for Mr. Morse's deposition, both under a Rule 30(b)(1) Notice of Deposition to Bankrate Inc., and a *Rule 45 Deposition Subpoena served on Morse Partners Inc.* Further reference is made to our correspondence with the Court dated February 13, 2012 [Doc. No. 311], February 22, 2012 [Doc. No. 316], and March 4, 2012 [Doc. No. 318].

As we pointed out in our March 4, 2012 letter to the Court, the apex doctrine is not recognized in New Jersey. However, in the event that BanxCorp is not entitled to depose Mr. Morse based on the apex doctrine, the same exemption should apply to the deposition of BanxCorp's member of the Board of Directors, Diana Mehl.

Because of BanxCorp's continuing efforts to obtain Mrs. Mehl's deposition, we refer to Bankrate's own arguments and the cases applying the apex doctrine, which allow the deposition of a person like Mrs. Mehl *only if she has material information that cannot be obtained from another source*. Mrs. Mehl's testimony would be duplicative of that of Mr. Mehl, which has lasted for 8 days and has already been completed. We also point out that Bankrate has made no factual showing of any kind remotely suggesting that it can justify its request for Mrs. Mehl's deposition. Bankrate's reliance upon an outdated bio of Mrs. Mehl published in February 2002 is irrelevant. In fact, in his recent deposition, Mr. Mehl testified that Mrs. Mehl was not involved in any day-to-day operations of the company. There is no basis for Bankrate to subject Mrs. Mehl to a deposition.

In conclusion, either both Mr. Morse and Mrs. Mehl should be deposed, or neither of them should.

Respectfully submitted,

Kristen Renzulli

Encls.

cc:   All Counsel of Record (*via ECF*)

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2

 3   BANXCORP,                           .
                                         .
 4          Plaintiff,                   .
                                         .  Case No. 07-cv-03398
 5   vs.                                 .
                                         .  Newark, New Jersey
 6   BANKRATE, INC.,                     .  October 5, 2010
                                         .
 7          Defendant.                   .
                                         .
 8

 9                       TRANSCRIPT OF HEARING
10             BEFORE THE HONORABLE MADELINE COX ARLEO
                    UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:     NELSON E. CANTER, ESQ.
13                          Canter Law Firm P.C.
                            123 Main Street - 9th Floor
14                          White Plains, NY 10601
                            (914) 948-3011
15                          Email: Ncanter@canterlawfirm.com

16   For the Defendant:     R. SCOTT THOMPSON, ESQ.
                            Lowenstein Sandler PC
17                          65 Livingston Avenue
                            Roseland, NJ 07068-1791
18                          (973) 597-2500
                            Email: Sthompson@lowenstein.com
19
                            MICHAEL J. HAHN, ESQ.
20                          Lowenstein Sandler PC
                            65 Livingston Avenue
21                          Roseland, NJ 07068
                            (973) 597-2500
22                          Email: Mhahn@lowenstein.com

