# LAW OFFICES OF KRISTEN RENZULLI, PC

31 OVERLOOK DRIVE
CHAPPAQUA, NEW YORK 10514
914.263.7703
914.238.9506 FAX
kristen@renzullipc.com

May 29, 2012

*Via ECF, FedEx and Fax* (w/o encls.)

Hon. Cathy L. Waldor, U.S.M.J.
United States Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07101

    Re:    ***BanxCorp v. Bankrate Inc.*, Civ. No. 07-3398 (ES)(CLW)**
            ***BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES)(CLW)**

Dear Judge Waldor:

       We write in response to a letter from Defendant Bankrate's counsel dated May 25, 2012 (Doc. No. 333). Bankrate's refusal to produce its Director of Online Marketing Petra Bowman for a deposition noticed for May 29 (within the fact discovery timeframe set by the Court), further buttresses Plaintiff's argument that Bankrate's CEO Tom Evans be ordered to appear for his continued deposition at the Courthouse until it is completed.

       BanxCorp had no intentions of deposing Ms. Bowman until after Mr. Evans avoided responding to multiple key topics that had been noticed for his own deposition held on May 9, 2012 ("EVANS Deposition"), as shown in the enclosed transcript. For example, Mr. Evans avoided responding to certain specific questions concerning Bankrate's paid search engine bids and listings, and a competitive analysis of Bankrate's destination websites, Bankrate's Co-Branding Partner Sites and Bankrate's independent competitors' websites. More specifically, when Mr. Evans was asked, *"[w]hat and when were the highest prices paid by Bankrate for search and keywords from 2004 to 2008?"* he responded as follows (see EVANS Deposition transcript, 242:10-25, 243:1-3.):

> A: I -- I don't specifically have that information.
> Q: Do you have it somewhere in -- accessible to you in your office?
> A: We would have that information? Sure.
> Q: How is that information kept? Is it kept in the computer or something else?
> A: That -- that would be -- well, it be kept in an electronic file.
> \* \* \*
> Q: Who at the company has access to that information, let's say?
> A: It would be the search marketing department. Like, we have -- one by the name of **Petra Bowman**. [emphasis added]

Hon. Cathy L. Waldor, U.S.M.J.
May 29, 2012
Page 2

Based on the foregoing, Bankrate should also be ordered to produce forthwith the above-referenced information concerning *the highest prices paid by Bankrate for search and keywords from 2004 to 2008* as testified by Mr. Evans. Bankrate had no right to withhold such long overdue documents probative of its predatory pricing conduct and vertical price squeeze practices.

As referred to in our recent correspondence with the Court, Mr. Evans was instructed not to answer the following questions which were marked for a ruling, as shown in the enclosed transcript of the EVANS Deposition:

> Q: Do cartel members typically agree on such matters as pricing, market shares, allocation of customers, allocation and division of markets, revenues or territories, establishment of centralized sales agency or a combination of these? (Transcript of Evans Deposition, 32-37)
>
> Q: Did Bankrate's co-branding partnership agreements reduce or promote independent competition for the sale of internet – internet rate listings? (Transcript of Evans Deposition, 37-39) [1] (see also defense counsel's letter dated May 15, at page 2)
>
> Q: Isn't it true that Bankaholic's press releases of December 4, 2007, and January 18, 2008, are indicative of competition between the parties? (Transcript of Evans Deposition, 70-73)
>
> Q: Isn't it true that Bankaholic – that the "Whereas" clause on BR00 -- 004365, which is part of the contract between Bankrate and – and Bankaholic, is indicative of competition between the parties? (Transcript of Evans Deposition, 73-74) (see also defense counsel's letter dated May 15, at page 2)
>
> Q: Did Bankrate's co-branding contract with BCRS/BankCD.com indicate competition between the parties in the "Whereas" section? (Transcript of Evans Deposition, 77-78)

---

[1] We note that a transcript of Bankrate's First Quarter 2007 Earnings Call (introduced during the EVANS Deposition as exhibit EVANS #12) corroborates that Mr. Evans had already publicly stated his opinion on this issue, as follows: *"One of the things that is a tremendous gating item for us we believe is in terms of competition and barriers for competition is how does anybody else break into this if we have tied up all the best newspaper relations, the best co-brand relationships and we've got a dynamic organic traffic website. How does anybody else get into this business and compete with Bankrate?"* Moreover, Judge Salas specifically referred twice to these declaration of Mr. Evans in her December 30, 2011 Opinion [Doc. No. 298, at page 34; see also Ex. A-B attached to our letter dated May 18, 2012, Doc. No. 332].

Hon. Cathy L. Waldor, U.S.M.J.
May 29, 2012
Page 3

Among the most egregious examples of Mr. Evans' evasive responses, and defense counsel interruptions and witness coaching, when asked repeatedly if "Bankrate.com, Interest.com and Bankaholic.com compete with Bankrate's co-branded partner sites on the basis of pricing for internet rate listings," and if "Bankrate.com compete[s] with its co-branded partner sites for the sale of internet rate listings." Mr. Evans kept insisting for nearly half an hour that he did not understand the meaning of these questions (as admitted by defense counsel in his letter dated May 10, at page 2). (See transcript of Evans Deposition, 83-93)

In sum, virtually every time Mr. Evans was asked a question about competition between Bankrate.com's *destination website* and its 130 co-branding partners as shown in Exhibit A to the Fifth Amended Complaint (transcript of Evans Deposition, at page 20), Bankrate's market power or market share, cartelization and anti-competitive effects of Bankrate's co-branding agreements, Bankrate's successive price increases from 2005 to 2009, prices paid for search engine keyword searches, acquisitions of competitors, monopolization or attempts to monopolize the relevant market, or any other question at the heart of this litigation, his responses were routinely evasive, as shown throughout the enclosed transcript. In other cases his responses were flatly contradicted by the public record.

Finally, subject to the responses received during Mr. Evans' continued deposition, Plaintiff reserves the right to depose Ms. Bowman, as well as Michael Ricciardelli, Bankrate's SVP, Business Development and Consumer Marketing, another employee referred to by Mr. Evans during his deposition in connection with questions that he avoided answering (EVANS Deposition transcript, 81:20-21).

Therefore, we respectfully ask the Court that Defendant Bankrate be ordered to promptly produce Thomas Evans for his continued deposition at the Courthouse until completion; that all improper objections interposed by counsel be stricken; that the witness provide answers to all questions to which there have been an improper response or objection; and that the deponent and defense counsel be ordered to cease violating Rule 30 and be sanctioned accordingly. [2]

Respectfully submitted,

Kristen Renzulli

Encls.

cc: Hon. Esther Salas, U.S.D.J.
All Counsel (*via ECF*)

---

[2] See *In Re: Neurontin Antitrust Litig.*, Nos. 1479, 02-1390(FSH) (D.N.I Jan. 25, 2011), as cited in our letter dated May 16 (Doc. No. 330) ("counsel should know that the purpose of a deposition is to find out what the witness thinks, that objections should be concise, non-argumentative, and non-suggestive, and hence that counsel should not (1) make speaking, coaching or suggestive objections; (2) coach or change the witness's own words to form a legally convenient record; (3) frustrate or impede the fair examination of a deponent during the deposition…")