

R. Scott Thompson
Member of the Firm
Tel  973 597 2532
Fax  973 597 2533
sthompson@lowenstein.com

July 5, 2012

**BY ECF**
Hon. Cathy L. Waldor, U.S.M.J.
United States District Court for the District of New Jersey
King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

   Re: *BanxCorp v. Bankrate, Inc.*, Civ. No.  07-3398 (ES-CLW)
     *BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES-CLW)

Dear Judge Waldor:

I am writing in response to letters to the Court from counsel for BanxCorp dated June 25, 2012 and July 1, 2012.  I write to specifically address the following two issues (which I believe to be the only two issues that were not previously resolved by the Court): (1) A request for production of documents made by BanxCorp last week relating to Bankrate's purchase of search engine keywords, and (2) BanxCorp's request for the removal of confidentiality from Bankrate's price lists from 2005 through 2009, which were designated as "AEO" under the confidentiality order in this case.

**New Document Requests**

In her letter to the Court dated July 1, 2012, counsel for BanxCorp reports to the Court that BanxCorp has demanded that Bankrate produce "copies of all search engine keyword reports for 2006 and 2007, which should have been produced a year ago in response to paragraph 11 of the Court's October 19, 2010 Supplemental Scheduling Order . . ."

This is a new request.  "Search engine keyword reports" were never even remotely called for by any other request by BanxCorp for the production of documents.

The original Complaint in this case was filed on July 20, 2007; it contained several paragraphs of allegations concerning Bankrate's supposed predatory conduct in the purchase of search engine keywords, allegations that have remained unchanged in substance throughout the many iterations of the complaint. *See* original Complaint ¶¶90 - 96.  In essence, BanxCorp has consistently alleged that Bankrate paid more for search engine keywords than it could make in revenue when a consumer came to Bankrate's website as the result of the use of the keyword on a particular search engine.  Thus, the issue of search engine keywords and the prices paid by Bankrate has been in the case for five years.

**Lowenstein Sandler PC**  In California, Lowenstein Sandler LLP                 www.lowenstein.com

65 Livingston Avenue   Roseland, NJ 07068   Tel 973 597 2500  Fax 973 597 2400     New York   Palo Alto   Roseland

Despite this, BanxCorp never requested any data concerning Bankrate's use of search engine keywords. In fact, BanxCorp never requested any documents even remotely relating to search engine marketing (or "SEM"). BanxCorp's assertion that the documents "should have been produced a year ago in response to paragraph 11 of the Court's October 19, 2010" order is mystifying. The referenced paragraph required Bankrate to produce all email for three custodians (later identified as Mr. Evans, Peter Morse, and Michael Ricciardelli) that contained any one of a list of 21 search terms (24 search terms, in the case of Mr. Evans) selected by BanxCorp. Copies of the October 19, 2010 order, as well as a letter from then-counsel for BanxCorp identifying search terms, are attached. Not one of the terms selected by BanxCorp had anything to do with SEM. BanxCorp did not ask for emails containing the terms "keyword", "search engine", or "paid search", for example. Bankrate long ago satisfied its obligations under paragraph 11 of the October 19, 2010 order by producing all documents containing any of the keywords identified by BanxCorp.

The first time that Bankrate ever made any kind of request relating to Bankrate's SEM was after the first day of the deposition of Thomas Evans, Bankrate's CEO. The issue was discussed during the June 14, 2012 conference call with the Court. As a result of that discussion, on June 27, 2012, Bankrate produced a chart showing the highest average prices paid each month for any keyword purchased by Bankrate between May 2006 and December 2007.[1] The chart also showed revenue generated by each such keyword; the chart showed clearly that Bankrate typically made 100% profit on even those keywords for which it paid the highest prices during the relevant time period. As is the case with all of BanxCorp's fabricated allegations, the data shows that there is not a shred of evidence supporting BanxCorp's claim that Bankrate lost money on SEM in order to drive others out of business.

Now, BanxCorp is seeking to further expand its untimely request for production of documents. As Your Honor informed BanxCorp, such untimely requests are subject to a showing of good cause. BanxCorp has not attempted to justify its late requests, let alone show good cause. It is inconceivable that BanxCorp can demonstrate cause justifying the late request in light of the fact that the issue has been in the case for five years.

## Removal of Confidential Designations

BanxCorp also requested that Bankrate remove its designations of "confidential" and "AEO" from a group of documents that appears to consist of (1) Bankrate's price lists between 2005 and 2009 and (2) a small group of documents designated "confidential" by Bankrate and by third parties containing pricing and other information. BanxCorp argues that the documents in

---

[1] Bankrate did not have reliable data for the period before May 2006.



Hon. Cathy L. Waldor  July 5, 2012
Page 3

question should have "confidential" designations removed because information in the documents is public and because the information is "aged".

