# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BANXCORP,

                    Plaintiff,

          v.

BANKRATE, INC.,

                    Defendant.

Civil Action No. 07-3398 (SDW)(MCA)

**ORDER**

July 13, 2010

**WIGENTON**, District Judge.

This matter, having come before the Court on Bankrate's Motion to Dismiss BanxCorp's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (Doc. #91), and this Court, having carefully reviewed and considered the submissions and arguments of the parties, for the reasons stated on the record on July 13, 2010,

IT IS on this 13th Day of July, 2010,

**ORDERED** that Defendant Bankrate's Motion is DENIED.

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc: Magistrate Judge Madeline C. Arleo

```
 1                   IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
 2                     CIVIL ACTION  2:07-cv-3398-SDW

 3
       BANXCORP,                        : TRANSCRIPT OF PROCEEDINGS
 4                                       :
                       Plaintiff,        :      M O T I O N
 5                                       :
                    -vs-                 :      Pages 1 - 16
 6                                       :
       BANKRATE, INC.                    :
 7                                       :
                   Defendants.           :
 8     - - - - - - - - - - - - - - -

 9                                         Newark, New Jersey
                                           July 13, 2010
10
       B E F O R E:   HONORABLE SUSAN D. WIGENTION,
11                       UNITED STATES DISTRICT JUDGE

12
       A P P E A R A N C E S:
13
           CANTER LAW FIRM, P.C.
14         BY:  NELSON E. CANTER, ESQ.
           Attorney for the Plaintiff
15
           LOWENSTEIN SANDLER KOHL FISHER & BOYLAN
16         BY:  R. SCOTT THOMPSON, ESQ.
           MICHAEL J. HAHN, ESQ.
17         Attorneys for the Defendant

18


19
       _____
20     Pursuant to Section 753 Title 28 United States Code, the
       following transcript is certified to be an accurate record as
21     taken stenographically in the above entitled proceedings.

22
                           _____S/Carmen Liloia
23                             CARMEN LILOIA
                               Certified Court Reporter
24                             (973-477-9704)

25
```

```
 1                THE COURT:  Good morning, everyone.  You can have a
 2      seat in the back.
 3                This is the matter of Banxcorp versus Bankrate, et al,
 4      civil action number 07-3398.
 5                Counsel, you may officially enter your appearances
 6      please.
 7                MR. CANTER:  Nelson Canter, Canter Law Firm, PC, on
 8      behalf of the plaintiff.  I have with me the plaintiff,
 9      himself, Mr. Norbert Mehl.
10                THE COURT:  Very well.  Good morning to you.
11                MR. THOMPSON:  Good morning, your Honor.  Scott
12      Thompson from Lowenstein Sandler, PC, on behalf of defendant
13      Bankrate.  And with me here is my partner Michael Hahn.
14                THE COURT:  Good morning to both of you as well.
15                All right, counsel.  This is our, I don't know, forth
16      attempt at the complaint, and this is a third motion to
17      dismiss.  So I wanted counsel to come in and give you an
18      opportunity to be heard orally to the extent you wish to be
19      heard.  I have read all your submissions.  I am painfully
20      familiar with the factual background of the case.
21                And with that being said, it's your motion, Mr.
22      Thompson and Mr. Hahn, and I'll hear from you.
23                MR. THOMPSON:  Thank you, your Honor.
24                I am going to assume that your Honor is familiar with
25      the arguments made in our briefs and so I will try to distill
```

```
 1      my argument to the essentials.  But as your Honor is aware, the
 2      original complaint in this case was filed three weeks -- three
 3      years ago next week.  And there was a little bit -- there's a
 4      bit of irony that attaches to the allegation that Bankrate has
 5      engaged in anti-competitive conduct because what Bankrate does
 6      is essentially publish a pro-competitive series of information.
 7      And from the very beginning it's been hard to really get a grip
 8      on what is -- what it is that Banxcorp has been complaining
 9      about.  In large part because --
10              THE COURT:  I know what they're complaining about,
11      that Bankrate has 95 percent of the market.
12              MR. THOMPSON:  Well, I read that, your Honor.
13              THE COURT:  Right.
14              MR. THOMPSON:  But the question is, what's the market?
15      And ever since the very first complaint in this case, Banxcorp
16      has been either unwilling or unable to define the product
17      that's at issue here.  What is it that Bankrate is selling that
18      they're dominating the market with respect to?  And what are
19      the contours of the market?  Those questions are absolutely
20      essential.
21              As your Honor has noted in both of the opinions, the
22      answers to those questions are absolutely essential to the
23      claims being made and to Bankrate's ability to defend against
24      those claims.  Because only once we know what the product is
25      with some clarity and what the market for that product is, can
```

