

**Lowenstein Sandler**
ATTORNEYS AT LAW

R. Scott Thompson
Member of the Firm
Tel 973 597 2532
Fax 973 597 2533
sthompson@lowenstein.com

August 27, 2012

**VIA ECF AND FEDEX**

Hon. Cathy L. Waldor, U.S.M.J.
United States District Court
District of New Jersey
M.L. King Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   *BanxCorp v. Bankrate, Inc.*, Civ. No. 07-3398 (ES-CLW)
      *BanxCorp v. LendingTree, LLC*, Civ. No. 10-2467 (ES-CLW)

Dear Judge Waldor:

This firm represents defendant Bankrate, Inc. in this case. I write in advance of the status conference scheduled for August 30, 2012 at 12:30 p.m. to address what we believe to be the four remaining open issues concerning discovery. Those issues are (1) Bankrate's requests for production of all communications between BanxCorp and government agencies; (2) the schedule for expert discovery; (3) BanxCorp's request that Bankrate remove confidentiality designations from certain documents; and (4) a request made by BanxCorp on July 1, 2012 for production of documents.

**(1)   Documents Reflecting BanxCorp's Communications with Government Agencies**

At the deposition of Norbert Mehl on January 25, 2012, Mr. Mehl testified that he contacted various government agencies regarding Bankrate's purported anti-trust violations, including, the U.S. Department of Justice, the New York State Attorney General, and the National Association of Attorneys General. Mr. Mehl testified that he corresponded with these entities and that he had a meeting with the New York Attorney General's office and gave a Powerpoint presentation.

At the deposition, I requested BanxCorp produce its communications with government agencies that relate to Bankrate's purported antitrust violations, including Mr. Mehl's presentation to the N.Y. Attorney General. An excerpted copy of Mr. Mehl's deposition transcript is attached as Exhibit A. With no response to the request, we followed up with a letter and then a second letter. Only then did BanxCorp advise us that it was refusing to produce the communications, claiming the protection of the work-product doctrine.

Lowenstein Sandler PC   In California, Lowenstein Sandler LLP                                   www.lowenstein.com

65 Livingston Avenue   Roseland, NJ 07068   Tel 973 597 2500   Fax 973 597 2400                    New York   Palo Alto   Roseland

BanxCorp's assertion of the work-product doctrine is invalid. First, the work-product doctrine does not apply to BanxCorp's correspondence to or from government agencies. Second, whatever protection may have applied to BanxCorp's internal communications, BanxCorp surrendered any such protection when it disclosed information to a third-party without undertaking any effort to preserve confidentiality.

*The Work-Product Doctrine Does Not Apply*

The work product doctrine allows a party to protect documents that it (or its representative) prepares in anticipation of litigation or for use at trial. Fed. R. Civ. P. 26(b)(3)(A). BanxCorp's communications between government agencies do not meet the rule's requirements. The documents at issue here fall into two categories: (1) the government agencies' communications to BanxCorp; and (2) BanxCorp's communications to government agencies.

The work-product doctrine plainly does not apply to the first category. The doctrine only applies to documents created by a party or its representative, *i.e.*, BanxCorp, and is completely inapplicable to documents created by non-parties, in this case, the government agencies. *See Westwood Prod., Inc. v. Great Am. E&S Ins. Co.*, 2011 WL 3329616, at *11 (D.N.J. Aug. 1, 2011) ("Documents created on behalf of non-party are not protected by the work product rule because the rule exists to protect the privacy of the preparations of attorneys and agents engaged in litigation."); *see also* 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2024 at 345-56 (2d ed. 1994) ("[D]ocuments prepared by one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) . . . .)

The doctrine also does not apply to BanxCorp's communications to government agencies because they are not prepared in anticipation of litigation and, in fact, are unrelated to litigating this lawsuit. In determining whether documents are prepared in anticipation of litigation, courts analyze "whether the documents were created for the primary purpose of the litigation itself . . . If the documents were produced for purposes other than litigation, but prove useful in the litigation at issue, the documents are not protected by the work product privilege." *See Kane v. Mfr. Life Ins. Co.*, 2010 WL 2178837, at *8 (D.N.J. May 26, 2010) (citing *La. Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306-07 (D.N.J. 2008)).

