**MORDECHAI I. LIPKIS, ESQ.**
350 BROADWAY, SUITE 1105
NEW YORK, NY 10013

TELEPHONE: 212-925-4023
FACSIMILE: 212-925-4702
E-MAIL: mlipkis@mlipkis.com

September 9, 2012

*Via ECF and Fax*

Hon. Kevin McNulty, U.S.D.J.
Hon. Esther Salas, U.S.D.J.
United States Court for the District of New Jersey
50 Walnut Street
Newark, NJ 07101

      Re:    *BanxCorp v. Bankrate Inc.*, Civ. No. 07-3398 (KM)(CLW)

Dear Judge McNulty and Judge Salas:

      We write on behalf of Plaintiff BanxCorp to object to Defendant Bankrate's filing on September 7, 2012 of a duplicative and frivolous Motion to Dismiss ("MTD") (Doc. No. 368 *et seq.*) portions of the Sixth Amended Complaint ("6AC")[1], in violation of Rule 11, despite Plaintiff's notice dated August 10, 2012 (Doc. No. 357).

      While Defendant Bankrate's Motion for Reconsideration on the issue of standing under § 1 of the Sherman Act is pending before Judge Salas (Doc. Nos. 355 and 362), Defendant's MTD impermissibly reargues before Judge McNulty that Plaintiff does not have antitrust standing to assert its § 1 claims, and misrepresents to the Court that Plaintiff's § 1 *traditional* price-fixing claim had not been adequately pled and has been withdrawn. This is a flagrant attempt by Bankrate to engage in judge-shopping and sow confusion among judges of coordinate jurisdiction as a result of the unusually frequent reassignments of this case.

      To be clear, in the Fifth Amended Complaint ("5AC") Plaintiff merely withdrew its "*predatory*" price-fixing conspiracy theory under § 1, but it never withdrew its claim for a *traditional* price-fixing conspiracy among Bankrate and its co-branding partners under § 1. In her July 30, 2012 Opinion ("Opinion") Judge Salas recognized that "[i]n her September 14, 2009 Opinion, Judge Wigenton found that the § 1 price-fixing claim in Plaintiff's Second Amended Complaint was adequately pleaded." Judge Salas further found that, "these allegations continued through the 3AC… These same allegations appeared to have persisted through the 4AC… Accordingly, the Court finds that Plaintiff does not plead its § 1 price-fixing conspiracy claim for the first time in the 5AC, and that Plaintiff did not, in the past, abandon the claim only to re-plead it here." (Opinion at 7-8)[2]

---

[1] The contents of the 6AC are the same as in the 5AC, except for paragraphs 228-230.

[2] Judge Salas further found that "Plaintiff has sufficiently pleaded its monopoly claim based partially on unilateral predatory pricing" under § 2. (Opinion at 26)

Hon. Kevin McNulty, U.S.D.J.
Hon. Esther Salas, U.S.D.J.
September 9, 2012
Page 2

As the Court will recall, on July 13, 2010 Judge Wigenton held during oral argument that the Third Amended Complaint was sufficiently and adequately pleaded, stating as follows: "I think it's certainly sufficiently pled as it relates to the price fixing claim. As I said before, this is a pleadings issue at this point. The Court is not going to delve into the arguments that would be appropriate for summary judgment purposes at this juncture ... I want to tell counsel, do not file a motion for reconsideration." (July 13, 2010 Hrg' Tr. 15:19-20). See Order dated July 13, 2010 (Doc. No. 121) denying Bankrate's Motion to dismiss the Third Amended Complaint.[3]

Furthermore, in BanxCorp's related action against *LendingTree* the Court ruled that, "BanxCorp's status as a competitor does not preclude it from having standing. If anything, its status bolsters its claim that it has antitrust standing." *BanxCorp v. LendingTree LLC*, Civ. No. 10-2467-SDW-MCA (D.N.J. Feb. 7, 2011) (citing *W. Penn Allegheny Health Sys. v. UMPC*, 627 F.3d 85, 102 (3d Cir. 2010); *Carpet Grp. Int'l v. Oriental Importers Ass'n*, 227 F.3d 62, 77 (3d Cir. 2000)).

In *LendingTree* the specific anti-competitive practices asserted include: "per se horizontal market division and customer allocation agreements, and per se horizontal price fixing agreements with one or more competitors." The same anti-competitive practices related to LendingTree are asserted in the complaint against Bankrate, and Bankrate has neither challenged the merits of these claims, nor BanxCorp's antitrust standing to assert its § 1 claims. In her July 7, 2008 Opinion in *Bankrate* (Doc. No. 20), Judge Wigenton found that the LendingTree-related pleadings were adequate.

**Law of the Case Doctrine**

A court ordinarily ought to respect and follow its own rulings, made earlier in the same case. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (explaining that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). The presumption, of course, is that a successor judge should respect the law of the case. The orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances. *See TCF Film Corp. v. Gourley*, 240 F.2d 711, 713-14 & n. 2 (3d Cir.1957); 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 670 (2d ed.2002).

---

[3] Bankrate's dilatory tactics have pervaded this action during the past five years of litigation. For example, reference is made to defense counsel's letter to the Hon. Susan D. Wigenton, U.S.D.J. dated November 18, 2009 (Doc. No. 94), seeking "the Court's permission to withdraw Bankrate's [] motion for reconsideration of the Court's September 14, 2009 Order because that motion [was] directed at a now-superseded Second Amended Complaint, and because the arguments made in that motion [we]re included in Bankrate's [] motion to dismiss the Third Amended Complaint… Thus, [Bankrate] believe[s] that the motion for reconsideration is either moot -- in light of the filing of the Third Amended Complaint -- or duplicative of part of the pending motion to dismiss the Third Amended Complaint."

Hon. Kevin McNulty, U.S.D.J.
Hon. Esther Salas, U.S.D.J.
September 9, 2012
Page 3

      This limitation is anchored in a sea of salutary policies. *See generally* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L.Rev. 595, 602-05 (1987). For one thing, the law of the case doctrine affords litigants a high degree of certainty as to what claims are — and are not — still open for adjudication. *See Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir.1997); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-17, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). For another thing, it furthers the abiding interest shared by both litigants and the public in finality and repose. *See Wyoming v. Oklahoma*, 502 U.S. 437, 446, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992). Third, it promotes efficiency; a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay. *See Christianson*, 486 U.S. at 819, 108 S.Ct. 2166; *Rivera-Martinez*, 931 F.2d at 151. Fourth, the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system. *See* Geoffrey C. Hazard, Jr., *Preclusion as to Issues of Law: The Legal System's Interest,* 70 Iowa L.Rev. 81, 88 (1984) (collecting cases). Finally, judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage. *See Erwin*, 155 F.3d at 825; *see also White v. Higgins*, 116 F.2d 312, 317-18 (1st Cir.1940); 18B Wright et al., *supra* § 4478.1, at 695.

      Based on the foregoing, we respectfully request that the Court issue an appropriate sanction against Bankrate pursuant to Rule 11.

                                    Respectfully submitted,

                                      Mordechai I. Lipkis

Cc: All Counsel (*via ECF*)