# JOINT STATUS REPORT

June 10, 2013

*Via ECF & FedEx*

Hon. Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
M.L. King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

   Re: *BanxCorp v. Bankrate, Inc.*, Civ. No. 07-3398 (KM-MAH)

Dear Judge Hammer:

Pursuant to the Court's Order dated May 22, 2103 (Doc. No. 429), Plaintiff BanxCorp and Defendant Bankrate Inc. respectfully submit this Joint Status Report concerning certain issues which were raised by Plaintiff during a telephone status conference held before the Hon. Michael A. Hammer.

On May 23, 2012 counsel for the parties held a meet and confer, but were unable to resolve these issues. The parties' respective positions are set forth below:

## ISSUE NO. 1

## PLANTIFF MOVES TO STRIKE DEFENDANT'S *REPLY* BRIEFS (DOC. NOS. 426-427) IMPROPERLY FILED IN VIOLATION OF COURT DIRECTIVES

### Plaintiff BanxCorp's Position

As previously stated in Plaintiff's summary judgment-related briefs, on April 11, 2013 Bankrate filed improper motions to strike the expert report of Dr. Stan V. Smith (Doc. No. 415), and the Declaration of Norbert Mehl (Doc. No. 416). Consistent with other courts that have dealt with improper motions to strike after the 2010 amendments to Rule 56, the Court must construe Bankrate's MTS as objections under Rule 56(c)(2). *See, e.g., Ankney v. Wakefield*, Civ. No. 10-1290 (W.D. Penn. 2012) (citation omitted).

In addition, according to the deadlines set by the Court as set forth below, Plaintiff's Responses and the coinciding return date for Defendant's motions to strike were set for "5/6/2013 [at] 10:00 AM." As such, it appears that the Court prohibited any reply briefs, which would be consistent with the tenets of Rule 56(c)(2). More specifically, the following ECF transaction was entered by the Court on 4/12/2013:

  Docket Text:
  Set Deadlines as to [416] MOTION to Strike *the Declaration of Norbert Mehl*,
  [415] MOTION to Strike *the Report and Opinions of Stan V. Smith, Ph.D.*

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 2

> Responses due by 5/6/2013 Motion set for 5/6/2013 10:00 AM before Judge Kevin McNulty. The motion will be decided on the papers. No appearances required unless notified by the court. (nr, )

Notwithstanding, Defendant filed its two reply briefs on May 13, 2013 (Doc. Nos. 426-427), i.e., a week after the return date of the motions, in violation of the briefing schedule expressly set by the Court. Therefore, Plaintiff respectfully requests that the Court strike and disregard Defendant's reply briefs.

**Defendant Bankrate's Position**

Bankrate's motions to strike the certifications of Messrs. Mehl and Smith were filed on April 12, 2013, and were made returnable on May 6, 2013 in accordance with Local Civ. R. 7.1(c)(1). According to Local Civ. R. 7.1(d)(2), Plaintiff's opposition would have been due on April 22, 2013 and Bankrate's reply would have been due one week later, on April 29, 2013. Although a docket entry was made changing the date on which opposition was due to May 6, 2013, we did not understand the Court to be prohibiting replies. Bankrate therefore filed its replies on May 13, 2013, in accordance with Local Civ. R. 7.1(d)(2).

Should the Court determine that Bankrate's replies were filed out of time, Bankrate respectfully requests that the Court enter an order either (i) permitting the replies to be filed out of time or (ii) extending the return date of Bankrate's motions until May 20, 2013 so that the replies will be timely. It bears noting that there is no prejudice to the Plaintiff as there are summary judgment motions pending and no other deadlines or case-related activity is impacted by this issue.