23

24

25
```

1           MR. CANTER: Sure.

2           THE COURT: I know you guys wrote me a letter
3    yesterday. You know we have a Local Rule 5.3, and that is a
4    serious rule, and it -- it errs on the side of disclosure and
5    not confidentiality. It's a very heightened standard to have
6    attorneys' eyes-only protection on any document. Are you
7    prepared to show that for every -- for all of these branding
8    agreements? Every -- and the law -- and the law in this
9    district and the comments to Rule 5.3 make clear that maybe
10   there's a word or two that needs to be redacted. But it's a
11   heightened burden to prove attorneys' eyes only should be a
12   designation in the case.

13          MR. HAHN: This case is all about competition,
14   Your Honor. And these -- these -- this is the guts of a big
15   segment of our business. This is -- this is -- this is the
16   terms of our business relationships with all of our partners.
17   And what they're proposing to do is to show the terms of our
18   business arrangements with all of our partners to our
19   competitor. That is at the heart of what "attorneys' eyes
20   only" designation is meant to be.

21          THE COURT: But what I suggest to you is that all
22   of that document should not be designated -- may not be
23   appropriately designated attorneys' eyes only. Maybe there
24   are terms or amounts or parts of it that you need to redact,
25   but maybe not the whole document needs to be redacted. And

1  maybe there's parts of the document, rates or compensation or
2  different structures of the deal that can be redacted that
3  still can provide him a sense of what the relationship is.
4  I'm not sure because I haven't seen the documents. But
5  that's what the rule contemplates. It doesn't contemplate a
6  wholesale redaction -- a wholesale designation of really the
7  key documents in the -- it's an antitrust case. The whole
8  case is about the relationship. I mean, you wrote me in your
9  letter last night about who are their competitors. Are
10 they -- are these even competitors. I mean there's a
11 threshold issue of who are their competitors for the Sherman
12 Act claim. So now we're hearing, you know -- those -- those
13 co-branding contracts are going to be important.
14          MR. HAHN: The contracts don't really go to whether
15 these people are competitors are not. But --
16          MR. CANTER: Your Honor.
17          MR. HAHN: We hear what you just said.
18          MR. CANTER: If I could just finish.
19          MR. HAHN: And we will go back, we will review the
20 contracts and look to see whether we can do some -- some much
21 more focused redaction of information so that it satisfies
22 Your Honor's concerns.
23          THE COURT: Wouldn't the contracts between your
24 client and these co-branders be evidential on the issue of
25 whether they're competitors?

# EXHIBIT B

```
 1                      UNITED STATES DISTRICT COURT
                           DISTRICT OF NEW JERSEY
 2

 3   BANXCORP,                         .
                                       .
 4        Plaintiff,                   .
                                       .  Case No. 07-cv-03398
 5   vs.                               .
                                       .  Newark, New Jersey
 6   BANKRATE, INC.,                   .  June 7, 2011
                                       .
 7        Defendant.                   .
                                       .
 8

 9
                            TRANSCRIPT OF HEARING
10               BEFORE THE HONORABLE MADELINE COX ARLEO
                     UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:     MORDECHAI I. LIPKIS, ESQ.
13                          350 Broadway, Suite 1105
                            New York, NY 10013
14
                            LAWRENCE C. HERSH, ESQ.
15                          17 Sylvan Street
                            Suite 102b
16                          Rutherford, NJ 07070
                            (201) 507-6300
17                          Email: Lh@hershlegal.com

18                          Mr. Norbert Mehl

19   For the Defendant:     R. SCOTT THOMPSON, ESQ.
                            Lowenstein Sandler PC
20                          65 Livingston Avenue
                            Roseland, NJ 07068-1791
21                          (973) 597-2500
                            Email: Sthompson@lowenstein.com
22
                            MICHAEL J. HAHN, ESQ.
23                          Lowenstein Sandler PC
                            65 Livingston Avenue
24                          Roseland, NJ 07068
                            (973) 597-2500
25                          Email: Mhahn@lowenstein.com
```

1  depositions?
2          MR. LIPKIS: Yes. There are the depositions of Tom
3  Evans, Elisabeth DeMarse, and Peter Morse.
4          MR. THOMPSON: We actually haven't really discussed
5  these depositions in particular. We have no objection to Tom
6  Evans. He's our CEO, has been for the last six or seven
7  years. Elisabeth DeMarse was the CEO before Mr. Evans or
8  shortly before Mr. Evans. The relevancy is a little bit
9  remote, but we're -- we're willing to do our part to get her
10 produced. She's no longer employed by the company.
11 Mr. Morse is the chairman of the board of the company, has
12 never played a role in operations. And we do not consent to
13 having his deposition taken. He's -- they've never made any
14 showing as to how --
15         THE COURT: Okay. Well, then, why don't we do
16 this? Start with Evans and DeMarse. Will they -- will you
17 also be -- is there topics -- 30(b)(6) topics you'd like to
18 have them respond to on behalf of the company? Policies and
19 practices?
20         MR. LIPKIS: Yes.
21         THE COURT: Okay. But I want you to send him a
22 30(b)(6) notice and list the topics. That'll avoid at his
23 deposition him objecting way beyond the scope of -- these are
24 CEOs, they know about a lot of things. I want the topics
25 that you intend to question him on written down as akin to a