Age, standing alone, does not make confidential information subject to disclosure. "[T]he fact that the information is several years old is not relevant" when the documents provide information "that its competitors could still find useful." *See In re: Am. Business Fin. Serv., Inc.*, No. 05-10203, 2008 WL 3906894, at *4 (Bankr. D. Del. Aug. 20, 2008) (upholding the confidentiality of documents three to five years old). Consequently, courts have declined to remove confidential or AEO designations over material that are years old. *See Bradburn Parent/Teacher Store, Inc. v. 3M*, No. 02-7676, 2004 WL 1146665, at *2 (E.D. Pa. May 19, 2004) (ten year old strategic plan that Plaintiff claimed was "stale" could nevertheless benefit competitors and was entitled to confidentiality); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98-3952, 2001 WL 62600, at *1-2 (N.D. Ill. Jan. 25, 2001) (refusing to unseal confidential documents claimed as stale when documents contained "legal and business advice" for product strategies "that may not have outlived their usefulness."); *Culinary Foods, Inc. v. Raychem Corp.*, No. 92-8152, 151 F.R.D. 297, 303 (six year old product development plans were competitively sensitive and entitled to confidentiality); *Encyclopedia Brown Prod., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 613-14 (S.D.N.Y. 1998) (seven year old business information was not "stale" because "confidential business information dating back to even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); *The Timken Company v. U.S. Customs Serv.*, No. 79-1736, 1983 WL 486422, at *4-5 (D.D.C. June 24, 1983) (sales data that was five to ten years old was entitled to confidentiality); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891-92 (E.D. Pa. 1981) (acknowledging "that old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses."); *Braintree Elec. Light Dep't v. Dep't of Energy*, 494 F. Supp. 287, 291 (D.D.C. 1980) (six year old pricing data that plaintiff claimed was "out-of-date" was entitled to confidential treatment).

Nevertheless, Bankrate will agree to remove the "AEO" designation from its price lists from 2005 until 2009. However, Bankrate objects strongly to any attempt by BanxCorp to require the removal of "confidential" designations from any documents, including price lists. BanxCorp can show no good reason for wishing to disclose publicly Bankrate's financial information. None of the documents identified by BanxCorp in Exhibit 3 to its June 25, 2012 letter is available publicly, and all of those documents contain competitively sensitive information including -- but not limited to -- pricing information:

Document 1 (BR00125137-8) contains competitively sensitive information concerning blended rates, volume of traffic, and number of advertisers in addition to pricing information;

Document 2 (BR00125263-8) contains competitively sensitive information concerning blended rates, volume of traffic, forecasts and projections, and Bankrate's internal analyses of trends in addition to pricing information;

**Lowenstein Sandler**
ATTORNEYS AT LAW

Hon. Cathy L. Waldor
Page 4

July 5, 2012

The balance of the documents were designated as "confidential" by third parties, not by Bankrate. Bankrate believes that all of the remaining third-party documents contain pricing, traffic, and timing information relating to specific Bankrate customers that is competitively sensitive and not available publicly.

Removal of the "AEO" designation from Bankrate's price list (preserving a "confidential" designation on those lists) will allow BanxCorp to use the information in this lawsuit. There is no good reason for the removal of "confidential" designations, and BanxCorp has not offered any reason other than that the information is "aged". BanxCorp has proven itself to be a litigant that refuses to play by the rules, and Bankrate objects in the strongest terms to any ruling that might allow BanxCorp to disclose Bankrate's confidential information outside of this lawsuit.

Respectfully submitted,

R. Scott Thompson

Cc: All Counsel (ECF)



Case 2:07-cv-03398-ES-CLW   Document 347   Filed 07/05/12   Page 5 of 12 PageID: 13223

Case 2:07-cv-03398-SDW -MCA   Document 143   Filed 10/19/10   Page 1 of 2 PageID: 3827
Case 2:07-cv-03398-SDW -MCA   Document 141   Filed 10/15/10   Page 2 of 3 PageID: 3816

| | |
|---|---|
| BANXCORP,<br><br>Plaintiff(s),<br><br>-vs-<br><br>BANKRATE, INC.,<br><br>Defendant(s), | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. Susan D. Wigenton<br>Civil Action No. 07-3398 (SDW)<br><br>**SUPPLEMENTAL PRETRIAL**<br>**SCHEDULING ORDER** |

**THIS MATTER** having come before the Court for an in-person status conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on October 5, 2010 (the "Rule 16 Conference"); Nelson E. Canter, Esq., appearing on behalf of the Plaintiff; R. Scott Thompson, Esq. and Michael J. Hahn, Esq., appearing on behalf of the Defendant; and for good cause shown:

**IT IS** on this 18 day of October, 2010,

**ORDERED THAT:**

1. This Order supplements the Pretrial Scheduling Order, dated October 6, 2010.

2. On or before **November 4, 2010**, Plaintiff will provide supplemental or amended responses to Defendant's First Set of Interrogatories and Defendant's First Request for Production of Documents, pursuant to the meet and confer by the parties on October 13, 2010.