1    we then come back to the Court and show what other products can
2    substitute for that product or those products, and how it is
3    that Bankrate does not actually exercise a monopolistic
4    position within the market.

5          To this day, three years later, we still don't have a
6    clear definition of what the product is or what the market is.
7    And in fact, your Honor, in the third amended complaint in the
8    definitional sections, the very beginning of the complaint,
9    Banxcorp starts off by hopelessly muddling its definitions of
10   the product.

11         In paragraph 20, your Honor, Banxcorp starts out by
12   saying:  The relevant product market for purposes of this
13   complaint is the market for -- now, here's where the punch line
14   should be, your Honor.  This is where they should tell us
15   exactly what the product is.  And they describe the product as:
16   Fee-based, aggregated Bankrate table listings with interactive
17   functionalities on the Internet.

18         Now, that definition, that description, to me, can be
19   one of two things.  It can either be aggregated listings.  That
20   is to say, Bankrate tables, which is not far off the product
21   that we started with three years ago; or it could be some
22   smaller subset of that.  It could be the actual individual
23   listings on those tables, a form of advertising.  It could
24   be -- but syntactically that phrase permits two different
25   interpretations.  That would be confusing enough.  But the

1    problem is that they then go on and they add another sentence.

2    And it says -- and the second sentence now sends us off into a

3    world where we can't possibly understand what the product is or

4    what the market is because they say:  It is often referred to

5    as the "Internet-based consumer banking market place" or simply

6    Bankrate websites, and they define the term "Bankrate websites"

7    with all caps.

8         Now, that is precisely what your Honor found in your

9    September 14th opinion of last year to be hopelessly unclear.

10   It's no different from the term they used "banking market

11   places" in the last iteration of the complaint.  And the

12   problem is that as you go through this complaint and you look

13   to see the way that term is used, it's used in a variety of

14   ways, depending on -- depending on what the need of Banxcorp is

15   in the particular section in which it's being used.  So it's

16   not possible to tell what the product defined as Bankrate

17   websites is unless you're reading in the context of the

18   particular section.

19        When you look at, in particular, paragraphs 28 through

20   34 of the complaint, your Honor, they seem to define the

21   product as a kind of website.  The whole website.  That is a

22   Bankrate website.  And when you look to see their definition of

23   substitutable products, it's interchangeability of use, it's

24   all about what other kinds of websites might be substituted for

25   a Bankrate website.

```
 1                Now, the problem with that is, we don't know who the
 2      consumer is of a Bankrate website.  And it's the very issue
 3      that your Honor has identified from the very beginning of this
 4      case.  Your Honor has asked Banxcorp on a number of occasions
 5      to clarify it because there is no way to tell who the consumer
 6      of a Bankrate website is.
 7                All -- as I said before, all of the allegations
 8      concerning outer boundaries of the relevant market refer to
 9      this concept of the Bankrate website, but we don't -- but
10      there's no definition of who gets paid.  How does Bankrate sell
11      its website?  Who pays them for it?
12                THE COURT:  It's a good question.
13                MR. THOMPSON:  Yeah.  And I don't know the answer.
14      And it's not answered in the complaint.
15                Now --
16                THE COURT:  Maybe they don't know the answer.
17                MR. THOMPSON:  I think that is the case.  I think
18      they've had four chances.  If they knew the answer, they had
19      four chances to try to give us the answer.  But what we need to
20      know the answer to that question, Judge, because otherwise we
21      can't defend this case.  Because we need to know:  What is the
22      product?  And how do we get paid for it?  So that we could
23      apply the methods of antitrust law to those allegations.  And
24      as things stand, we cannot apply those metrics.
25                Now, by the way, in certain instances, they, Banxcorp,
```