Here, the presentation to the attorney general's office and the correspondence with other government entities is not undertaken for the purpose of litigating this case. BanxCorp was not conducting a factual investigation into Bankrate's conduct, evaluating its legal theories, or relying upon the governmental entities in any way as a "representative." Moreover, this is not an instance where "attorneys . . . rel[ied] on the assistance of investigators or other agents in the compilation of materials in preparation for trial," where the doctrine actually applies. *See Westwood*, 2011 WL 3329616, at *10. BanxCorp's purpose in communicating with the government was to inform government agencies about its misguided view of the world; those communications can in no way be said to have been made in connection with the litigation of

Hon. Cathy L. Waldor											August 27, 2012
Page 3

this case.  Because the documents were not created for the purpose of litigation, they are not work product.

*BanxCorp Waived Any Protection that May Have Applied*

By making disclosures to third-party government agencies, BanxCorp lost any work-product protection that may have applied to its internal communications.  "Generally, disclosure of confidential communication or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items." *Schering Corp. v. Mylan Pharm., Inc.*, 2011 WL 3651343, at *3 (D.N.J. Aug. 18, 2011).

While part of the reason the work-product doctrine exists is "to protect the privacy of the preparations of the attorneys and agents engaged in litigation" *Westwood*, 2011 WL 3329616, at *10, here there is no such privacy.  BanxCorp disclosed information to outsiders without any effort to ensure its confidentiality.  BanxCorp did not share documents with a third party that is a "trusted associate," who could be expected to maintain privacy, or require government agencies to sign a confidentiality agreement, which would be indicative of an intent that the protected information remain confidential.  Further, BanxCorp did not request any protection from disclosure under New York's Freedom of Information Law ("FOIL") or any other applicable open records laws.  To the contrary, if BanxCorp had its way, the information it provided to the government would be publicly available, including to Bankrate.  BanxCorp provided information to government authorities in the hopes that they would do something with it -- namely make it public through some sort of investigation of Bankrate or by filing a lawsuit.  The fact that no government agency has done anything of the sort (aside from being telling as to the merits of BanxCorp's claims) is no basis for BanxCorp to now argue, after the disclosure, that the information is protected work product.

Bankrate respectfully requests that Your Honor order BanxCorp to produce documents reflecting communications between BanxCorp and any government agency regarding Bankrate's purported anti-trust violation.

**(2)    Schedule for Expert Discovery**

I attach as Exhibit B a copy of the order proposed in June.  Bankrate proposes that the schedule set forth in that order should be moved out one month.  Thus, Bankrate and BanxCorp would exchange initial reports  on or before September 20, 2012; Bankrate and BanxCorp would respond to issues raised in each other's reports by October 20, 2012; LendingTree would submit a report by November 20, 2012; BanxCorp would respond to that report by December 20, 2012; and depositions would be complete by January 20, 2012.



Hon. Cathy L. Waldor  
Page 4

August 27, 2012

### (3) Removal of Confidentiality Designations

By letter dated June 25, 2012, BanxCorp requested that Bankrate remove its designations of "confidential" and "AEO" from a group of documents that appears to consist of (1) Bankrate's price lists between 2005 and 2009 and (2) a small group of documents designated "confidential" by Bankrate and by third parties containing pricing and other information. BanxCorp argues that the documents in question should have "confidential" designations removed because information in the documents is public and because the information is "aged".

Age, standing alone, does not make confidential information subject to disclosure. In our letter of July 5, 2012 [Doc. No. 347], we set forth the authorities that make it clear that competitively sensitive information does not become "stale" merely through the passage of time. There is no basis for BanxCorp's argument that the information in the documents identified by BanxCorp has lost the right to protection because it is "aged".