## ISSUE NO. 2

### PLAINTIFF MOVES FOR AN ADVERSE INFERENCE AND THE IMPOSITION OF SANCTIONS DUE TO DEFENDANT'S FAILURE TO PRODUCE 87 CO-BRANDING AGREEMENTS

**Plaintiff BanxCorp's Position**

The Court's Supplemental Pretrial Scheduling Order filed on October 18, 2010 (Doc. No. 143) (the "Oct. 18, 2010 Order"), at ¶ 5, stated as follows:

> On or before November 4, 2010, Defendant will produce all remaining website co-branding contracts in effect from January 1, 2003 to the present.

Defendant does not dispute that the only 128 co-branding "agreements, which Bankrate produced during discovery, can be found at Plaintiff's Appendix Exhibit F3 - F130." (Eric Jesse's May 2, 3013 Certification in support of Bankrate's Reply Brief in Further Support of its

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 3

Motion for Summary Judgment, ¶ 3 & Ex. A [Doc. No. 419-1]). Moreover, Defendant submitted Bankrate's Master List of 215 co-branding agreements after the close of discovery and as part of its summary judgment-related papers. (R. Scott Thompson Certification [Doc. No. 405-9], ¶ 45 & Ex. 43 [Glueck Report ¶ 124 & Ex. 12]; *see also* Defendant's brief in support of summary judgment, at 41 [Doc. No. 405-1])

This demonstrates that, in direct violation of the Oct. 18, 2010 Order, (a) Defendant only produced 128 contracts -- 60% of its 215 co-branding agreements; and (b) Defendant suppressed the production of 87 contracts -- 40% of its total number of co-branding contracts, which are highly relevant and at the heart of Plaintiff's claims of monopolization and anticompetitive or exclusionary conduct.

On May 23, 2013, upon conclusion of the meet and confer, defense counsel e-mailed a list of "Bates numbers for the documents used by Mark Glueck in his analysis of the co-branding agreements," stating as follows:

> "*I am told the documents are a little hard to read* – they are excel spreadsheets produced *in pieces* as *[6,414 individual] tif [file]s* – but that *it is easy* to identify all of the co-brand partners listed … The bates numbers for the partner payment data that Mark [Glueck] cited to is "BR6298 – 12712 (*all designated as AEO*). The bates numbers for a duplicate copy (designated as confidential, with traffic and volume redacted, but showing the names of cobrand partners) is BR16640 – 22674." (emphasis added)

Nevertheless, the foregoing Bates-numbered documents did not contain Defendant's missing 87 co-branding agreements at issue, but are merely undecipherable traffic and revenue reports which in any event were not responsive to ¶ 5 of the Oct. 18, 2010 Order. Any suggestion by Defendant that Plaintiff may have waived its right to seek an adverse inference based on suppression of evidence earlier during the proceedings, despite its reasonable efforts to examine, segregate and comprehend over one hundred thousand undecipherable, and to a large extent unreadable documents, is baseless.

In addition, Defendant *withdrew* the purported expert reports of Mark Glueck after Plaintiff brought to the Court's attention that he had grossly falsified his academic and professional credentials. (*See* Defendant's brief in opposition to BanxCorp's Fed. R. Civ. P. 56(c)(2) objections [Doc. No. 419-2], at 2). Therefore, any assertions by Defendant in connection with its sham expert reports must be disregarded, as they are unreliable. In fact, Defendant specifically asked the Court once again to "disregard citations to Mr. Glueck's opinions." (Doc. No. 431).

"An adverse inference, or the spoliation inference, ... is intended to level the playing field between the parties." *Telequest Int'l. Corp. v. Dedicated Bus. Sys. Inc.*, Civ. No. 06-5359 (PGS) (citing *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 335, 338 (D.N.J. 2004). "The spoliation inference informs the trier of fact that it may 'receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 4

did so out of the well-founded fear that the contents would harm him.'" *Id.* (citing *Brewer v. Quaker State Oil Ref. Co*., 72 F.3d 326, 334 (3d Cir. 1995).

Pursuant to Fed. R. Civ. P. 16(f)(1) and Rule 37(b)(2)(A)(ii)–(vii), sanctions for not obeying a Discovery Order may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order...

"Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

Based on the foregoing, an adequate factual predicate exists for the imposition of sanctions against Defendant.

**Defendant Bankrate's Position**

Plaintiff's position is frivolous, and exemplifies Plaintiff's abuse of the legal system throughout this case. Plaintiff has consistently demonstrated its willingness to make utterly unfounded – and, in many cases, patently absurd – allegations in the belief that it needs no good-faith basis for its positions. Virtually every claim made in each of the eight versions of the complaint in this case demonstrates this *modus operandus*. Plaintiff appears to believe that, since the courts are open to anyone at virtually no cost, it has the unfettered right to make any claim, no matter how ludicrous or lacking in support, and to force its adversary to respond.

Plaintiff's claim on this issue is frivolous for at least three separate reasons.

First, there is no good-faith basis for the claim that Bankrate possesses documents that it did not produce. Plaintiff states that "Defendant submitted Bankrate's Master List of 215 co-branding agreements after the close of discovery and as part of its summary judgment-related papers", but this statement bears no resemblance to the truth. Bankrate never "submitted" any "Master List of 215 co-branding agreements", either during discovery or any time thereafter. The document that BanxCorp mis-identifies as Bankrate's "Master List of 215 co-branding agreements" is a table prepared by Mark Glueck (Bankrate's antitrust expert) captioned "Duration of Bankrate Co-

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 5

Branding Partnerships April 30, 2003 – December 31, 2010", which was attached to Mr. Glueck's report (produced to Plaintiff on October 24, 2012) as Exhibit 12.

In his report, Mr. Glueck identified the source used for this table as "Partner Payment Data 2003-2010", which (as BanxCorp knows) are the traffic and revenue reports produced during discovery as documents bearing document identification numbers BR6298 through BR12712 (designated AEO) and BR16640 through BR22674 (designated confidential). Mr. Glueck did not purport to review any co-branding agreements other than those with Yahoo, AOL and CNN, and his chart does not purport to summarize any review of co-branding agreements. In truth, every single co-brand agreement that could be located in Bankrate's possession, custody or control was produced to Plaintiff years ago. There is no good-faith basis for Plaintiff's allegation that existing documents were not produced.

Second, Plaintiff's misguided allegation is grossly untimely. Fact discovery – which was open for years -- closed on April 30, 2012.[1] The documents used by Mr. Glueck to prepare his chart were produced by November 2010. Notably, Plaintiff has never identified a single entity for which a co-brand agreement exists that was not produced. Plaintiff had years to raise with Bankrate or the Court any entities identified in the traffic and revenue reports for which it believed a co-brand agreement was "missing". Had Plaintiff identified any entity in the traffic reports (the documents used by Mr. Glueck when he prepared his chart) for which a co-brand agreement was "missing", it could have questioned Bankrate representatives about the existence or whereabouts of such agreements, or even subpoenaed the entity itself. Plaintiff chose not to pursue the issue while discovery was open; its purported outrage today is as phony as it is unfounded.

Third, Plaintiff's presentation of the issue in May 2013 reeks of the same gamesmanship that has motivated its conduct throughout these proceedings. Plaintiff bases its claim that documents have been suppressed entirely on Mr. Glueck's chart (attached as Exhibit 12 to his report), and the difference between the number of entries on that chart and the number of co-brand agreements produced. That chart was provided to Plaintiff on October 24, 2012, more than six months ago. Plaintiff thus must have realized six months ago that the number of entries in Mr. Glueck's chart did not correspond to the number of co-brand agreements.

At that point, Plaintiff had an obvious way to explore its concern. Expert discovery was open until the end of December 2012. Plaintiff had every opportunity to take Mr. Glueck's deposition to ask how he prepared his chart, what materials were used in the preparation of the chart and why there are 215 entries on his chart. Plaintiff chose not to question Mr. Glueck about his chart or anything else. Instead, Plaintiff chose to wait until summary judgment motions were filed to raise the issue with the Court. Had Plaintiff examined Mr. Glueck about his chart, it would have had an opportunity to learn why Mr. Glueck included 215 entries on his chart while there were

---

[1] No formal order was signed extending fact discovery past April 30, 2012 but the Court did continue fact discovery to resolve open discovery disputes, which did not involve the cobrand contracts, and to complete limited deposition discovery.