3. On or before **November 4, 2010**, Defendant will produce board minutes, reports and presentations that pertain to additional claims that the Court allowed to proceed, from January 1, 2005 to the present.

4. The parties will continue to meet and confer regarding Defendant's Attorneys' Eyes Only designations of co-branding contracts, acquisition closing documents, and the forthcoming traffic statistics and revenue allocation reports, in particular with respect to traffic, revenue sharing and allocation amounts and percentages that are potentially relevant to or evidentiary of Plaintiff's Section 1 and Section 2 claims. Defendant will produce all re-designated documents on or before **November 4, 2010**, including re-designated documents already agreed upon, as follows:

   a. Defendant will redact the numbers on documents labeled BR00002820, 2877, 3038-3074, and 3087 as AEO and redesignate the unredacted portions of those documents as Confidential.

1

Case 2:07-cv-03398-ES-CLW  Document 347  Filed 07/05/12  Page 6 of 12 PageID: 13224

Case 2:07-cv-03398-SDW -MCA  Document 143  Filed 10/19/10  Page 2 of 2 PageID: 3828
Case 2:07-cv-03398-SDW -MCA  Document 141  Filed 10/15/10  Page 3 of 3 PageID: 3817

    b. Defendant will remove the AEO designation on documents labeled BR00002865-2874 and 3090-3091, and redesignate those documents as Confidential.

    c. Defendant will redact salary and performance review information on documents labeled BR00002897 as AEO, and redesignate the unredacted portions as Confidential.

5. On or before **November 4, 2010**, Defendant will produce all remaining website co-branding contracts in effect from January 1, 2003 to the present.

6. On or before **November 4, 2010**, Defendant will produce traffic reports and revenue allocation reports for Bankrate.com and co-branded websites from January 1, 2003 to the present.

7. On or before **December 6, 2010**, Plaintiff will respond to Defendant's Second Set of Interrogatories, Second Set of Request for Production of Documents, and Requests for Admission.

8. On or before **December 6, 2010**, Defendant will produce insertion orders (i.e., purchase orders) and contracts with the top five customers purchasing rate table listings per year for the years 2004, 2005, 2006 and 2007. Defendant will produce the respective customer invoices for the same time period, on or before **January 10, 2010**.

9. On or before **January 10, 2010**, Defendant will produce all responsive e-mails sent and received for the period January 1, 2003 through December 31, 2007 based on searches for twenty (20) third-party domain names to be selected by Plaintiff, for the following seven (7) Bankrate custodians: Tom Evans (CEO & President), Edward DiMaria (CFO), Michael J. Ricciardelli (SVP Consumer Marketing), Robert deFranco (SVP Finance), Steven L. Horowitz (SVP GM Online Properties), Donaldson M. Ross (SVP Chief Revenue Officer), and Cutter Cunningham (former SVP-COO).

10. On or before **January 10, 2010**, Defendant will produce all responsive e-mails sent and received for the period of January 1, 2003 through December 31, 2007 between Tom Evans and Peter C. Morse (Bankrate's Chairman) that pertain to the claims in Plaintiff's Third Amended Complaint.

11. On or before **January 10, 2010**, the parties will meet and confer regarding reasonable search terms for the purpose of searching the internal e-mails sent and received for the period from January 1, 2005 through December 31, 2007 of three Bankrate's custodians to be selected by Plaintiff. Defendant will produce the e-mails resulting from these searches on or before **February 15, 2010**.

/s/ 
**MADELINE COX ARLEO**
United States Magistrate Judge

*[Handwritten:] In Person Status conf. Scheduled for Jan 20-11 at 11am*

# CANTER LAW FIRM P.C.

ATTORNEYS AT LAW
123 MAIN STREET – 9TH FLOOR
WHITE PLAINS, NEW YORK 10601
www.canterlawfirm.com

Nelson E. Canter*
John D. Megerian**
*Also admitted in New Jersey
** Also admitted in Connecticut

TEL:  (914) 948-3011
FAX:  (914) 948-3066
ncanter@canterlawfirm.com

January 31, 2011

*Via E-Mail*

Michael J. Hahn, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

Re:  *BanxCorp v. Bankrate, Inc.*, Civ. No.:  07-03398-SDW-MCA

Dear Mike:

Pursuant to our meet and confer held on January 28, 2011, this is to confirm that with respect to paragraph 11 of the October 18, 2010 Supplemental Scheduling Order, the parties have agreed that Defendant will produce the internal e-mails sent and received for the period from January 1, 2005 through December 31, 2007 of Peter Morse, Tom Evans, and Michael Ricciardelli, based on the following search terms: "market share", "competitor", "competition", "revenue split", "revenue share", "rev share", "Bankaholic", "LendingTree", "HYSA", "CPA", "monopoly", "predatory", "exclusive", "barrier", "rate increase", "% increase", "best month", "uniques", "unique visitors", "BanxQuote", and "Mehl".