 1      warps back into the product being not a Bankrate website and
 2      not advertising per se, but the Bankrate tables, themselves.
 3      So, for example, for purposes of their exclusive dealing claims
 4      at paragraphs 280 through 284 of the third amended complaint,
 5      it's plain.  Banxcorp is alleging that Bankrate in some way
 6      sold its Bankrate tables to media outlets.  And that they
 7      entered into exclusive dealings arrangements with the media
 8      outlets with respect to those tables.
 9              That is fundamentally -- that is a different set of
10      parameters.  It is a different set of actors than what is
11      described in the balance of the complaint.  And so I raise it,
12      your Honor, because what I'm -- what I'm saying is, there is
13      truly hopeless confusion still embedded in the third amended
14      complaint, despite your Honor's clear direction to Banxcorp to
15      clear up that confusion.
16              Now -- and for that reason, your Honor, every single
17      one of their claims, every single one of them is dependent upon
18      an adequate and accurate definition of both the product and the
19      product market.  And so because they have failed to define the
20      product and the product market, your Honor, we, as we've set
21      forth in our papers, we believe all of the claims in the third
22      amended complaint should be dismissed.
23              I want to spend just -- I'm going to move on.  I'm not
24      sure whether your Honor wants to break me up or --
25              THE COURT:  I don't want to break you up.

```
 1                    MR. THOMPSON:  Okay.  Then I want to move on to the
 2          allegations of price fixing because these allegations, if
 3          they're permitted to go forward, will obviously involve a great
 4          deal of expense for my client through discovery.  And we think
 5          that it's absolutely plain, absolutely plain --
 6                    THE COURT:  But didn't we already go over price
 7          fixing?
 8                    MR. THOMPSON:  I'm sorry, your Honor?
 9                    THE COURT:  Didn't I already address price fixing?
10          The whole focus of this third amended complaint really focused
11          on the relevant market and not necessarily the price fixing and
12          all that.
13                    MR. THOMPSON:  It was suppose to, your Honor.  It was
14          suppose to.  But in the last go-around, your Honor, we pointed
15          out, I think we -- and in our briefs this time around, your
16          Honor, we pointed out that they have not, they simply have not
17          alleged the basics of a price fixing claim under controlling
18          Supreme Court precedent.  And if Your Honor will permit me, I
19          will just take three minutes on this --
20                    THE COURT:  All right.
21                    MR. THOMPSON:  -- and move on.
22                    THE COURT:  Okay.  You know where I'm going, though?
23                    MR. THOMPSON:  I do believe I understand where you're
24          going.
25                    THE COURT:  Okay.
```

```
 1              MR. THOMPSON:  But the issue -- so, for starters, your
 2     Honor, they have -- they never allege in the third amended
 3     complaint that the media outlets were ever actually competitors
 4     of Bankrate.  They never allege that.  What they do allege, the
 5     facts that they allege, show that the media outlets were in
 6     fact customers of Bankrate.  That is to say there was a
 7     vertical relationship between Bankrate and the media outlets.
 8     And because of that vertical relationship, the per se price
 9     fixing claim that's been asserted, simply doesn't apply.
10              And if that were not enough, your Honor, I maybe have
11     60 seconds left, the Supreme Court decision in Dagher is really
12     important, your Honor.  And in Dagher in 2006, the Supreme
13     Court dealt squarely with the issue of whether, whether
14     entities that actually compete, that are real competitors, not
15     like the media outlets in Bankrate, but real competitors, Shell
16     Oil Company and Texico Oil Company, when they form a joint
17     venture and set a single price for their product, their
18     gasoline, whether that's price fixing.  and in Dagher the
19     Supreme Court said absolutely not.  That is not the kind of
20     price fixing that the antitrust laws were meant to address.
21              And so, your Honor, I just have to read from Dagher.
22     It says, the Supreme Court said:  "When persons who would
23     otherwise be competitors, pool their capital and share the
24     risks of loss, as well as the opportunities for profit, such
25     joint ventures are regarded as a single firm competing with
```

```
 1        other sellers in the market.  As such, though there maybe price