Nevertheless, Bankrate will agree to remove the "AEO" designation from its price lists from 2005 until 2009. However, Bankrate objects strongly to any attempt by BanxCorp to require the removal of "confidential" designations from any documents, including price lists. BanxCorp can show no good reason for wishing to disclose publicly Bankrate's financial information. None of the documents bearing a "confidential" designation identified by BanxCorp in Exhibit 3 to its June 25, 2012 letter is available publicly, and all of those documents contain competitively sensitive information including -- but not limited to -- pricing information:

Removal of the "AEO" designation from Bankrate's price list (preserving a "confidential" designation on those lists) will allow BanxCorp to use the information in this lawsuit. There is no good reason for the removal of "confidential" designations, and BanxCorp has not offered any reason other than that the information is "aged". BanxCorp has proven itself to be a litigant that refuses to play by the rules, and Bankrate objects in the strongest terms to any ruling that might allow BanxCorp to disclose Bankrate's confidential information outside of this lawsuit.

### (4) New Document Requests

In a letter to the Court dated July 1, 2012, counsel for BanxCorp reported to the Court that BanxCorp demanded that Bankrate produce "copies of all search engine keyword reports for 2006 and 2007, which should have been produced a year ago in response to paragraph 11 of the Court's October 19, 2010 Supplemental Scheduling Order . . ."

This is a new request. Contrary to counsel's statement, "search engine keyword reports" were never even remotely called for by any other request by BanxCorp for the production of documents. When the original Complaint in this case was filed on July 20, 2007, BanxCorp alleged that Bankrate had engaged in predatory conduct in the purchase of search engine



Hon. Cathy L. Waldor                                           August 27, 2012
Page 5

keywords. Thus, the issue of search engine keywords and the prices paid by Bankrate has been in the case for five years.

Despite this, BanxCorp never requested any data concerning Bankrate's use of search engine keywords. In fact, BanxCorp never requested any documents even remotely relating to search engine marketing (or "SEM"). BanxCorp's assertion that the documents "should have been produced a year ago in response to paragraph 11 of the Court's October 19, 2010" order is mystifying. The referenced paragraph required Bankrate to produce all email for three custodians (later identified as Mr. Evans, Peter Morse, and Michael Ricciardelli) that contained any one of a list of 21 search terms (24 search terms, in the case of Mr. Evans) selected by BanxCorp. Not one of the terms selected by BanxCorp had anything to do with SEM. BanxCorp did not ask for emails containing the terms "keyword", "search engine", or "paid search", for example. Bankrate satisfied its obligations under paragraph 11 of the October 19, 2010 order by producing all documents containing any of the keywords identified by BanxCorp.

The first time that Bankrate ever made any kind of request relating to Bankrate's SEM was after the first day of the deposition of Thomas Evans, Bankrate's CEO. The issue was discussed during the June 14, 2012 conference call with the Court. As a result of that discussion, on June 27, 2012, Bankrate produced a chart showing the highest average prices paid each month for any keyword purchased by Bankrate between May 2006 and December 2007.[1] The chart also showed revenue generated by each such keyword; the chart showed clearly that Bankrate typically made 100% profit on even those keywords for which it paid the highest prices during the relevant time period. As is the case with all of BanxCorp's fabricated allegations, the data shows that there is not a shred of evidence supporting BanxCorp's claim that Bankrate lost money on SEM in order to drive others out of business.

BanxCorp's untimely requests are subject to a showing of good cause. BanxCorp has not attempted to justify its late requests, let alone show good cause. It is inconceivable that BanxCorp can demonstrate cause justifying the late request in light of the fact that the underlying issue to which the requests relate has been in the case for five years.

Respectfully submitted,

R. Scott Thompson

Enclosures
cc:     All Counsel (ECF)

---

[1]     Bankrate did not have reliable data for the period before May 2006.