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 6

only 128 co-branding agreements produced in discovery.[2]  Plaintiff chose not to use the discovery process to try to obtain a good-faith factual basis for its allegations, choosing instead to make the allegations without a shred of support as is its practice.

Plaintiff's allegation that documents have been suppressed is frivolous.  The allegation lacks a good-faith basis in fact.  Moreover, Plaintiff deliberately refused to use the mechanics of discovery to try to establish a good-faith basis in fact.  If Plaintiff makes any kind of formal application to the Court with respect to this issue, Bankrate will move for sanctions against Plaintiff and its counsel pursuant to Fed. R. Civ. P. 11.

## ISSUE NO. 3

### PLAINTIFF SEEKS A DETERMINATION OF THE AMOUNT TO BE PAID BY DEFENDANT FOR THE DEPOSITION OF PLAINTIFF'S EXPERT DR. STAN V. SMITH

**Plaintiff BanxCorp's Position**

There is no dispute concerning the fact that Defendant must pay a reasonable amount for Plaintiff's expert witness Dr. Stan V. Smith's time spent preparing for and being deposed, pursuant to Fed. R. Civ. P. 26(b)(4)(E)(i). The parties' respective positions have been set forth in their letters to the Court dated May 7, 2013 and May 20, 2013 (Doc. Nos. 424, 428). However, the parties have been unable to reach an agreement as to the amount of Dr. Smith's compensation.

On January 7, 2013 Plaintiff asked Defendant to pay $13,331.18 as per Dr. Smith's invoice dated December 19, 2012. On January 14, 2013, Defendant offered to pay $5,862.43. On January 16, 2013 Plaintiff proposed to reduce the fee to $9,112.43. On May 20, in its letter to the Court, Defendant offered to pay $4,112.43, which would have been even less than the amount it had offered on January 14.

During the meet and confer held on May 23, Plaintiff pointed out that, (a) in its May 20 letter Defendant did not object to Plaintiff's request for travel time and expenses, i.e., $1,500 + $862.43 = $2,362.43; and (b) Defendant further stated in its May 20 letter that "Smith should not be paid more for his deposition than he was paid to prepare his report," i.e., $5,000.

---

[2]  Plaintiff's assertion that 128 co-branding agreements were produced during discovery is itself manufactured and misleading, since calculation of the number of agreements produced depends upon how amendments to agreements are counted, and also fails to account for agreements that related to multiple entities under common ownership.

Based on the foregoing, Plaintiff proposes that Dr. Smith's fee be reduced to no less than $7,362.43 = 5,000 + 2,362.43. We respectfully request that Defendant be ordered to pay Dr. Smith a reasonable amount as determined by the Court.

**Defendant Bankrate's Position**

Mr. Smith was paid no more than $5,000 in total to produce his report. Nevertheless (or, more likely, because of this), Plaintiff requested reimbursement in January 2013 of $13,331.18 for time and expenses allegedly incurred by Mr. Smith in connection with his deposition. Bankrate refused. Plaintiff subsequently applied to this Court for an order requiring Bankrate to "reimburse" it $9,112.43, which is approximately twice the amount Mr. Smith was paid by the plaintiff to provide his expert report. Bankrate again refused. On May 23, 2013, during a meet and confer, Plaintiff demanded that Bankrate pay $7,500, and, when Bankrate stated that it would not pay $7,500 but that it might be willing to discuss an amount in the neighborhood of its original offer (of $5,862.43) in order to be done with the issue, Norbert Mehl cut the discussion off, stating that there was no point in further negotiations.