In addition, Defendant will search the e-mails of Tom Evans for the same period based on the following search terms: "CPC", "price", and "pricing".

As further discussed at our meet and confer, with respect to production of insertion orders, invoices and specific flat fee or CPC rates (including the corresponding and applicable unit rate which the orders rely upon) as charged by Bankrate to its top five customers per year in 2004, 2005, 2006 and 2007, Plaintiff specifically requested that the production refer to Bankrate's top advertisers as disclosed in its 10-K filings.[1]

Also, please resubmit a copy of Bankrate's board minutes for 2007 (except for 4-25-07) as we are unable to locate them.

Thank you for your cooperation in this matter.

---

[1] See attached excerpts of Bankrate's 10-K filings for 2004, 2005, 2006 and 2007.

Michael J. Hahn, Esq.
January 31, 2011
Page 2

                                            Very truly yours,

                                            CANTER LAW FIRM P.C.

                                      By: *[signature]*

                                            Nelson E. Canter

Encls.

10-K 2004

BANKRATE INC.
Form 10-K - Annual report
Filing Date          2005-03-16
Period of Report     2004-12-31

Advertisers

We market to local advertisers targeting a specific audience in a city or state and also to national advertisers targeting the entire country. As of December 31, 2004, we had 68 graphic advertisers and 469 hyperlink advertisers, some of which are both graphic and hyperlink advertisers. Among our larger advertisers are LowerMyBills.com, iHomeowners, Inc., ING Direct, E-Loan, Inc., Bank of America, Citibank, Capital One Services, Inc., Countrywide, and GetSmart (acquired by Lending Tree, Inc.)/Providian Financial Corporation. We had one online customer, GetSmart/Providian Financial Corporation, who accounted for approximately 3%, 9% and 11%, respectively, of total revenue for the years ended December 31, 2004, 2003 and 2002. Sales to no other customer exceeded 10% of total revenue for the periods presented. No material revenues were generated outside of the United States.

10-K 2005

BANKRATE INC.
Form 10-K - Annual report
Filing Date        2006-03-16
Period of Report   2005-12-31

Advertisers

We market to local advertisers targeting a specific audience in a city or state and also to national advertisers targeting the entire country. As of December 31, 2004, we had 68 graphic advertisers and 469 hyperlink advertisers, some of which are both graphic and hyperlink advertisers. Among our larger advertisers are LowerMyBills.com, iHomeowners, Inc., ING Direct, E-Loan, Inc., Bank of America, Citibank, Capital One Services, Inc., Countrywide, and GetSmart (acquired by Lending Tree, Inc.)/Providian Financial Corporation. We had one online customer, GetSmart/Providian Financial Corporation, who accounted for approximately 3%, 9% and 11%, respectively, of total revenue for the years ended December 31, 2004, 2003 and 2002. Sales to no other customer exceeded 10% of total revenue for the periods presented. No material revenues were generated outside of the United States.

10-K 2006

BANKRATE INC.
Form 10-K - Annual report
Filing Date        2007-03-16
Period of Report   2006-12-31

Advertisers

We market to local advertisers targeting a specific audience in a city or state and also to national advertisers targeting the entire country. As of December 31, 2004, we had 68 graphic advertisers and 469 hyperlink advertisers, some of which are both graphic and hyperlink advertisers. Among our larger advertisers are LowerMyBills.com, iHomeowners, Inc., ING Direct, E-Loan, Inc., Bank of America, Citibank, Capital One Services, Inc., Countrywide, and GetSmart (acquired by Lending Tree, Inc.)/Providian Financial Corporation. We had one online customer, GetSmart/Providian Financial Corporation, who accounted for approximately 3%, 9% and 11%, respectively, of total revenue for the years ended December 31, 2004, 2003 and 2002. Sales to no other customer exceeded 10% of total revenue for the periods presented. No material revenues were generated outside of the United States.

10-K 2007

BANKRATE INC.
Form 10-K - Annual report

Period of Report 2007-12-31

Advertisers
We market to local advertisers targeting a specific audience in a city or state and also to national advertisers targeting the entire country. We do not have any advertiser concentration above 5% of revenue within either the graphic or hyperlink channel. Bankrate.com is attractive to both the larger advertisers such as Citi Bank, Bank of America, Countrywide, HSBC and others attracted to the high quality in market audience as well as hundreds of smaller local advertisers who can compete with the larger advertiser on our detailed rate research tables through competitive rates or service.