 2        fixing in a literal sense, it is not price fixing in the
 3        antitrust sense."
 4             So the entire antitrust, the price fixing claim that's
 5        made by Banxcorp is exactly what the Supreme Court said in
 6        Dagher is not per se unlawful.  It has to be judged by the rule
 7        of reason, if at all, and they have not asserted a rule of
 8        reason claim with respect to price fixing.
 9             Your Honor, I think we can -- I think we can probably
10        rely on our papers for the balance of the issues.  I mean, your
11        Honor pointed out in your September opinion last year that the
12        Banxcorp has not pled antitrust injury flowing from the Lending
13        Tree conspiracy.  They still haven't corrected that defect and
14        therefore --
15             THE COURT:  And there's a Lending Tree action, I
16        understand, that just got filed, at least recently.
17             MR. THOMPSON:  There is a new action that it got filed
18        and I think even amended to add in a kind of large scale
19        conspiracy, as I understand it.  But, your Honor, I think we do
20        cover in our papers fairly comprehensively the arguments with
21        respect to the balance of the issues.  And so if your Honor has
22        questions, I'd be happy to answer them or I'll sit down.
23             THE COURT:  Not at you will.  Very well.  Thank you,
24        Mr. Thompson.
25             Mr. Canter.
```

```
 1              MR. CANTER:  Good morning, your Honor.
 2              THE COURT:  You're new to this.
 3              MR. CANTER:  I am, your Honor.  I was substituted in
 4     just a couple weeks ago, and I've had an opportunity to try to
 5     digest three years of litigation.
 6              THE COURT:  Comprehensive is the word of the day.
 7              MR. CANTER:  Yes, indeed.  And what I can start off by
 8     saying, your Honor, is having reviewed your two previous
 9     opinions, I mean, it's abundantly clear that your Honor
10     requested a more accurate definition of the product market.
11     And I respectfully submit that the third amended complaint did
12     exactly that and it went out of the -- is absolutely as
13     detailed as possible in order to convey that to you.
14              And I would submit, your Honor, the relevant market
15     for purposes of this antitrust litigation, are the Bankrate
16     websites.  They are competitors.  And if you look at Exhibit D
17     of the complaint, there is a list of Bankrate co-branding
18     program.  Bankrate.coms on-line partners.  And those on-line
19     partners are all competitors, your Honor.  However, for
20     purposes of this antitrust litigation, Bankrate has entered
21     into an agreement with them to act as their exclusive agent, to
22     collect revenues, to share revenues, and to ultimately corner
23     the market.
24              So when my learned counsel indicates that the -- it's
25     muddled somehow because he thinks that the media outlets are
```

```
 1    customers, then there's a -- let me just clarify that.  The
 2    media outlets are not customers, they're financial institutions
 3    buying the advertising -- spending the advertising revenue on
 4    the rate listings on a cost per click basis.  Those are the
 5    customers, your Honor
 6            THE COURT:  And if you look at the third amended
 7    complaint, paragraph 22, clearly identifies who the customers
 8    or the purchasers are.  So I don't see there to be any
 9    ambiguity whatsoever in terms of clarifying the financial
10    institutions who are the customers here.
11            With respect to consumers who are the ultimate, the
12    end users, who click on a cost per click basis, obviously if it
13    wasn't for them, there wouldn't be a Bankrate.  There wouldn't
14    be a market to begin with.  Just like the Coumadin scenario in
15    in Warfarin.  It's pretty much identical to these
16    circumstances, except for the fact that it didn't take place on
17    the Internet.  But I'm not going to address the price fixing
18    issues right now because it's my understanding that your
19    Honor's previously ruled on it, it's the law of the case.  The
20    only issue really before the Court is really relevant product
21    market has been adequately pled.  I respectfully submit that it
22    has.  And I would respectfully submit that the Court should
23    deny the motion and we should move on to discovery.  Thank you,
24    your Honor.
25            THE COURT:  Very well.
```

```
 1              Mr. Thompson, you want to be heard further?
 2              MR. THOMPSON:  Your Honor, really, I think it maybe a
 3     procedural point that has some -- that really has some
 4     relevance.
 5              Your Honor did rule in September of last year that the
 6     price fixing claim was adequately stated in the complaint.  We
 7     subsequently asked your Honor to reconsider that in light of