# Exhibit A

# In The Matter Of:
*Banxcorp v.*
*Bankrate*

*Norbert Mehl*
*Vol. 3*
*January 25, 2012*

**ORIGINAL**

*Rizman Rappaport Dillon & Rose*
*66 W. Mt. Pleasant Ave.*
*Livingston, N.J. 07039*
*(973) 992-7650*

Bankrate / Norbert Mehl Vol. 3
January 25, 2012

**CONFIDENTIAL - Mehl - direct**   Page 356

1 the issues in the complaint, both of them.
2 Q Was your contact with the
3 Association of the Attorneys General a written
4 contact, a verbal contact or both?
5 A We may have sent the same e-mail
6 that we sent to the New York State Attorney
7 General to the national office and to other
8 Attorney Generals, but I remember having had one
9 telephone conversation with the National
10 Association of Attorney Generals.
11    The conversations were cryptic.
12 They don't reveal what they are planning to do
13 or what their intentions are. They just
14 listened to me. They said they would look into
15 it. Thank you. We will be in touch. Keep you
16 posted, et cetera, et cetera, or they suggested
17 to contact so and so and so and so.
18    In any event, at the time I
19 believe the deputy director of the Antitrust
20 Division in
21 New York, either the director or the deputy
22 director, was the acting president, I believe,
23 of the national association, at least with
24 respect to antitrust investigations.
25    Eventually we just felt it was

**CONFIDENTIAL - Mehl - direct**   Page 357

1 sufficient with the contact that was made.
2 Q When was the last contact
3 Banxcorp had with the Department of Justice?
4 A It's probably about a year ago.
5 I'm guessing. Maybe less, but not very
6 recently.
7 Q Was it in connection with a
8 response to your subpoena?
9 A It was all in connection with the
10 same issues. I don't remember. The subpoena
11 and the complaint, it was all connected.
12 Q Okay.
13    MR. THOMPSON: I believe all of
14 this -- all of these documents reflecting
15 communications with any governmental authority,
16 including the Powerpoint presentation that was
17 made to the New York Attorney General's office,
18 is called for by various document requests.
19    To the extent they are not, I'm
20 making a request that they be produced here. I
21 will follow up with a letter.
22    MS. RENZULLI: Okay.
23 Q Mr. Mehl, you know, yesterday we
24 were talking about -- I'll give you a chance to
25 finish your note.

**CONFIDENTIAL - Mehl - direct**   Page 358

1 A Yes, go ahead.
2 Q Are you all set?
3 A Yes.
4 Q By the way, did you do anything
5 to prepare yourself for your testimony today
6 since we were together yesterday afternoon until
7 four o'clock?
8 A Not anything subsequent, no.
9 Q Yesterday we were talking about
10 Banxcorp's allegation that Bankrate priced the
11 relevant product below some measure of cost.
12    Do you recall some discussion
13 about that?
14 A Yes.
15 Q And I believe you testified that
16 Banxcorp alleges that Bankrate priced the
17 relevant product below cost for some period of
18 time beginning in October 2005 until sometime in
19 2006.
20    Is that an accurate description
21 of Banxcorp's allegation?
22 A Can you repeat the question?
23 Q Well, I'll ask it generally. I
24 don't want to cover -- I'm going to draw an
25 objection asked and answered.

**CONFIDENTIAL - Mehl - direct**   Page 359

1    I'm trying to figure out what
2 Banxcorp's allegation is about the time period
3 during which Banxcorp alleges that Bankrate
4 priced the relevant product below cost.
5 A The period of 2005 to 2006 would
6 be a good example. I don't want to say -- to
7 limit myself to this is the only period.
8    At least that is the period that
9 it presents some issues which we believe --
10 during this period we believe we can make a
11 plausible case that the pricing was made by
12 Bankrate below, below cost.
13 Q Well, what I'm asking you now is
14 to tell me all of the times during which
15 Banxcorp alleges that Bankrate priced the
16 relevant product below cost.
17    MS. RENZULLI: Objection.
18    We haven't completed discovery in
19 this case yet, but to the extent that you can
20 answer that, Norbert, go right ahead.
21 A I would be guessing now. I don't
22 want to guess.
23    It's possible they priced below
24 cost even before that when they were charging a
25 flat fee.