BanxCorp has not dealt with Bankrate in good faith on this issue. It appears that BanxCorp and Mr. Smith are attempting to shift the cost of Mr. Smith's report over to Bankrate; that is, it appears that BanxCorp and Mr. Smith agreed to a low rate for his report with the collateral agreement that Mr. Smith would be able to make up for the low rate by charging Bankrate a higher rate. Bankrate respectfully submits that it should be required to pay $4,112.43, which—for the reasons set forth below – is more than reasonable under the circumstances.

**Background**

Mr. Smith issued a report dated October 23, 2012 concerning the damages allegedly suffered by the plaintiff as a result of Bankrate's allegedly unlawful conduct. The report was 11 pages long exclusive of background information. Mr. Smith was deposed shortly thereafter on December 18, 2012. The deposition began at 9:46 a.m. and concluded at 4:00 p.m.; exclusive of five lengthy breaks, Mr. Smith testified for four hours and 11 minutes. *See* Doc. No. 428-1, 12/18/12 Tr. at 4:6; 48:24-25; 89:14-15; 126:24-25; 156:18-19; and 171:13-14.

Mr. Smith testified that he was paid $5,000 to prepare his report, which he said took something less than 40 hours to prepare. Tr. 7:20-21, 8:16-9:5. He refused to say how much time he spent preparing his report, claiming that he did not keep track of the time. *Id.*

During the deposition, Mr. Smith appeared to deliberately lengthen the deposition by refusing to answer questions directly, and by taking lengthy breaks of up to 30 minutes during the deposition. On many occasions, he repeatedly avoided answering direct questions that simply asked him to state what the product at issue in the case is, whether he had reviewed a certain issue or whether he had undertaken a specific computation. *See, e.g.,* Tr. 23:16- 30:6; 103:13-110:6; 117:14-119:22; 122:10-124:11. Thus, the deposition was needlessly prolonged.

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 8

Mr. Smith also made it very clear that he had not prepared for the deposition. For example, he testified that his opinions on damages were all based on the allegations of the Seventh Amended Complaint ("7AC") (*e.g.,* Tr. 33:6-38:2); however, it was clear that he had not read the 7AC in preparation for the deposition. Among the many questions he could not answer during his deposition were:

* What claims are made by the plaintiff in the 7AC (Tr. 19:7-21);

* Whether the plaintiff made claims under the antitrust laws in the 7AC other than monopolization (Tr. 18:24-19:6);

* What statute was alleged in the 7AC to have been violated (Tr. 21:22-22:9);

* What product was involved in the allegations in the 7AC (Tr. 23:16-25); and

* What relevant market was alleged in the 7AC (Tr. 30:24-31:20).

Mr. Smith could not identify a single alleged fact upon which he based his assumption that Bankrate's anticompetitive conduct began in 2001 (Tr. 42:20-43:17); he could not identify a single fact justifying his assumption that the plaintiff BanxCorp was impaired beginning in 2001 (Tr. 69:16-70:2); he did not consider how a change in the date on which Bankrate's allegedly unlawful conduct began might affect his opinion (Tr. 90:16-91:9); and he had not thought about how BanxCorp was injured if Bankrate never had market power (Tr. 73:16-19). Moreover, he had done no review to determine how, or if, BanxCorp generated revenue from 2006 through 2010 (Tr. 134:6-25); he did not know when BanxCorp began selling products online (Tr. 140:20-22); and he had conducted no review of BanxCorp's business plans or detailed financial statements (Tr. 63:15-22), ability to raise capital (Tr. 112: 21-113:25), advertising or marketing expenditures (Tr. 63:23-65:25), or investment in capital assets or technology (*id.*). He was unaware that BanxCorp's owner had been unable to find a buyer for the business despite years of trying (Tr. 66:1-25). Nor had he made any effort to find out how the companies he used as comparable companies in his damages analysis generated income, or if they were similar to BanxCorp in virtually any relevant respect (Tr. 162:1-171:6). In short, he was completely unprepared to discuss any of the bases for the opinions expressed in his report.