 8     Dagher and certain other issues.  That motion for
 9     reconsideration was folded into this motion to dismiss.  And so
10     just as a procedural matter I want to make sure that we're
11     not --
12              THE COURT:  But that motion for reconsideration was
13     withdrawn, and then we got to this motion to dismiss because
14     they filed a third amended complaint.
15              MR. THOMPSON:  Yeah, I think, Judge, I'm not sure it
16     was ever actually withdrawn.  I think we sought leave to
17     withdraw and include the arguments in the motion to dismiss the
18     third amended complaint.
19              THE COURT:  You may have.
20              MR. THOMPSON:  I just wanted to make sure that the
21     argument is alive.  Because it really is a significant issue
22     here.  It changes -- the price fixing case was not present in
23     the original complaint.  And it changes the landscape of this
24     case dramatically.  And we think, as we've said in our papers,
25     that there is really no valid basis for the price fixing case
```

```
 1          to go forward and we hope your Honor will consider the
 2          arguments that we made in our papers.
 3                    THE COURT:  Very well.
 4                    Mr. Canter.
 5                    MR. CANTER:  Your Honor, just --
 6                    THE COURT:  Two minutes.
 7                    MR. CANTER:  Thirty seconds?
 8                    THE COURT:  That's even better.
 9                    MR. CANTER:  Your Honor, with respect to the Dagher
10          case, there's no indication here that any of these entities
11          were going to share the losses, only the revenues.  So that
12          case is inapplicable to our case.  That's all I wanted to say.
13                    THE COURT:  All right.
14                    Let me just state, counsel, as I said before, I mean,
15          the Court has written more than 28 pages on this case on the
16          complaint, itself.  We're at the third amended complaint, which
17          is essentially plaintiff's fourth attempt to amend the
18          complaint.  The complaint has grown in size and everything
19          else.  But the realities of this antitrust action are that the
20          complaint is to be liberally construed.  That is the reality.
21          And I do not believe, as the complaint stands now, the third
22          amended complaint, that defendants are put in a position where
23          they cannot answer the complaint.  I do believe it is
24          adequately pled, given all reasonable inferences to the
25          plaintiffs in this matter.  Discovery is going to bear some
```

```
 1    things out, obviously, the complaint has changed in some
 2    aspects.  It will continue to change, quite honestly, in some
 3    aspects as discovery proceeds.  There are certain claims that
 4    are not going to survive.  And, quite honestly, I don't know if
 5    there's going to be additional claims that potentially maybe
 6    sought to be amended and rolled into the complaint, I don't
 7    know.  But at this juncture what the Court has before it is
 8    whether, and this has been the Court's issue all along, was the
 9    relevant market adequately defined and clear in the complaint?
10    And, quite honestly, I think it is at this point.  Now, could
11    it be clearer?  Sure.  But, you know, I don't think we need a
12    fifth attempt to do that.  I think it's certainly sufficiently
13    pled as it relates to the price fixing claim.  As I said
14    before, this is a pleadings issue at this point.  The Court is
15    not going to delve into the arguments that would be appropriate
16    for summary judgment purposes at this juncture.  This a
17    pleadings stage.  The pleadings are sufficient and adequate and
18    the discovery should proceed.  I know you've been doing some
19    discovery, but the discovery should proceed.  I want to tell
20    counsel, do not file a motion for reconsideration.  We're done.
21    We're moving on from the complaint stage at this point.  You
22    can file your answers as they are appropriate, and I will sign
23    the appropriate order and we will proceed from there.
24              MR. CANTER:  Thank you, your Honor.
25              THE COURT:  Anything further?
```

```
 1              MR. CANTER:  I just want to schedule a Rule 26
 2    conference.
 3              THE COURT:  Judge Arleo will do that.  I will
 4    certainly notify her of what we've done here today.  I'll file
 5    the appropriate order as well, but I'll notify her that counsel
 6    is ready to proceed with the conference.
 7              MR. CANTER:  Thank you, your Honor.
 8              THE COURT:  Okay?  Counsel, have a great day.
 9              MR. CANTER:  You too, your Honor.
10              THE COURT:  Thank you.
11              MR. THOMPSON:  Thank you.
12              (Matter concluded)
13
14
15
16
17
18
19
20
21
22
23
24
25
```