# Exhibit B

25392/2
08/27/2012 **19903780.1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANXCORP,<br><br>                 Plaintiff,<br>vs.<br><br>BANKRATE, INC.<br><br>                 Defendants. | Document Electronically Filed<br><br>Civil Action No. 07-3398 |
| BANXCORP, INC.<br><br>                 Plaintiff,<br>vs.<br><br>LENDINGTREE, LLC,<br><br>                 Defendant. | Civil Action No. 10-2467<br><br>**ORDER** |

      The parties, through counsel, appeared before the Court by telephone on June 14, 2012 seeking resolution of all outstanding issues concerning discovery that had been raised by any of the parties. Giving full consideration to the lengthy submissions by counsel for the parties and argument of counsel on all of the outstanding issues

      It is on this _____ day of June, 2012,

      **ORDERED** that fact discovery in these consolidated cases shall be and is extended through and including July 20, 2012, in order to allow the parties to complete the discovery set forth in this Order. For all other purposes fact discovery is closed, and no new discovery requests not identified in this Order shall be permitted; it is further

**ORDERED** that plaintiff BanxCorp shall be permitted to take the deposition of Thomas Evans for one additional seven hour day within the time allowed for fact discovery by this Order; it is further

**ORDERED** that defendants shall be permitted to take the deposition of Diana Mehl for one seven hour day within the time allowed for fact discovery by this Order; it is further

**ORDERED** that defendant Bankrate shall report to the Court promptly (and, in any event, within the time allowed for fact discovery by this Order) concerning its ability to identify and produce a list of the highest cost paid for any search engine keyword in each calendar month from January 2006 through December 2007; it is further

**ORDERED** that plaintiff BanxCorp's application for permission to take the depositions of Peter Morse and Petra Bowman is denied; BanxCorp may renew its application to take the deposition of Ms. Bowman subject to its demonstration of good cause; it is further

**ORDERED** that plaintiff BanxCorp shall submit to the Court, *in camera*, copies of all documents reflecting or relating to communications between BanxCorp and any governmental authority concerning the defendant Bankrate no later than June 29, 2012; it is further

**ORDERED** that plaintiff BanxCorp and defendant Bankrate shall promptly submit to the Court a joint letter setting forth the parties' positions concerning the removal of Confidentiality or Attorneys' Eyes Only designations from Bankrate's Internet rate table cost-per-click price lists for the period of 2005 through 2009. No further submissions shall be permitted; it is further

**ORDERED** that Paragraphs 7 and 8 of the April 4, 2011 Pretrial Scheduling Order in Civil Action No. 10-2467 (made applicable to these consolidated cases by Order dated August 31, 2011 and, as amended by orders entered on June 29, 2011, November 14, 2011, and March 20, 2012, the "Pretrial Scheduling Order") are amended to provide that (1) expert reports

in support of affirmative claims in *BanxCorp v. Bankrate, Inc.* (no. 07-3398) shall be served on or before August 20, 2012, and that parties shall not be permitted to rely upon expert opinions to establish or support any element or aspect of any affirmative claim (either in connection with a motion for summary judgment or at trial) unless each such opinion is identified and supported in the expert reports served on or before August 20, 2012; (2) expert reports responding to issues raised by the affirmative reports served in *BanxCorp v. Bankrate, Inc.* (no. 07-3398) shall be served on or before September 20, 2012;   (3) LendingTree LLC shall serve an expert report in *BanxCorp v. LendingTree, LLC* (no. 10-2467) on or before October 20, 2012; (4) plaintiff shall serve any report responding to the expert report served by LendingTree on or before November 20, 2012; and (5) depositions of experts shall be completed by December 20, 2012. No party shall be allowed to rely upon any expert opinion to establish or support any element or aspect of any affirmative claim (either in connection with a motion for summary judgment or at trial) if that opinion is expressed for the first time in a report served in response to another report.

_____
Hon. Cathy L. Waldor, U.S.M.J.