On January 7, 2013, plaintiff's counsel requested that Bankrate pay Mr. Smith for 6.5 hours of deposition time, 18.75 hours of preparation time, 8 hours of travel time (all at $375 per hour), and $862.43 of travel expenses, for a total of $13,331.18. Counsel provided no backup for any of these amounts. I wrote back to counsel, informing her that -- because of the lengthy breaks and Mr. Smith's deliberately evasive answers -- Bankrate would only pay for the actual time spent testifying, an equal number of hours for preparation, travel time at 50% of the rate requested for Mr. Smith's deposition time, plus actual expenses. Counsel wrote back on January 16, 2013 requesting $9,112.43. Counsel never provided any substantiation for any of the amounts requested, and never followed up on the request made on January 16, 2013 (four months ago) until writing to Your Honor on May 7, 2013.

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 9

**Argument**

BanxCorp initially demanded that Bankrate pay to Mr. Smith an amount that is almost three times the amount BanxCorp paid him for the report he rendered. When Bankrate balked, BanxCorp retreated, and then retreated again; it now asks this Court to order Bankrate to pay Mr. Smith 150% as much as he received from BanxCorp for his report. It is obvious that BanxCorp is attempting to shift the cost of its retention of an expert to Bankrate. Under any circumstances, that would be manifest injustice; under the circumstances present here, it is especially inappropriate, and Bankrate respectfully requests that BanxCorp's motion be denied.

While there is a presumption under the Federal Rules of Civil Procedure that a party should bear a reasonable cost for the deposition of the opposing party's expert, that presumption is qualified in a number of respects that are relevant here. First, the burden is on the party requesting payment to prove that amounts requested are reasonable. *E.g., Barnes v. District of Columbia,* 272 F.R.D. 135, 137 (D.D.C. 2011); *Ndubizu v. Drexel University,* 2011 WL 6046816 (E.D. Pa. 2011) at *1 (copy attached)**.** Where the requesting party fails to substantiate requests for reimbursement with detailed time records or other proof that the request is reasonable, courts routinely limit such requests. *E.g., Ndubizu* at *7-8 (rejecting invoices lacking detail even where there was proof that the invoices were paid); *Feliciano v. Co. of Suffolk,* 246 F.R.D. 134, 137 (E.D.N.Y. 2007). Here, no invoices have been offered by the plaintiff as proof of the amounts alleged to be owed, and there is no evidence that Mr. Smith's rate of $375 per hour is reasonable.[3] In addition, there is no proof that the plaintiff has paid the bills for which it requests reimbursement, and we are confident that those bills have not been paid and will not be paid unless Bankrate is ordered to pay them.

Moreover, it is clear that Mr. Smith did not actually spend 18.75, 12, or even three hours preparing for his deposition. His inability to address even the most basic questions about fundamental aspects of his report belied a complete lack of preparation. During his testimony, with one exception Mr. Smith did not identify any documents that he reviewed in preparation for his deposition that he had not used in the preparation of his report, further confirming that he had not spent any time preparing for his deposition.[4] He was completely unfamiliar with basic allegations of the 7AC (even repeatedly misidentifying Bankrate's CEO, whose name one could not miss in even a casual reading of the 7AC). We respectfully submit that this Court should not order Bankrate to pay for amounts that are completely unsubstantiated and clearly overstated.

Second, courts have developed guidelines concerning what is "reasonable" compensation under Fed. R. Civ. P. 26(b)(4)(E). While time spent testifying is compensable at standard rates, preparation time is not regarded the same way. Many courts refuse to require any reimbursement for preparation time. *See Borel v. Chevron U.S.A., Inc.,* 265 F.R.D. 275, 277 (E.D. La. 2010),

---

[3]     Plaintiff's comparison of Mr. Smith's rate to that of Mark Glueck is completely inapposite, as Mr. Smith's testimony was limited to calculating damages (a run of the mill analysis), while Mr. Glueck opined on complicated antitrust issues.

[4]     The one exception was the expert report of Mark Glueck, which BanxCorp incorrectly, and hysterically, identifies as having been "withdraw[n]" and "stricken".

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 10

where the court noted that only a "slim majority" of federal courts provide for such recovery (listing cases). Even those courts that do allow for recovery of preparation time severely limit the amount recoverable. As observed in 6 *Moore's Federal Practice* § 26.80[3][d], [3][e], "The presumption of awards does not include an award to the expert (or the retaining party) for any amount of preparation time greater than the maximum time for the deposition . . ." Courts routinely enforce this rule. *E.g., Ndubizu, 2011 WL 604816* (reducing hours recovered for four experts each to no more than length of deposition); *Borel,* 265 F.R.D. at 278 (reducing hours recovered by 50%); *Fiber optic Designs, Inc. v. New England Pottery, LLC,* 262 F.R.D. 586, 593-94 (D. Colo. 2009) (reduction from requested 16 hours to four); *New York v. Solvent Chemical Co., Inc.,* 210 F.R.D. 462, 472 (W.D. N.Y. 2002) (reduction from requested 17.75 hours to three).

Here, BanxCorp is not entitled to an award for fees allegedly incurred in connection with Mr. Smith's preparation for his deposition. As set forth above, it is painfully obvious that Mr. Smith did nothing to prepare for his deposition. He could not answer the most basic questions concerning the case, even those that directly related to his opinions. He did not claim to have read any transcripts of testimony other than pages selected for him by BanxCorp, and he did not identify any materials that he reviewed in preparation for his deposition. BanxCorp has provided no substantiation for any of the hours claimed, and it does not claim to have paid Mr. Smith for his preparation time. Finally, Mr. Smith was deposed less than two months after he prepared his report, making extensive preparation unnecessary. Bankrate respectfully submits that BanxCorp's request for reimbursement for time allegedly spent by Mr. Smith to prepare for his deposition be denied.

BanxCorp requests that Mr. Smith be reimbursed for eight hours of travel time at $187.50 (one-half his rate of $375 per hour). While courts have held that travel time is only recoverable where there are no qualified witnesses within the district where the case is pending (*e.g., Lent v. Fashion Mall Partners, L.P.,* 223 F.R.D. 317, 318 (S.D.N.Y. 2004)), Bankrate does not object to this part of BanxCorp's request. Mr. Smith easily could have used his travel time to prepare, so an award to BanxCorp for Mr. Smith's time spent traveling would compensate BanxCorp for preparation time as well. *See Boos v. Prison Health Services,* 212 F.R.D. 578, 580 (D. Kansas 2002) (requiring payment for preparation time at 40% of expert's standard rate).

Mr. Smith should not be paid more for his deposition than he was paid to prepare his report. This is particularly true where he deliberately extended the length of his deposition by refusing to answer questions and taking overlong breaks, among other things. Moreover, he did not prepare in any meaningful way for his deposition. Bankrate respectfully suggests that reimbursement be limited to 4.66 hours for actual deposition time (representing time spent in deposition plus a short lunch break), Mr. Smith's travel time, and expenses, totaling $4,112.43.

Hon. Michael A. Hammer, U.S.M.J.
June 10, 2013
Page 11


Respectfully submitted,


| | |
|---|---|
| *s/*Lawrence C. Hersh | *s/* Scott Thompson |
| LAWRENCE C. HERSH | LOWENSTEIN SANDLER LLP |
| 17 Sylvan Street, Suite 102B | 65 Livingston Avenue |
| Rutherford, New Jersey 07070 | Roseland, New Jersey 07068 |
| (201) 507-6300 | (973) 597-2500 |
| lh@hershlegal.com | sthompson@lowenstein.com |
| *Counsel for Plaintiff BanxCorp* | *Counsel for Defendant Bankrate Inc.* |


cc:     All Counsel (*via ECF*)